## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>THE WET SEAL, INC., a Delaware corporation, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.:  15-10081 (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING MAINTENANCE, ADMINISTRATION, AND CONTINUATION OF CERTAIN CUSTOMER PROGRAMS

The Wet Seal, Inc. and its subsidiaries, the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the Debtors to maintain and administer customer-related programs as described in the Motion (collectively, the "Customer Programs") and honor prepetition obligations to customers related thereto in the ordinary course of business and in a manner consistent with past practice, (b) authorizing the Debtors to continue, replace, implement, modify and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court, (c) authorizing banks and other financial institutions (the "Banks") to honor and process check and electronic transfer requests related to

---

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265); Wet Seal Catalog, Inc. (7604); and Wet Seal GC, LLC (2855-VA).  The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

the foregoing, and (d) granting related relief.  In support of the Motion, the Debtors rely on the *Declaration of Thomas R. Hillebrandt in Support of First Day Motions* (the "Hillebrandt Declaration") concurrently filed herewith.  In further support of the Motion, the Debtors respectfully represent as follows:

## I. JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105 and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II. BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

To date, no trustee, examiner or statutory committee has been appointed in these Cases by the United States Trustee.

6.      The Debtors are a national multi-channel specialty retailer selling fashion apparel and accessory items designed for female customers aged 13 to 24 years old.  The Debtors are currently comprised of two primary units: (a) the retail store business, which is primarily operated by The Wet Seal Retail, Inc.; and (b) the e-commerce business, which is primarily operated by Wet Seal Catalog, Inc.  Through their retail store business, until shortly before the Petition Date, the Debtors operated over 500 retail locations, principally in mall locations. Though their e-commerce business, the Debtors operate an e-commerce site at www.wetseal.com and have nearly 2.5 million followers on their Facebook page.  The Debtors also sell gift cards, which business is primarily operated through Wet Seal GC, LLC.

7.      The continuing fundamental shift in consumer behavior away from traditional mall shopping toward online-only stores and increased competition throughout the specialty retail fashion industry have created a difficult operating environment for many traditional mall-based fashion retailers such as the Debtors.  Indeed, over the past several weeks, at least three other specialty retailers focused on young adult girls—Deb Stores Holding LLC, dELiA*s, Inc., and Body Central Corp.—have commenced bankruptcy cases or assignments for the benefit of creditors and are in the process of conducting liquidations.  In addition to this industry-wide weakness, in the Debtors' case, the Debtors' financial performance was further adversely impacted by, among other things, (i) shifts away from the "fast fashion" segment, and (ii) ventures into business extensions that were ultimately not profitable.  In the third quarter of 2014 the Debtors hired a new management team, and this team began the process of shifting the

Debtors' operational strategy toward a more fashionable inventory mix and smaller and more varied style assortments.

8.      There was, unfortunately, insufficient time to implement the strategic vision before the Debtors faced a liquidity crisis, resulting from extensive operating losses driven by, among other things, persistent sales weakness across the majority of the Debtors' store base and changes in credit terms by the Debtors' vendors.  Further, the Debtors were required to cash collateralize all of the letters of credit issued by the Debtors' lender, Bank of America, N.A. (the "Prepetition Lender") under that certain Amended and Restated Credit Agreement, dated as of February 3, 2011 (as subsequently amended, modified, or restated, the "Prepetition Facility").

9.      Facing the foregoing issues, the Debtors determined that it would not be possible to restructure the Debtors out of Court without significant landlord concessions.  Accordingly, the Debtors engaged in negotiations with their major landlords regarding concessions from such landlords.  However, the Debtors were not able to reach an agreement with landlords on potential lease concessions during these negotiations, and on or about January 7, 2015, the Debtors closed 338 of their stores, irrevocably and unequivocally surrendered the premises to the applicable landlords, and terminated the portion of their workforce that had been employed in connection with those stores.  The Debtors capitalized on the holiday shopping season to conduct aggressive sales of the inventory in the closed stores and closed such stores in early January 2015.

10.      The Debtors intend to reorganize their business around the e-commerce business and the remaining stores with the most potential upside.  To meet their objectives, the Debtors have entered into (i) that certain Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement with B. Riley Financial, Inc. ("B. Riley") (the "DIP Term Facility"), pursuant to which the Debtors will receive a senior debtor-in-possession term loan that should provide them

01:16512294.1

with sufficient runway to navigate through the reorganization process, and (ii) that certain Plan Sponsorship Agreement with B. Riley, pursuant to which B. Riley will commit to a plan of reorganization under which B. Riley will receive 80% of newly issued common stock in the reorganized Debtors in exchange for investment of $20 million.  On the effective date of the plan, B. Riley will convert the entire DIP Term Facility into equity and contribute the balance of the $20 million to the reorganized Debtors in cash.  The remaining common stock will be issued to holders of allowed general unsecured claims whose claims are not satisfied through a convenience class cash election.  The Debtors also have entered into that certain Senior Secured, Super-Priority Debtor-in-Possession Letter of Credit Agreement (the "DIP L/C Facility"; together with the DIP Term Facility, the "DIP Facilities") with Bank of America, N.A. (as L/C Issuer, the "DIP L/C Lender"), pursuant to which the Debtors will obtain letters of credit that are required postpetition in the ordinary course of their business.

11.    The detailed factual background relating to the Debtors and the commencement of these Cases is set forth in the Hillebrandt Declaration.

### III. RELIEF REQUESTED

12.    By this Motion, the Debtors request that the Court enter an order, pursuant to Bankruptcy Code sections 105 and 363(b) and Bankruptcy Rules 6003 and 6004, (a) authorizing the Debtors to maintain and administer the Customer Programs and honor prepetition obligations to customers related thereto in their discretion in the ordinary course of business and in a manner consistent with past practice; (b) authorizing the Debtors to continue, replace, implement, modify and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court; (c) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing, and (d) granting related relief.

01:16512294.1

13.     Maintaining the loyalty, support, and goodwill of their customers is critical to the Debtors' reorganization efforts.  In short, the Debtors must maintain positive customer relationships and a reputation for reliability to ensure that their customers continue to purchase Wet Seal products.  Achieving these goals is particularly important while operating in chapter 11.  In the ordinary course of business, the Debtors provide customers with certain Customer Programs that engender goodwill, maintain loyalty, increase the Debtors' sales opportunities, and allow the Debtors a comparative advantage over their competition.  Specifically, the Customer Programs relate to the Debtors' programs by which they offer gift cards, refunds and exchanges, coupons and other promotional offers to their customers, as well as processing customer purchases through the use of credit cards.  The Debtors believe that their ability to continue the Customer Programs and to honor their obligations thereunder in the ordinary course of business is necessary to (i) retain their reputation for reliability, (ii) meet competitive market pressures, (iii) maintain positive customer relationships and (iv) ensure customer satisfaction, thereby retaining current customers, attracting new ones, and, ultimately, enhancing revenue and profitability for the benefit of all the Debtors' stakeholders.

A.      **Gift Cards and Refund and Exchange Program**

14.     In the ordinary course of business, the Debtors sell gift cards (collectively, the "Gift Cards") to customers in amounts ranging from $5 to $500.  Customers can purchase Gift Cards in the Debtors' retail stores and/or through its online store, which can be accessed at www.wetseal.com.  Gift Cards can be used only for in-store purchases or online purchases.  The Debtors also offer gift cards for sale in selected grocery and other retailers such as Albertson's, Pathmark, and A&P.  With respect to the gift cards offered for sale through such retailers, the Debtors utilize the services of third party processors who either (i) remit the customer payments on account of the Gift Cards to the Debtors, less a percentage commission or (ii) keep a

processing fee.  Gift card programs of this nature are commonplace and popular in the retail industry, and the Debtors' competitors offer similar programs to their customers.

15.     The Debtors allow their customers to return or exchange regular or promotional merchandise that is unworn, unwashed, undamaged, and with tags attached for any reason within 30 days of original purchase (the "Refund and Exchange Program").  Merchandise that is unworn, unwashed, undamaged with the tags attached presented within 14 days of original purchase with the original receipt may be returned for the same tender; merchandise presented after 14 days of original purchase but within 30 days of original purchase may be returned for an exchange or store credit.  Jewelry, lingerie, swimwear, cosmetics, compact discs and clearance merchandise are "final sale" items and are not accepted for an exchange or store credit.  If merchandise is not returned within 30 days of original purchase, the Debtors generally do not offer a refund, exchange or store credit.  Programs similar to the Refund and Exchange Program are common in the retail industry, and similar programs are used by the Debtors' competitors.

16.     Based on historical practice, the Debtors' books and records reflect an aggregate net liability in respect of Gift Cards and store credit of approximately $3.7 million.  The Debtors request authority, in their sole discretion, (i) to honor all Gift Cards purchased, and store credit issued, prior to the Petition Date,  (ii) to pay any prepetition processing fees or allow Gift Card vendors to set off commissions in the ordinary course of business, and (iii) to continue selling and honoring Gift Cards, and issuing and honoring store credit, in the ordinary course of business.

17.     As a result of the inherently uncertain nature of the Refund and Exchange Program, the Debtors are unable to estimate the value of their obligations with precise accuracy with respect thereto as of the Petition Date.  The Debtors, however, do not expect the

commencement of these chapter 11 cases to result in a significant deviation in the volume of monthly returns and exchanges from that which they experienced prepetition, which average between $1.0 million to $2.0 million per month.  Accordingly, the Debtors request authority, in their sole discretion, to honor prepetition obligations associated with the Refund and Exchange Program and to maintain and continue honoring the Refund and Exchange Program postpetition in the ordinary course of business.

**B.**    **Promotional Offers**

18.    The Debtors offer various promotional offers to customers throughout the year (collectively, the "Promotions").  The Promotions are aimed at driving sales and maintaining market competitiveness.  The Debtors offer various in-store and online promotions that provide discounts to customers, such as "percentage off," "buy-one-get-one-free," and "gift with purchase" promotions. The Promotions are similar to those routinely offered in the retail industry.  The Debtors seek authority to continue offering these Promotions postpetition in the ordinary course of business.

**C.**    **Credit Card and Other Payment Processors**

19.    In addition to cash, the Debtors accept several other methods of payment from customers at their point of sale:  (i) credit cards; (ii) PayPal; (iii) Amazon.com; and (iv) checks. For all methods of payment (other than a cash transaction), the Debtors receive the net customer sales less any chargebacks, returns and processing fees charged.  The processing fees charged by each company vary, but are in the range of 1% to 4%.  The fees that are owing to these companies are set off from the funds that are remitted to the Debtors on a daily basis.

20.    Maintaining use of the credit cards and other payment mechanisms such as PayPal and Amazon.com is essential to the continuing operation of the Debtors' business because the vast majority of the Debtors' sales are made using these payment methods.  By this Motion, the Debtors request authority, in their sole discretion, to allow the credit card companies, Amazon,

01:16512294.1

153699.5                                    8

and PayPal to continue to process the customer payments, including deducting chargebacks, returns and processing fees in the ordinary course of business.

## IV.  BASIS FOR RELIEF

**A.    Honoring Customer Program Commitments is Warranted under Sections 105(a) and 363(b) of the Bankruptcy Code**

21.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  Under this section, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id.*

22.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *Ionosphere Clubs*, 98 B.R. at 175.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity." *Id.*, at 175-76.

23.     The United States Court of Appeals for the Third Circuit recognized the doctrine

of necessity in *In re Lehigh & New England Railway. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

The Third Circuit held that a court could authorize the payment of prepetition claims if such

payment was essential to the continued operation of the debtor. *Id.* (stating courts may authorize

payment of prepetition claims when there "is the possibility that the creditor will employ an

immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*,

467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits

"immediate payment of claims of creditors where those creditors will not supply services or

material essential to the conduct of the business until their pre-reorganization claims shall have

been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (noting that, in

the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of

business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

24.     The rationale for the doctrine of necessity—the rehabilitation of a debtor in

reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*,

98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition

claims to certain trade vendors was "essential to the survival of the debtor during the chapter

11 reorganization."); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991)

("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of

reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has

developed . . . where bankruptcy courts permit the payment of certain pre-petition claims,

pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such

payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)

(approving payment of prepetition unsecured claims of tool makers as "necessary to avert a

serious threat to the Chapter 11 process."); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."); 2 Collier on Bankruptcy ¶ 105.04[5][a] (16th ed. 2013) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

25.     Accordingly, the Court has authority to authorize the Debtors to continue the Customer Programs, and pay prepetition claims arising thereunder, pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

26.     The Customer Programs are standard in the retail industry.  If the Debtors are unable to honor or continue their Customer Programs, their ability to conduct business and generate sales will be severely hampered.  On the other hand, continuing to administer their Customer Programs without interruption during the pendency of these Cases will help preserve the Debtors' valuable customer relationships and goodwill, which will inure to the benefit of all of the Debtors' stakeholders.

27.     Moreover, failure to continue the Customer Programs may subject the Debtors to liability for consumer deceptive trade practices.  Most, if not all, of the states where the Debtors conduct their business have enacted statutes declaring unlawful any deceptive trade practices by any business being conducted in that state.  The Debtors' customers expect that the Debtors will

honor the Customer Programs prior to the Petition Date and rely on such representations when purchasing merchandise and participating in the Customer Programs. Thus, it is necessary for the Debtors to continue the Customer Programs in order to avoid potential liability for claims arising out of state consumer protection laws.

28.      Courts in this district have granted relief similar to that requested here. *See, e.g.*, *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (Docket No. 74); *In re Sorenson Commcn's, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (Docket No. 44); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (Docket No. 59); *In re Neb. Book Co., Inc.*, No. 11-12005 (PJW) (Bankr. D. Del. July 26, 2011) (Docket No. 227); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Jan 20, 2011) (Docket No. 39); *In re Constar Int'l Inc.*, No. 11-10109 (CSS) (Bankr. D. Del. Jan 13, 2011) (Docket No. 49).

29.      The Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs substantially outweighs the costs associated with the Customer Programs. Accordingly, the Debtors respectfully request the authority to continue their Customer Programs and honor prepetition commitments related thereto, all in the Debtors' sole discretion. In addition, the Debtors respectfully request authority to continue, replace, implement, modify and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further application to the Court.

**B.      Processing of Checks and Electronic Fund Transfers Should be Authorized**

30.      The Debtors have sufficient funds to pay any amounts related to the Customer Programs in the ordinary course of business. Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or wire transfer requests

01:16512294.1

relating to the Customer Programs, as applicable. The Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Thus, the Debtors request that the Court authorize all applicable Banks to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the Customer Programs.

## V. IMMEDIATE RELIEF IS NECESSARY

31.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

## VI. WAIVER OF ANY APPLICABLE STAY

32.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## VII. NOTICE

33.     The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) the Prepetition Lender; and (iv) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule

01:16512294.1

2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

## VIII.  CONCLUSION

WHEREFORE, for the reasons set forth herein and in the Hillebrandt Declaration, the

Debtors respectfully request that this Court enter an order, substantially in the form attached

hereto, granting the relief requested in the Motion and such other and further relief as is just and

proper.

Dated:  January 16, 2015

/s/ Maris J. Kandestin
Michael R. Nestor, Esq. (DE Bar No. 3526)
Maris J. Kandestin, Esq. (DE Bar No. 5294)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Tel:    (302) 571-6600
Fax:    (302) 571-1253
Email:  mnestor@ycst.com
        mkandestin@ycst.com

and

Lee R. Bogdanoff, Esq.
Michael L. Tuchin, Esq.
David M. Guess, Esq.
Jonathan M. Weiss, Esq.
KLEE, TUCHIN, BOGDANOFF & STERN  LLP
1999 Avenue of the Stars, 39th Floor
Los Angeles, CA 90067
Tel:    (310) 407-4022
Fax:    (310) 407-9090
Email:  lbogdanoff@ktbslaw.com
        mtuchin@ktbslaw.com
        dguess@ktbslaw.com
        jweiss@ktbslaw.com

01:16512294.1

# Exhibit A

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No.:  15-10081 (___) |
| THE WET SEAL, INC., a Delaware corporation, *et al.*[1] | (Jointly Administered) |
| Debtors. | **Re: Docket No. ___** |

## ORDER AUTHORIZING MAINTENANCE, ADMINISTRATION, AND CONTINUATION OF CERTAIN CUSTOMER PROGRAMS

Upon the motion (the "Motion")[2] of The Wet Seal, Inc. and its subsidiaries, the debtors

and debtors in possession (the "Debtors") in the above-captioned jointly administered chapter 11

cases (the "Cases"), for entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 6003 and 6004

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (a) authorizing the

Debtors to maintain and administer customer-related programs as described in the Motion

(collectively, the "Customer Programs") and honor prepetition obligations to customers related

thereto in the ordinary course of business and in a manner consistent with past practice,

(b) authorizing the Debtors to continue, replace, implement, modify and/or terminate one or

more of the Customer Programs, in each case as the Debtors deem appropriate in their business

judgment and in the ordinary course of business, without further application to the Court,

(c) authorizing banks and other financial institutions to honor and process check and electronic

transfer requests related to the foregoing, and (d) granting related relief; and upon consideration

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265); Wet Seal Catalog, Inc. (7604); and Wet Seal GC, LLC (2855-VA).  The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of the Hillebrandt Declaration and the entire record of these Cases; and it appearing that the

Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the

*Amended Standing Order of Reference* from the United States District Court for the District of

Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to

28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the

United States Constitution; and it appearing that venue of these Cases and of the Motion is

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of

the Motion has been given under the circumstances, and that no other or further notice need be

given; and it appearing that the relief requested in the Motion is in the best interests of the

Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and

good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED, as set forth herein.

2.      The Debtors are authorized, but not directed, to satisfy their prepetition

obligations arising from the Customer Programs in the ordinary course of business as they

become due in their sole discretion.

3.      The Debtors are authorized to continue, replace, implement, modify and/or

terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate

in their business judgment and in the ordinary course of business, without further application to

the Court.

4.      The Banks are authorized, when requested by the Debtors, in the Debtors'

discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank

accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or

other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Order.

5.      Nothing in the Motion or this Order, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as (a) an admission as to the validity or priority of any claim or lien against the Debtors or an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or (b) a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity or amount of any payment made pursuant to this Order.

6.      The credit card companies, internet vendors, and check processors used by the Debtors are authorized to offset chargebacks, returns, and fees on account of customer purchases in the ordinary course of business that may have arisen before the Petition Date up to the aggregate amount set forth in the Motion.

7.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the Customer Programs.

8.      Nothing contained in the Motion or this Order is intended or should be construed to create an administrative priority claim on account of any Customer Programs.

01:16512294.1

9.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

10.      Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained hereunder, shall be subject to the requirements imposed on the Debtors under (i) the *Interim Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Postpetition Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* and any final order granting such relief (together, the "DIP Order"), including, but not limited to, the Budget (as defined in the DIP Order) and (ii) the *Interim Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Postpetition L/C Financing Facility, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral and Providing for Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* and any final order granting such relief.

11.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.  The requirements of Bankruptcy Rule 6004(a) are waived.

12.      Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Order.

01:16512294.1

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.


Dated: Wilmington, Delaware
       _____, 2015


                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE