IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE WET SEAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10081 (CSS)<br><br>(Joint Administration Pending)<br><br><br>**Related to Docket No. 21** |

**OBJECTION OF VERSA CAPITAL MANAGEMENT, LLC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (I) AUTHORIZING POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (III) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING**

Versa Capital Management, LLC ("**Versa**"), by and through its undersigned counsel, hereby submits this objection (the "**Objection**") to the *Debtors' Motion For Entry Of Interim And Final Orders Pursuant To Sections 105, 361, 362, 363 And 364 Of The Bankruptcy Code And Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Postpetition Financing, (II) Granting Liens And Providing Superpriority Administrative Expense Priority, (III) Authorizing Use Of Cash Collateral And Providing For Adequate Protection, (IV) Modifying The Automatic Stay, And (V) Scheduling A Final Hearing* [Docket No. 21] (the "**DIP Motion**") filed by the above-captioned debtors and debtors-in-possession (the "**Debtors**") on January 16, 2015. In support of its Objection, Versa respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265); Wet Seal Catalog, Inc. (7604); and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

1

## Preliminary Statement[2]

On January 19, 2015, Versa submitted to the Debtors a proposal for an alternative DIP Term Loan and plan sponsorship agreement. Versa's alternative DIP Term Loan reduces the cost of the DIP Term Loan, with reduced commitment fees and reduced interest rates. Versa's alternative plan sponsorship agreement likewise reduces the cost to the Debtors' estates by eliminating a $1 million break-up fee and increasing the equity purchase price to $25 million. Versa is otherwise willing to agree to the provisions of the DIP Term Loan (including the related interim order, credit agreement and security agreement) and the Plan Sponsorship Agreement and is prepared to move forward immediately, including providing the DIP Term Loan on Tuesday, January 20, 2015, assuming it is approved by the Court. This proposal is set forth in a letter from Versa to the Debtors, which is attached hereto as **Exhibit A**.

The stated reasons for the need for financing under the DIP Motion are that the Debtors will allegedly "run out of cash within a matter of weeks" (DIP Motion at ¶ 16) and that the Debtors have been "unable to obtain financing from other sources on terms preferable to the proposed DIP Facilities." DIP Motion at ¶21. Neither statement is correct. The 13 Week Cash Flow Budget attached as Exhibit A to the Declaration of Thomas R. Hillebrandt in Support of First Day Motions [Docket No. 19] (the **"Hillebrandt Dec."**) indicates that there is no need to draw any financing until March 7, 2015 and the Interim DIP loan of $1 million is simply not needed at this time. This said, by entering into the Interim DIP loan at this time, the estate will incur fees and charges exceeding $375,000. Further, the notion that preferable financing is not available is inaccurate. Versa was not solicited for purposes of providing a DIP loan, nor is there any evidence other than conclusory statements from Mr. Hillebrandt and Mr. Pitts that other

---

[2] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them below.

2

potential lenders were sought. Hillebrandt Dec. at ¶ 79. Declaration of Derek Pitts in Support of the DIP Motion at ¶ 14 [(Docket No. 22]. Upon learning of the Debtors' filing and reviewing the Debtors' papers which were filed on January 16, 2015, Versa responded on January 19, 2015, with a DIP financing proposal markedly superior to that offered by B. Riley, as described above and set forth in **Exhibit A** attached hereto.

Further, while the DIP Motion alludes to a Plan Sponsorship Agreement (the "PSA") with B. Riley (DIP Motion at ¶ 12), it neither explains the import of that agreement nor the prepetition relationship it had with B. Riley. Upon review of the publicly filed documents, it appears that B. Riley acted as the Debtors' financial advisor and agent, and as recently as September 30, 2014, held over 125,000 shares of the Debtors.[3] There is no information in the First Day Motions that makes reference to these facts or the relationship between the parties. Further, the PSA requires that B. Riley be the DIP lender.  See PSA at § 1 (a)(x) (a copy of which is attached hereto as **Exhibit B**). These prepetition connections must be scrutinized before B. Riley's comprehensive scheme for acquiring the Debtors' assets is permitted to proceed. To address any potential concerns about the loss of a plan sponsor, Versa has also made a PSA proposal with markedly superior terms to those contained in the PSA, as set forth in its letter attached hereto as Exhibit A, and is likewise prepared to immediately proceed with a PSA contemporaneously with providing the DIP Term Loan.

Accordingly, the Court should either (x) deny the DIP Motion, (y) approve the DIP Motion substituting Versa as the DIP Lender and the plan sponsor under the PSA, if the Debtors prefer to move forward with approval of the interim financing, or (z) continue the hearing on the DIP Motion, in order for the Debtors to have a meaningful opportunity to consider Versa's

---

[3] Versa does not know if B. Riley is currently an equity holder of the Debtors.

alternative proposal and so that other parties in interest have an opportunity to analyze these facts and issues before significant estate obligations are incurred in connection with the DIP Term Loan.

## Status of the Chapter 11 Cases

1. On January 15, 2015 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). To date, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

2. On the Petition Date, the Debtors filed the DIP Motion [Docket No. 21], which seek approval, on an interim and final basis, of a $20 million term loan (subject to a $5 million availability block and borrowing base formula) (the "**DIP Term Loan**") from B. Riley Financing Inc. ("**B. Riley**") and the *Motion Of The Debtors For An Order Pursuant To 11 U.S.C. §§ 105(a), 365(a) And 503(b) (I) Approving And Authorizing The Assumption Of The Plan Sponsorship Agreement, And (II) Approving And Authorizing The Payment Of The Break-Up Fee And Expense Reimbursement* [Docket No. 3], by which the Debtors seek the Court's authorization to assume the PSA dated as of January 15, 2015, by and between the Debtors and B. Riley. This motion is not yet set for hearing. A copy of the PSA is attached hereto as **Exhibit B**.

## Factual Background

3. Based in Philadelphia, Pennsylvania, Versa is a private equity investment firm with more than $1.4 billion in assets under management. It invests in all facets of a company's capital structure. Versa's portfolio includes turnaround investments in numerous specialty

4

retailers including AVENUE Stores, Bob's Stores, Eastern Mountain Sports (EMS), and Sports Chalet, as well as investments in Hatteras-CABO, a builder of sportfishing boats and luxury motoryachts; Allen-Vanguard, a global leader in the development of defense systems and IED counter-measures; Polartec®, a producer of branded high-performance fabrics; and Civitas Media, a portfolio of community newspapers. Versa is uniquely positioned to work with the Debtors to complete the transactions contemplated by the DIP Term Loan and the PSA given its extensive experience in the bankruptcy process, special situations generally and the retail industry.

4. On or about October 22, 2014, Versa had an introductory phone conversation with representatives of the Debtors' management.

5. On or about December 15, 2014, Versa contacted the Debtors' investment banker, Houlihan Lokey Capital, Inc. ("**Houlihan**") regarding the possibility of a transaction, and advising them of Versa's continuing interest. At that time, Houlihan informed Versa that a process, including offering materials, could be expected to launch after the new year.

6. On or about January 9, 2015, in response to news reports of the Debtors' decision to close two-thirds of its stores, Versa contacted Debtors' counsel and Houlihan regarding the possibility of a transaction, in light of the Debtors' potential bankruptcy filing. Debtors' counsel directed Versa to speak with Houlihan, which Versa then did. In a subsequent call, Versa advised Houlihan that Versa could make a proposal to provide DIP financing. However, Houlihan did not provide Versa with any information, declined Versa's offer to sign a confidentiality agreement and Versa received no opportunity to propose any financing arrangement, including a DIP loan or plan sponsorship agreement.

7. After obtaining no information from Houlihan or the Debtors' counsel, Versa learned on January 16, 2015 that B. Riley had entered into an agreement with the Debtors to act as plan sponsor and DIP Lender. After learning this information, Versa contacted the Debtors' counsel again and was provided a copy of the executed PSA. Upon providing Versa with a copy of the PSA, counsel to the Debtors concurrently informed Versa that in light of the PSA's exclusivity provision, the Debtors could not engage in discussions with Versa regarding the PSA.

8. On January 18, 2015, Versa's counsel contacted the Debtors' counsel to attempt to engage the Debtors in discussions regarding the DIP Term Loan and the PSA. The Debtors' counsel informed Versa's counsel that in light of the exclusivity provision contained in the PSA, the Debtors could not have any substantive discussions with Versa.

9. On January 19, 2015, Versa submitted an alternative transaction proposal (the "**Versa Proposal**") to the Debtors for both the DIP Term Loan and the PSA, a copy of which is attached hereto as **Exhibit A**. The Versa Proposal adopts the structure and timeline of B. Riley's proposed transaction, and is economically superior to B. Riley's proposal for several reasons, including:

- Versa offers $25 million in exchange for an 80% equity stake in the Debtors, whereas B. Riley is only offering $20 million for the same equity stake.

- Versa seeks no break-up fee and only expense reimbursements, whereas B. Riley seeks a $1 million break-up fee and expense reimbursements.

- Versa offers an 8% interest rate and 10% default interest rate for its proposed DIP loan, whereas B. Riley seeks a 10.25% interest rate and 12.25% default interest rate for the same loan.

- Versa seeks a 1% commitment fee in connection with its proposed DIP loan, whereas B. Riley seeks a 2.5% commitment fee. In addition, Versa would only require payment of a 1% commitment fee on the amount of any interim financing approved at the hearing on January 20, 2015. If, as requested, $1 million of interim financing is approved, Versa would be paid a commitment fee of $10,000 at the interim hearing, with any additional commitment fee due and owing upon approval of the financing on a final basis. B. Riley is requesting, at the interim hearing, approval of a commitment

6

fee in the amount of $375,000, or 2.5% of $15 million (the total commitment under the DIP Term Loan, $20 million, less the availability block, $5 million).

10. The Debtors' CEO responded to the Versa Proposal by indicating that he had circulated the proposal to the board of directors and had called a board meeting for the morning of January 20, 2015

### Objection

11. While Versa has not yet heard from the Debtors concerning their willingness to move forward with the Versa Proposal, Versa submits this Objection to the approval of the DIP Motion on an interim basis, because in light of the superior nature of the Versa Proposal, it is in the best interest of the Debtors' estates, including the Debtors' unsecured creditors, that the Versa Proposal be made public for all parties in interest to consider. While not a creditor in these cases, Versa submits that it has standing to raise this Objection. With a better offer on the table for the DIP Term Loan and the PSA, Versa should be heard by the Court. *See, e.g., In re Colony Hill Assocs.*, 111 F.3d 269, 274 (2d Cir. 1997); *In re Moran*, 566 F.3d 676, 681-82 (6th Cir. 2009); *In re Fin. News Network, Inc.*, 126 B.R. 152, 155 (S.D.N.Y. 1991) (standing for disqualified bidder whose bid was not considered); *Cedar Island Builders, Inc. v. S. Cnty. Sand & Gravel*, 151 B.R. 298, 300-02 (D.R.I. 1993) (standing where denied the opportunity to bid).

12. Given the Versa Proposal, the DIP Term Loan with B. Riley should not be approved at this time. The Versa Proposal is a better offer, on better terms and for these reasons, the Debtors cannot satisfy the statutory standards for approval of the DIP Term Loan.

13. In addition, there is no urgency for approval of the DIP Term Loan. As noted above, Versa is prepared to immediately step in as the lender under the DIP Term Loan and as the plan sponsor under the PSA. However, if the Debtors need additional time to consider Versa's proposal, a short continuance may be appropriate. Based upon the 13-week cash flow

projections outlined in the DIP Motion, the Debtors do not appear to need financing until at least the eighth week of these Chapter 11 Cases (week beginning March 7, 2015). Any continuance should not prejudice the Debtors given that they have approximately $21.6 million in cash as of January 17, 2015 and do not require the DIP Term Loan until approximately March 7, 2015.

14. Finally, it is not clear how B. Riley became involved in the proposed DIP Term Loan and PSA. Based upon a review of the Debtors' SEC filings and information available regarding B. Riley, it appears that B. Riley: (i) may have held stock in the Debtors; (ii) may continue to hold stock in the Debtors; (iii) acted as a market maker for the Debtors' stock; (iv) issued investment reports regarding the Debtors' stock; (v) acted as an agent for the placement of the Debtors' stock; and (vi) committed to purchase the Debtors' stock to the extent the placement of the Debtors' stock was not successful. Because the DIP Motion's proposed order grants releases to B. Riley, further disclosure and review of the parties' relationships may be needed, including by the creditors or any Committee appointed in these cases. To the extent that B. Riley is an insider of the Debtors, any related transactions are also subject to heightened scrutiny. *See Beal Bank, S.S.B. v. Waters Edge Ltd. P'ship*, 248 B.R. 668, 680 (D. Mass. 2000) (finding that insider transactions, which by their nature are not arm's length transactions, "raise the very real spectre that insiders might receive favorable terms at the expense of creditors", and therefore require heightened scrutiny); *In re Siliken Mfg. USA, Inc.*, No. 13-00119-CL11, 2013 WL 5330481, at *7 (Bankr. S.D. Cal. Sept. 19, 2013) ("Indeed, the Code often subjects insider dealings to heightened scrutiny in recognition that even ostensibly arm's length transactions between insiders have an inherently coercive element to them.").

## Conclusion

Versa is simply looking for a fair opportunity to act as the lender under the DIP Term Loan and as plan sponsor under the PSA. It has proposed better terms on both the DIP Term Loan and the PSA for the creditors and these estates and is prepared to move quickly, on the same timeline as proposed by B. Riley and under the same agreements or as otherwise agreed.

For all of these reasons, Versa respectfully requests that this Court: (i) deny the Debtors request to enter into the DIP Term Loan with B. Riley at this time and substitute Versa as the lender under the DIP Term Loan and as the sponsor under the PSA, if the Debtors require the DIP Term Loan immediately; (ii) in the alternative, continue the hearing on the DIP Motion to a later date; and (iii) grant such other and further relief as this Court deems just and proper.

*Remainder of page intentionally left blank.*

Dated: January 19, 2015  
Wilmington, Delaware

/s/ Domenic E. Pacitti
---
Domenic E. Pacitti (DE Bar No. 3989)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email: dpacitti@klehr.com

- and -

Morton Branzburg (*pro hac vice* pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-2700
Facsimile: (215) 568-6603
Email: mbranzburg@klehr.com

-and-

Nancy A. Peterman (*pro hac vice pending*)
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 456-8400
Facsimile: (312) 456-8435
Email: petermann@gtlaw.com

*Counsel for Versa Capital Management, LLC*