UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>THE WET SEAL, INC., a Delaware corporation, *et al.*[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 15-10081 (CSS)<br><br>(Jointly Administered)<br><br>Re: Docket Nos. 5 & 103 |

**FINAL ORDER (I) AUTHORIZING CONTINUED USE OF CASH MANAGEMENT SYSTEM, (II) AUTHORIZING THE CONTINUATION OF INTERCOMPANY TRANSACTIONS, (III) GRANTING ADMINISTRATIVE PRIORITY STATUS TO POSTPETITION INTERCOMPANY TRANSACTIONS, (IV) AUTHORIZING USE OF PREPETITION BANK ACCOUNTS, ACCOUNT CONTROL AGREEMENT, AND CERTAIN PAYMENT METHODS, AND(V) WAIVING THE REQUIREMENTS OF 11 U.S.C. § 345(B) ON AN INTERIM BASIS**

Upon the motion (the "Motion")[2] of The Wet Seal, Inc. and its subsidiaries, as debtors and debtors in possession herein (collectively, the "Debtors") in the above-captioned jointly administered chapter 11 cases (the "Cases"), for entry of an order, pursuant to sections 105, 345, 363, 364(b), and 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtors' continued use of their existing cash management system, (ii) authorizing the continuation of intercompany transactions, (iii) granting administrative priority status to postpetition intercompany transactions, (iv) authorizing the Debtors to continue

---

[1]  The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265); Wet Seal Catalog, Inc. (7604); and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1796595.2

using prepetition bank accounts and account control agreements and using debit, wire, and ACH payments, and (v) waiving the requirements of 11 U.S.C. § 345(b) on an interim basis; and upon consideration of the Hillebrandt Declaration and the record of these chapter 11 cases; and it appearing that the Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and it appearing that the Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of these cases and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that due and adequate notice of the Motion has been given under the circumstances, and that no other or further notice need be given; and the Court having entered the *Interim Order (I) Authorizing Continued Use of Cash Management System, (II) Authorizing the Continuation of Intercompany Transactions, (III) Granting Administrative Priority Status to Postpetition Intercompany Transactions, (IV) Authorizing Use of Prepetition Bank Accounts, Account Control Agreement, and Certain Payment Methods, and (V) Waiving the Requirements of 11 U.S.C. § 345(b) on an Interim Basis* [Docket No. 103]; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED on a final basis, as set forth herein.

2. The Debtors are authorized, in their sole discretion, to: (a) continue operating the Cash Management System and honor any prepetition obligations related thereto; (b) continue making Intercompany Transactions in the ordinary course of business; (c) maintain existing

Bank Accounts and business forms, and (d) maintain the ability to use debit, wire and ACH payments.

3. The Debtors shall maintain accurate and detailed records in the ordinary course of business reflecting all transfers of cash, if any, including Intercompany Transactions, so as to permit all such transactions may be readily ascertainable, traced, recorded properly and distinguished between pre and postpetition transactions, and the Debtors shall provide copies of such records to counsel to the Prepetition Lender upon request. Unless otherwise ordered by the Court, all intercompany claims between Debtors arising after the Petition Date shall be accorded administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

4. The Debtors are further authorized, in their sole discretion, to: (a) continue to use, with the same account numbers, all of the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibits B** and **C** to the Motion; (b) use, in their present form, all checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession; (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH payments, and other debits; and (e) pay any ordinary course both prepetition or postpetition bank fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts.

5. All Banks at which the Bank Accounts are maintained are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of debtors in possession, without interruption and in the ordinary course of business. In this regard, the Banks are

authorized to receive, process, honor and pay any and all checks, ACH payments and other instructions, and drafts payable through, drawn or directed on the Bank Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto.

6. All Banks provided with notice of this Final Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

7. The Deposit Account Control Agreement shall be maintained and shall continue to govern the postpetition cash management relationship between the Debtors and Bank of America ("BofA"), *provided, however*, that nothing contained herein shall constitute an assumption of the Deposit Account Control Agreement pursuant to section 365 of the Bankruptcy Code.

8. In the course of providing cash management services to the Debtors, any Bank, without further order of this Court, is authorized to (i) charge, and the Debtors are authorized to pay or honor, both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks are entitled under the terms and in accordance with their contractual arrangements with the Debtors, and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on or subsequent to the Petition Date, in the ordinary course.

9. Notwithstanding any other provision of this Final Order, any Bank may rely on the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to

any order of this Court, and any Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite the above-described protective measures, shall neither be deemed to be in violation of this Final Order nor be liable to the Debtors or their estates on their account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

10. Any Banks are further authorized to (a) honor the Debtors' directions with respect to the opening and closing of any Bank Account, and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

11. For banks at which the Debtors hold bank accounts that are party to a Uniform Depository agreement (a "UDA") with the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Debtors shall, by Wednesday, February 4, 2015, (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers, and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

12. For banks at which the Debtors hold accounts that are not party to a UDA with the U.S. Trustee, the Debtors shall have until Thursday, February 19, 2015 to comply with section 345 of the Bankruptcy Code unless further extended by order of the Court, and the Debtors shall use their good-faith efforts to cause the banks to execute a UDA in a form prescribed by the U.S. Trustee by Thursday, February 19, 2015. The U.S. Trustee's rights to seek further relief from

this Court on notice in the event that the aforementioned banks are unwilling to execute a UDA in a form prescribed by the U.S. Trustee are fully reserved.

13. The Debtors are authorized to use their existing check stock; <u>provided, however,</u> once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks.

14. Notwithstanding anything contained herein, despite the Debtors' use of consolidated Cash Management System, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor pays those disbursements.

15. Each of the Debtors' Banks is authorized to debit the Debtors' accounts in the ordinary course of business without need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of the Petition; (ii) all checks, automated clearing house entries, and other items deposited or credited to one of Debtors' accounts with such Bank prior to filing of the petitions which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of the petitions; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

16. The Debtors have deposited the sum of $1,500,000 into an account maintained at BofA (the "<u>Cash Management/Indemnity Account</u>") as security for the Debtors': (a) payment

and/or reimbursement of all prepetition and postpetition fees, costs, expenses and other charges and liabilities, including, without limitation, reasonable professional fees and expenses incurred or charged by BofA in connection with the maintenance and administration of any BofA Bank Accounts, the Cash Management System and related treasury management services (collectively, "Treasury Management Obligations"), and (b) payment and/or reimbursement of all Pre-Petition Indemnity Obligations.[3]

17. BofA shall be granted a first priority, valid, perfected, and enforceable lien in and upon the Cash Management/Indemnity Account until such time as all Treasury Management Obligations and all Pre-Petition Indemnity Obligations have been indefeasibly paid and satisfied in full. Absent the prior written consent of BofA, the Debtors shall not file any motion or other request (a) seeking authority to use the funds on deposit in the Cash Management/Indemnity Account for any purpose other than for the payment and/or reimbursement of Treasury Management Obligations or to satisfy the Pre-Petition Indemnity Obligations, or (b) pursuant to section 364(d) of the Bankruptcy Code or otherwise, to prime the security interests and postpetition lien provided to BofA under this Final Order by offering a party-in-interest a superior or *pari passu* lien or claim in or upon the funds on deposit in the Cash Management/Indemnity Account (or the proceeds and products thereof).

18. In furtherance of the foregoing, after the Petition Date BofA is authorized and empowered, without further order of the Court, to charge the Cash Management/Indemnity Account for the Treasury Management Obligations, and the automatic stay imposed by section

---

[3] As defined in that certain "*Interim Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (I) Authorizing Postpetition L/C Financing Facility, (II) Granting Liens and Providing Superpriority Administrative Expense Priority, (III) Authorizing Use of Cash Collateral and Providing for Adequate Protection, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing*" [Docket No. 105] (the "BOA Interim Financing Order").

362 of the Bankruptcy Code is hereby modified to the extent necessary to implement and effectuate the terms and provisions of this Final Order and to enable BofA to charge the Cash Management/Indemnity Account for payment and/or reimbursement of Treasury Management Obligations and Pre-Petition Indemnity Obligations at such times and in such amounts as shall be determined by BofA in its discretion and as otherwise provided under the underlying cash management agreements governing the BofA Bank Accounts, this Final Order, and the BofA Interim Financing Order, as applicable.

19. BofA shall release (a) its first priority, valid, perfected, and enforceable lien in and upon the Cash Management/Indemnity Account and the funds deposited therein (and the proceeds and products thereof) and (b) the funds deposited in the Cash Management/Indemnity Account, in each case at such time(s) and in such amount(s) as shall be provided in Paragraph 13(d) of that certain *"Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (1) Authorizing Post-Petition L/C Financing Facility, (2) Granting Liens and Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (4) Modifying the Automatic Stay"*, which is being entered concurrently with this Final Order.

20. Nothing contained herein shall prevent the Debtors from closing any Bank Account(s) or opening any additional bank accounts, as they may deem necessary and appropriate, and any relevant bank is authorized to honor the Debtors' requests to close or open such Bank Accounts or additional bank accounts, as the case may be; provided that, notice of the opening or closure of any account shall be given to the U.S. Trustee and the Official Committee of Unsecured Creditors as soon as practicable; and provided further that, any new bank accounts

shall be opened at a bank that is a party to a UDA with the U.S. Trustee, or at a bank that is willing to immediately execute a UDA.

21. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Final Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtors or a waiver of the Debtors' rights to dispute any claim or lien.

22. Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors. The requirements of Bankruptcy Rule 6004(a) are waived under the circumstances.

23. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Final Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Final Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action necessary or appropriate to implement this Final Order.

24. As soon as practicable after entry of this Final Order, the Debtors will serve a copy of this Final Order to the Banks at which the Bank Accounts are maintained.

25. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

26. The Court retains jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Final Order.

Dated: February 5, 2015
Wilmington, Delaware

_____
CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE