## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE WET SEAL, INC., et al.,[1] | ) | Case No. 15-10081 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | **Re: Docket Nos. 19, 21, 22 & 105** |

## FINAL ORDER PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1) AUTHORIZING POST-PETITION L/C FINANCING FACILITY, (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION, AND (4) MODIFYING THE AUTOMATIC STAY

Upon the motion (the "Motion"),[2] dated January 15, 2015 [Docket No. 21], of The Wet Seal, Inc., et al., as debtors and debtors-in-possession (individually a "Debtor", and collectively the "Debtors"), pursuant to sections 105, 361, 362, 363, and 364 of Title 11, United States Code (the "Bankruptcy Code") and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), for entry of an interim order and a final order (this "Final Order") granting the following relief:

**(I)    DIP Financing - on an interim and final basis:**

(A)    Authorizing the Debtors, in addition to the roll-up of all outstanding Pre-Petition Letters of Credit (defined below), to obtain up to $18,328,777 in

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265), Wet Seal Catalog, Inc. (7604), and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

[2] Capitalized terms used in this Final Order but not defined herein shall have the meanings ascribed to such terms in the DIP L/C Agreement (defined below).

post-petition letters of credit (inclusive of $10,828,777 in Pre-Petition Letters of Credit (defined below) which are subject to the deemed "roll-up hereunder) (each a "<u>DIP Letter of Credit</u>", and collectively the "<u>DIP Letters of Credit</u>"), pursuant to that certain: (x) Senior Secured Super-Priority Debtor in Possession Letter of Credit Agreement, dated as of January 15, 2015 (as the same may be amended, modified, restated, or supplemented and in effect from time to time, including by this Final Order, the "<u>DIP L/C Agreement</u>"), by and between the Debtors, as "Applicant", and Bank of America, N.A. (in its capacity as letter of credit issuer under the DIP L/C Agreement, the "<u>DIP L/C Issuer</u>");

(B)     Approval of the DIP L/C Agreement and all other agreements, documents, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP L/C Issuer, including, without limitation, all "Loan Documents", each as amended and in effect from time to time (collectively with the DIP L/C Agreement, the "<u>DIP L/C Facility Agreements</u>"; and the post-petition credit facility represented in the DIP L/C Facility Agreements shall sometimes be referred to herein as the "<u>DIP L/C Facility</u>");

(C)     Authorizing the deemed "roll-up" of all outstanding Pre-Petition Letters of Credit as of the Petition Date (defined below) into the DIP L/C Facility;

(D)     Granting the DIP L/C Issuer the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims:

    (i)     First priority, valid, perfected, and enforceable Liens in and upon the DIP Collateral (defined below), as provided in and as contemplated by this Final Order and the DIP L/C Facility Agreements, including upon any Cash Collateral (defined below) on deposit in the Pre-Petition Cash Collateral Account (defined below), subject to (i) any Permitted Prior Liens and (ii) the rights of any holder of a Lien that has not heretofore consented to its Lien being "primed" hereunder; and

    (ii)     A superpriority administrative claim in respect of all DIP L/C Obligations (defined below) as set forth in Paragraph 10 below.

**(II)     Use of Cash Collateral - on an interim and final basis:**

(A)     Subject to such limitations as shall be provided herein and Paragraphs 15-16 hereof, authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("<u>Cash Collateral</u>"), in which the Administrative Agent, Collateral Agent, the L/C Issuer, the Lenders and/or any other Credit Parties (each such term as defined under that certain Amended and Restated Credit Agreement dated as of February 3, 2011 (as amended, modified or supplemented prior to the Petition Date,

the "Pre-Petition Credit Agreement") (all such parties being collectively defined herein as the "Pre-Petition Secured Parties") has an interest; provided that, nothing herein shall grant the Debtors the right to use the Cash Collateral in the Pre-Petition Cash Collateral Account, the Post-Petition Cash Collateral Account, or in the Cash Management/Indemnity Account; and

(B)     Subject to such limitations as shall be provided herein and Paragraphs 15-16 hereof, granting the Pre-Petition Secured Parties certain adequate protection, including, among other things, Adequate Protection Replacement Liens and Adequate Protection Superpriority Claims (each as defined below) and certain other adequate protection as described in this Final Order, including: (x) as and to the extent applicable and/or necessary, granting the Pre-Petition Secured Parties relief from the automatic stay to enable them to apply the Cash Collateral deposited in the Pre-Petition Cash Collateral Account to reimburse the L/C Issuer under the Pre-Petition Credit Agreement (the "Pre-Petition L/C Issuer") for drawings and letter of credit fees when due without further order of the Court, and (y) establishment and funding of the Cash Management/Indemnity Account (defined below), in each case as adequate protection for the Debtors' use of Cash Collateral (limited as provided herein), the subordination of the Pre-Petition Liens (other than as concerns (i) the funds deposited in the Pre-Petition Cash Collateral Account and (ii) the funds deposited in the Cash Management/Indemnity Account, and the proceeds and products of each, which shall remain first priority, valid, perfected, and enforceable Liens for all purposes hereunder (subject to (i) any Permitted Prior Liens and (ii) the rights of any holder of a Lien that has not heretofore consented to its Lien being "primed" hereunder)) to the Professional Fee Carve-Out (as defined in the DIP Term Loan Documents (defined below), and as incorporated herein by reference as if set forth in its entirety herein) and to the Liens securing the obligations owed to the DIP Term Lender, and for the imposition of the automatic stay.

(III)     **Subordination of Pre-Petition Secured Parties' Liens/Claims in Certain Pre-Petition Collateral.** Subject to the satisfaction of the conditions set forth in Paragraph 15 hereof with respect to subordination to certain post-petition term loans ("DIP Term Facility") from B. Riley Financial, Inc. (the "DIP Term Lender") under that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement*, dated as of January 15, 2015 (together with all other agreements, documents, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Term Lender, each as amended and in effect from time to time (collectively, the "DIP Term Loan Documents"), the subordination to any Liens and priorities granted to the DIP Term Lender in any collateral that constitutes "DIP Collateral" as defined in the order approving the DIP Term Facility and to the Professional Fee Carve Out of: (i) the Pre-Petition Secured Parties' Liens in and upon those items defined as "Collateral" in any Security

3

Document (each such term as defined in the Pre-Petition Credit Agreement) (hereinafter, collectively, the "Pre-Petition Collateral"), (ii) the Adequate Protection Replacement Liens, and (iii) the Adequate Protection Superpriority Claims; provided that, any such subordination shall expressly exclude for all purposes herein and otherwise any and all (x) Liens granted to the Pre-Petition Secured Parties in and upon the Cash Collateral deposited in the Pre-Petition Cash Collateral Account and the proceeds and products thereof, (y) Liens granted to the DIP L/C Issuer or to the Pre-Petition Secured Parties in and upon the Cash Collateral deposited in the Cash Management/Indemnity Account (defined below) and the proceeds and products thereof, and (z) the DIP L/C Liens (defined below) in and upon the DIP Collateral.

(IV) **Termination of Pre-Petition Credit Agreement and Release of Liens** – Subject to the satisfaction of the conditions set forth in Paragraph 16 hereof, (x) terminating the Pre-Petition Credit Agreement (except for those rights and provisions that are deemed to survive as set forth herein and therein) and (y) releasing any and all Liens held by the Pre-Petition Secured Parties in any of the Pre-Petition Collateral (other than as concerns (i) the funds deposited in the Pre-Petition Cash Collateral Account and (ii) the funds deposited in the Cash Management/Indemnity Account, and the proceeds and products of each, which shall remain first priority, valid, perfected, and enforceable Liens for all purposes hereunder).

(V) **Establishment of Cash Management/Indemnity Account** – Establishing an account (the "Cash Management/Indemnity Account") in the control of Bank of America, N.A. ("BOA") into which the sum of $1,500,000.00 shall be deposited as security for the mutual benefit of (i) the Pre-Petition Secured Parties, in respect of the Debtors' indemnification obligations arising under the Pre-Petition Loan Documents, including, without limitation, Section 10.04 of the Pre-Petition Credit Agreement (defined below) (collectively, the "Pre-Petition Indemnity Obligations"), and (ii) BOA, in respect of its provision of pre-petition and post-petition cash management and treasury management services to the Debtors (all such obligations and liabilities associated with the provision of cash management and treasury management services to the Debtors being collectively defined as the "Treasury Management Obligations").

(VI) **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP L/C Facility Agreements and this Final Order.

(VII) **Waiving Any Stay under Rule 6004(h)** – Waiving any applicable stay to the immediate effectiveness of this Final Order, including, without limitation, under Bankruptcy Rule 6004(h);

and upon consideration of the *Declaration of Thomas R. Hillebrandt* (the "Hillebrandt

4

Declaration") and the *Declaration of Derek Pitts* (the "Pitts Declaration"); and the Court having

reviewed the Motion and having held a hearing with respect to the Motion on January 20, 2015

at 2:00 p.m. (the "Interim Hearing"); and the Court having entered its "*Interim Order Pursuant*

*to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002,*

*4001 and 9014: (1) Authorizing Post-Petition L/C Financing Facility, (2) Granting Liens and*

*Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral*

*and Providing for Adequate Protection, (4) Modifying the Automatic Stay, and (5) Scheduling a*

*Final Hearing*" (the "Interim Order"); and the Court having further reviewed the Motion and

having held a final hearing with respect to the Motion on February 5, 2015 at 2:00 p.m. (the

"Final Hearing"); upon the Motion, the Hillebrandt Declaration, the Pitts Declaration, and the

record of both the Interim and Final Hearings; and all objections, if any, to the entry of this Final

Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation

and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## I.    Procedural Findings of Fact

**A.    Petition Date.**  On January 15, 2015 (the "Petition Date"), the Debtors filed

voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the District of Delaware (the "Court").  The Debtors have continued in the

management and operation of their businesses and properties as debtors-in-possession pursuant

to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed

in these Chapter 11 Cases.

**B.    Jurisdiction and Venue.**  This Court has jurisdiction over these proceedings,

pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby.

5

Consideration of the Motion constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

      **C.**    **Committee Formation.**   On January 30, 2015, an official committee of unsecured creditors (the "Creditors' Committee") was appointed in the Chapter 11 Cases. Other than the Creditors' Committee, no official committee (a "Committee") of unsecured creditors, equity interest holders, or other parties in interest has been appointed in the Chapter 11 Cases..

      **D.**    **Notice.** The Final Hearing was held pursuant to the authorization of Bankruptcy Rules 2002, 4001(b), (c), and (d) and 9014, and the Local Rules. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors, in accordance with the requirements set forth in the Interim Order, to certain parties in interest, including: (i) the United States Trustee for Region III; (ii) those creditors holding the forty (40) largest unsecured claims against the Debtors' estates; (iii) the Pre-Petition Secured Parties and their attorneys; (iv) the DIP L/C Issuer and its attorneys; (v) counsel for the DIP Term Lender; (vi) all secured creditors of record; (vii) the United States Internal Revenue Service; and (viii) the United States Securities and Exchange Commission. Under the circumstances, such notice of the Final Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

## II.    Debtors' Acknowledgements and Agreements

      **E.**    Without prejudice to the rights of parties in interest as set forth in Paragraphs 23-27 below, the Debtors admit, stipulate, acknowledge, and agree that (collectively, Paragraphs II.E (1) - (6) hereof shall be referred to herein as the "Debtors' Stipulations"):

          (1)    **Pre-Petition Credit Agreement**. Prior to the commencement of the Chapter 11 Cases, the Debtors were party to the following agreements:

(a)     The Pre-Petition Credit Agreement entered into among the Loan Parties thereunder and the Pre-Petition Secured Parties; and

(b)     All other agreements, documents, certificates, and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Secured Parties, including, without limitation, all "Loan Documents", each as amended and in effect from time to time (collectively with the Pre-Petition Credit Agreement, the "Pre-Petition Loan Documents").

(2)     **Pre-Petition Debt Amounts**. As of the Petition Date, the Debtors were indebted to the Pre-Petition Secured Parties for the following amounts:

(a)     On account of extensions of credit and other Pre-Petition Liabilities under the Pre-Petition Loan Documents (other than in respect of Pre-Petition Letters of Credit (defined below)), if any, including, without limitation, costs, expenses, fees (including attorneys' fees and legal expenses), other charges and other obligations, on account of Bank Products, Cash Management Services, credit card, depository, investment, hedging and other banking or financial services secured by the Pre-Petition Loan Documents; and

(b)     On account of obligations in respect of Letters of Credit issued by the Pre-Petition L/C Issuer under the Pre-Petition Credit Agreement and undrawn as of the Petition Date (collectively, the "Pre-Petition Letters of Credit"), in the approximate aggregate amount of $10,828,777, plus any and all outstanding costs, expenses, and applicable fees, including, without limitation, Letter of Credit Fees (the aggregate of (a) and (b) being collectively defined as the "Pre-Petition Debt").[3]

(3)     **Pre-Petition Collateral**. To secure the Pre-Petition Debt, the Borrowers and Guarantors under the Pre-Petition Loan Documents granted security interests and Liens (collectively, the "Pre-Petition Liens") to one or more of the Pre-Petition Secured Parties in, to and upon the Pre-Petition Collateral, including, without limitation, all accounts, credit card receivables, inventory, deposit accounts, and/or in respect of a certain cash collateral account required to be established under the Pre-Petition Credit Agreement for the benefit of the Pre-Petition L/C Issuer (identified as

---

[3]     The acknowledgments and agreements by the Debtors of the Pre-Petition Debt and the related Liens, rights priorities and protections granted to or in favor of the Pre-Petition Secured Parties set forth herein and in the Pre-Petition Loan Documents shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Chapter 11 Cases in respect of the Pre-Petition Debt, and none of the Pre-Petition Secured Parties shall be required to file any additional or other proofs of claim in the Chapter 11 Cases to evidence the obligations represented by the Pre-Petition Debt or the claims/Pre-Petition Liens related thereto.

Merrill Lynch Account No. 5W3-01A22; the "Pre-Petition Cash Collateral Account"). As of the Petition Date, the only cash in the Pre-Petition Cash Collateral Account is cash necessary to cash collateralize the Pre-Petition Letters of Credit in accordance with the terms of the Pre-Petition Loan Documents. In the event that a Pre-Petition Letter of Credit has not been drawn and is returned to the L/C Issuer or fifteen (15) days after the expiration date thereof and no drawing or presentation has been made, the Pre-Petition L/C Issuer shall return the Cash Collateral associated with such letter of credit to the Debtors in such amounts and at such times as shall be provided in the DIP L/C Agreement and this Final Order. Except as otherwise provided in any pre-petition Security Document, as of the Petition Date the Pre-Petition Liens in the Pre-Petition Collateral have priority over all other Liens, except any Liens which are valid, properly perfected, unavoidable, and senior to the Pre-Petition Liens (collectively, the "Permitted Prior Liens").

(4)     **Pre-Petition Debt and Liens.**

    (a)    As of the Petition Date, the Debtors stipulate and agree as follows:

        (i)    The Pre-Petition Debt constitutes legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

        (ii)    No offsets, defenses, or counterclaims to any of the Pre-Petition Debt exists;

        (iii)    No portion of the Pre-Petition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

        (iv)    The Pre-Petition Debt constitutes an allowable secured claim; and

        (v)    The Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

    (b)    Subject to the terms of this Final Order, including, without limitation, Paragraphs 23-27 hereof, the Debtors shall be deemed to have waived, discharged, and released the Pre-Petition Secured Parties, together with their respective affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtors may have:

(i)     To challenge or object to any of the Pre-Petition Debt,

(ii)    To challenge or object to the security for the Pre-Petition Debt, including, without limitation, the Pre-Petition Liens in and upon the Pre-Petition Collateral, and

(iii)   To bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action based on facts and circumstances existing prior to entry of this Final Order arising out of, based upon, or related to the Pre-Petition Loan Documents, the Pre-Petition Debt, the Pre-Petition Liens, or any other obligations related thereto.

(c)    The Debtors do not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Pre-Petition Loan Documents, the Pre-Petition Debt, or the Pre-Petition Liens, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Loan Documents or otherwise.

(5)    **Cash Collateral.** The "Collateral Agent" under the Pre-Petition Credit Agreement (the "Pre-Petition Collateral Agent"), for the benefit of the Pre-Petition Secured Parties, has a security interest in and Lien on Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts, including the Pre-Petition Cash Collateral Account, and all proceeds of the Pre-Petition Collateral, to secure the Pre-Petition Debt.

(6)    **Priming of DIP L/C Facility.** In entering into the DIP L/C Facility Agreements, and as consideration therefor, the Debtors agree that the Debtors shall not in any way prime or seek to prime the security interests and post-petition Liens and/or DIP Superpriority Claims provided to the DIP L/C Issuer under this Final Order and the DIP L/C Facility Agreements by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise in the DIP Collateral.

## III.   Findings Regarding the Post-Petition Financing.

**F.**    **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain post-petition letters of credit under the DIP L/C Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires

the availability of DIP Letters of Credit from the DIP L/C Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, creditors and equity holders.

**G.    No Credit Available on More Favorable Terms**. In obtaining post-petition letters of credit, and except as is otherwise contemplated by the Debtors' contemporaneous request for approval of the DIP Term Facility with the DIP Term Lender, the Debtors have been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)    credit for money borrowed secured by a junior Lien on property of the estates which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP L/C Facility Agreements and this Final Order.

The Debtors are unable to obtain post-petition letters of credit without granting to the DIP L/C Issuer the DIP Protections (defined below).

**H.    Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Pre-Petition Liens (subject to the Debtors' Stipulations) are valid, senior, perfected, or unavoidable. Moreover, nothing shall prejudice the following:

(1)    in accordance with Paragraphs 23-27 hereof, the rights of any party-in-interest, including, but not limited to, the Pre-Petition Secured Parties, and any Committee to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)    in accordance with Paragraphs 23-27 hereof, the rights of any party in interest or Committee with requisite standing to challenge the validity, priority, perfection and extent of the Pre-Petition Debt and/or Pre-Petition Liens as set forth in this Final Order.

**I.**    **Adequate Protection for Pre-Petition Secured Parties.**  As a result of the subordination to the Professional Fee Carve Out and the DIP Term Facility, the use of Cash Collateral (other than the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account and in the Cash Management/Indemnity Account), as limited herein, the imposition of the automatic stay, the Pre-Petition Secured Parties are collectively entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their interests in the Pre-Petition Collateral resulting from the automatic stay or the Debtors' use, sale, or lease of the Pre-Petition Collateral (other than the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account and in the Cash Management/Indemnity Account) during these Chapter 11 Cases. As adequate protection, the Pre-Petition Secured Parties will receive the Adequate Protection (as defined below), subject to subordination to any Liens and priority claims granted to the DIP Term Lender (subject to the satisfaction of the conditions set forth in Paragraph 15 hereof) and to the Professional Fee Carve Out. In light of such Adequate Protection, the Pre-Petition Secured Parties have consented to the Debtors' use of Cash Collateral, excluding the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account and the Cash Management/Indemnity Account, and otherwise solely on the terms set forth in this Final Order.

**J.**    **Sections 506(c) and 552 of the Bankruptcy Code**.  The DIP L/C Issuer and the Pre-Petition Secured Parties are each entitled to: (a) a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (b) all rights and benefits of section 552(b) of the Bankruptcy Code. In addition, the Debtors shall not assert that the "equities of the case" exception shall apply.

**K.**     **Conditions Precedent to DIP L/C Issuer's Extension of Financing.** The DIP

L/C Issuer has indicated a willingness to issue letters of credit to the Debtors in accordance with

the DIP L/C Facility Agreements, and subject to the following:

> (1)     the entry of this Final Order, and

> (2)     findings by this Court that such financing is essential to the Debtors' estates, that the DIP L/C Issuer is a good faith financier, and that the DIP L/C Issuer's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Final Order and the DIP L/C Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

**L.**     **Business Judgment and Good Faith Pursuant to Section 364(e) of the**

**Bankruptcy Code.** The extension of credit and the provision of letters of credit under the DIP

L/C Facility Agreements (i) are fair, reasonable, and the best available under the circumstances,

(ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary

duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP L/C

Facility was negotiated in good faith and at arms' length between the Debtors and the DIP L/C

Issuer, and the use of the proceeds to be extended under the DIP L/C Facility will be so extended

in good faith, and for valid business purposes and uses, as a consequence of which the DIP L/C

Issuer is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

**M.**     **Relief Essential; Best Interest.** The relief requested in the Motion (and as

provided in this Final Order) is necessary, essential, and appropriate for the continued operation

of the Debtors' business and the management and preservation of the Debtors' assets and

personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to

establish the DIP L/C Facility contemplated by the DIP L/C Facility Agreements. The Debtors

have demonstrated good and sufficient cause for the relief granted herein, and there is adequate

protection of the interests of holders of Permitted Prior Liens on the property of the estates on

which DIP L/C Liens and Adequate Protection Replacement Liens (defined below) are to be granted.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The Motion is granted as set forth herein.

## I.      DIP FINANCING

A.      **Approval of Entry into the DIP L/C Facility Agreements**

2.      The Debtors are expressly and immediately authorized to execute and deliver the DIP L/C Facility Agreements, and to incur and to perform the post-petition obligations thereunder (collectively, the "DIP L/C Obligations") in accordance with, and subject to, the terms of this Final Order and the DIP L/C Facility Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP L/C Facility and the creation and perfection of the DIP L/C Liens described in and provided for by this Final Order and the DIP L/C Facility Agreements.

3.      Subject to Paragraphs 23-27 hereof, all (a) outstanding Pre-Petition Letters of Credit are deemed to be "rolled up" into DIP Letters of Credit such that all outstanding Pre-Petition Letters of Credit shall be, on a final basis, treated for all purposes as if they were DIP Letters of Credit issued pursuant to the DIP L/C Agreement, and (b) all Cash Collateral on deposit in the Pre-Petition Cash Collateral Account will be treated as post-petition Cash Collateral and as part of the DIP Collateral for all purposes hereunder. At the election of the DIP L/C Issuer, amounts in the Pre-Petition Cash Collateral Account may be transferred to the Post-Petition Cash Collateral Account (defined below).

4.      The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP L/C Facility Agreements as such

13

become due, including, without limitation, reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP L/C Facility Agreements, which amounts, subject to the provisions of Paragraph 37 below (solely with regard to reimbursement of the DIP L/C Issuer's reasonable attorneys', financial advisors' and accountants' fees, and disbursements), shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP L/C Facility Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

**B.**     **Authorization to Borrow**

5.     In order to enable them to continue to operate their businesses, in addition to the deemed "roll up" of the Pre-Petition Letters of Credit into Post-Petition Letters of Credit as provided in Paragraph 3 hereof, the Debtors are hereby authorized to obtain from the DIP L/C Issuer post-petition letters of credit under the DIP L/C Facility Agreements up to a total amount of $18,328,777 (inclusive of $10,828,777 in Pre-Petition Letters of Credit which are subject to the deemed "roll-up" hereunder), any issuance of letters of credit being subject in all respects to the terms and conditions of this Final Order, and the DIP L/C Facility Agreements.

**C.**     **Application of DIP L/C Facility Proceeds**

6.     Unless otherwise ordered by the Court, the letters of credit issued under the DIP L/C Facility shall be used in each case in a manner consistent with the terms and conditions of the DIP L/C Facility Agreements and this Final Order. The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the DIP L/C Issuer not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraph 32 below).

**D.      Conditions Precedent**

7.      The DIP L/C Issuer shall not have any obligation to issue any DIP Letter of Credit unless each of the conditions precedent to the issuance of DIP Letters of Credit under the DIP L/C Facility Agreements has been satisfied in full or waived, as determined by the DIP L/C Issuer in its exclusive discretion, in accordance with the DIP L/C Facility Agreements.

**E.      The DIP L/C Liens**

8.      Pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP L/C Issuer is hereby granted first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens (collectively, the "DIP L/C Liens") senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates in and upon (i) the Cash Collateral deposited in the post-petition cash collateral account established with the DIP L/C Issuer under the DIP L/C Facility Agreements (the "Post-Petition Cash Collateral Account"), (ii) any Cash Collateral deposited in the Pre-Petition Cash Collateral Account, and (iii) subject to Paragraph 13(d) hereof, any excess Cash Collateral deposited in the Cash Management/Indemnity Account after satisfaction of any Pre-Petition Indemnity Obligations and payment of all Treasury Management Obligations ((i), (ii) and (iii) collectively, the "DIP Collateral"). The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the DIP L/C Issuer not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraph 32 below).

**F.      DIP Lien Priority**

9.      The DIP L/C Liens to be created and granted to the DIP L/C Issuer in and upon the DIP Collateral, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and

(b)     first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, subject to (i) any Permitted Prior Liens and (ii) the rights of any holder of a Lien that has not heretofore consented to its Lien being "primed" hereunder.

The DIP L/C Liens shall secure all DIP L/C Obligations (and upon effectuation of the deemed "roll up" of the Pre-Petition Letters of Credit into Post-Petition Letters of Credit, inclusive of any payment and/or reimbursement obligations in respect of any Pre-Petition Letters of Credit) and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP L/C Facility Agreements; provided, however, the Pre-Petition Secured Parties' Liens and the DIP L/C Issuer's Liens in and upon the Cash Collateral on deposit in the Cash Management/Indemnity Account shall remain senior and first priority in all respects (subject to the limitations noted in (b) above) to satisfy the Debtors' Pre-Petition Indemnity Obligations and in respect of Treasury Management Obligations, respectively. Except as otherwise provided in the immediately preceding sentence, and unless otherwise ordered by Court, the DIP L/C Liens shall be valid and enforceable against any trustee appointed in any one or more of the Chapter 11 Cases upon the conversion of any one or more of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "Successor Case", and collectively the "Successor Cases"), and/or upon the dismissal of any one or more of the Chapter 11 Cases. Unless otherwise ordered by Court, the DIP L/C Liens shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Debtors of the "equities of the case" exception of section 552 of the Bankruptcy Code. The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the DIP L/C Issuer not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a DIP Order Event

of Default (defined below) (without the requirement of the notice requirements in Paragraph 32 below) unless prior to the effectiveness of any such order the Debtors deposit with the DIP L/C Issuer such additional Cash Collateral as the DIP L/C Issuer shall reasonably determine is necessary to insure that the DIP Obligations are fully secured.

## G.    **Superpriority Administrative Claim Status**

10.    All DIP Obligations shall be granted the status of an allowed superpriority administrative expense claim (the "DIP Superpriority Claim" and, together with the DIP L/C Liens, collectively, the "DIP Protections"), with priority in the Chapter 11 Cases (and any Successor Cases) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code; provided that, anything to the contrary herein notwithstanding, the DIP Superpriority Claim shall be (i) junior and subordinate to the Professional Fee Carve Out and (ii) *pari passu* with any superpriority administrative claim that may be granted to the DIP Term Lender under any interim and/or final order authorizing approving the DIP Term Facility and DIP Term Loan Documents.

11.    Unless otherwise ordered by Court, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with (a) the claims, rights and/or interests, including any Liens, of the Pre-Petition Secured Parties in and to the Cash Collateral deposited in the Pre-Petition Cash Collateral

17

Account (or the Post-Petition Cash Collateral Account upon transfer thereto) or the Cash Management/Indemnity Account, (b) the DIP Protections or the DIP Obligations, or (c) with any other claims of the DIP L/C Issuer arising hereunder or under the DIP L/C Facility Agreements. The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the DIP L/C Issuer not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraph 32 below) unless prior to the effectiveness of any such order the Debtors deposit with the DIP L/C Issuer such additional Cash Collateral as the DIP L/C Issuer shall reasonably determine is necessary to insure that the DIP Obligations are fully secured.

## II.   USE OF CASH COLLATERAL; ADEQUATE PROTECTION

### A.   Authorization to Use Cash Collateral

12.   Pursuant to the terms and conditions of this Final Order and the DIP L/C Facility Agreements, the Debtors are authorized to use Cash Collateral (excluding for all purposes (i) any Cash Collateral on deposit in the Pre-Petition Cash Collateral Account (where applicable), (ii) any Cash Collateral on deposit in the Cash Management/Indemnity Account, and (iii) any Cash Collateral on deposit in the Post-Petition Cash Collateral Account), with any such authorization to terminate upon notice being provided by the DIP L/C Issuer to the Debtors that: (i) a DIP Order Event of Default (defined below) has occurred and is continuing, and/or (ii) the DIP L/C Facility has been terminated.

### B.   Adequate Protection for Pre-Petition Secured Parties

13.   Subject to the satisfaction of the conditions set forth in Paragraph 16, as adequate protection for the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral on account of subordination to the Professional Fee Carve Out and the DIP Term Facility (other

18

than with respect to the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account

and Cash Management/Indemnity Account), the Debtors' use of Cash Collateral (other than the

Cash Collateral on deposit in the Pre-Petition Cash Collateral Account and Cash

Management/Indemnity Account), and other decline in value arising out of the automatic stay or

the Debtors' use, sale, or disposition of the Pre-Petition Collateral (other than the Cash Collateral

on deposit in the Pre-Petition Cash Collateral Account and Cash Management/Indemnity

Account), the Pre-Petition Secured Parties shall receive adequate protection as follows

(collectively, "Adequate Protection"):

      (a)    **Adequate Protection Replacement Liens**. Solely to the extent of the diminution in the value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in "assets" of the same type which constituted Pre-Petition Collateral, whether arising pre-petition or post-petition and the DIP Collateral (in each case junior and subordinate to the DIP Term Lender's Liens and priorities (subject to the satisfaction of the conditions set forth in Paragraph 15 hereof, and other than with respect to the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account and Cash Management/Indemnity Account), the DIP L/C Issuer's DIP L/C Liens, Permitted Prior Liens and the Professional Fee Carve Out, as applicable) (the "Adequate Protection Replacement Liens"); provided that, in the event of a successful challenge to either the validity, extent or priority of the Pre-Petition Liens and/or Pre-Petition Debt, then the Adequate Protection Replacement Liens shall be limited to the extent of any such successful challenge.

      (b)    **Adequate Protection Superpriority Claim**. Solely to the extent the Adequate Protection Replacement Liens are insufficient to protect the interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim (the "Adequate Protection Superpriority Claim") which shall have priority in the Chapter 11 Cases under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code; provided, however, the Adequate Protection Superpriority Claim shall be junior to (i) the DIP Superpriority Claim, (ii) the superpriority administrative expense claim granted to the DIP Term Lender (subject to the satisfaction of the conditions set forth in Paragraph 15 hereof), and (iii) the Professional Fee Carve Out. Other than the DIP L/C Liens, the DIP Superpriority Claim,

the superpriority administrative expense claim granted to the DIP Term Lender (subject to the satisfaction of the conditions set forth in Paragraph 15 hereof, and except with respect to Liens of the Pre-Petition Secured Parties in and to the Cash Collateral deposited in the Pre-Petition Cash Collateral Account (or the Post-Petition Cash Collateral Account upon transfer thereto following the deemed "roll up" provided for herein) and Cash Management/Indemnity Account), and the Professional Fee Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claim.

(c)     **Pre-Petition Cash Collateral Account**. From and after the Petition Date, the DIP L/C Issuer may apply funds on deposit in the Post-Petition Cash Collateral Account (and where applicable, the Pre-Petition Cash Collateral Account) to satisfy the DIP L/C Obligations (including with respect to any undrawn Pre-Petition Letters of Credit upon effectuation of the deemed "roll up" provided for herein), without any further notice to the Debtors or other party or order of the Court; and the DIP L/C Issuer and/or Pre-Petition Secured Parties, as the context makes applicable, is/are hereby granted relief from the automatic stay to enable it/them to apply the Cash Collateral deposited in the Post-Petition Cash Collateral Account (and where applicable, the Pre-Petition Cash Collateral Account) in respect of drawings and letter of credit fees when due (as provided in the DIP L/C Facility Agreements) without any further notice to the Debtors or other party or order of the Court. For the avoidance of doubt, provided that there then is no Challenge Proceeding (defined below), the Cash Collateral in the Post-Petition Cash Collateral Account (and where applicable, the Pre-Petition Cash Collateral Account) relating to Letters of Credit that have either been returned undrawn, or fifteen (15) days after the expiration date thereof and no drawing or presentation has been made, and such other conditions as are set forth in the DIP L/C Facility Agreements have either been satisfied or waived, shall be released to the Debtors by the DIP L/C Issuer at such times and in such amounts as is provided in the DIP L/C Agreement.

(d)     **Establishment of Pre-Petition Indemnity Account**.

(i)     The Debtors shall establish the Cash Management/Indemnity Account in the control of the Pre-Petition Secured Parties and BOA into which the sum of $1,500,000.00 shall be deposited as security for the mutual benefit of: (i) the Pre-Petition Secured Parties, in respect of the Debtors' Pre-Petition Indemnity Obligations, and (ii) BOA, in respect of the Treasury Management Obligations.

(ii)     The Pre-Petition Indemnity Obligations and the Treasury Management Obligations shall be secured by *pari passu* first priority liens in favor of the Pre-Petition Secured Parties and BOA on the Cash Management/Indemnity Account and the funds deposited therein and the proceeds thereof. The Pre-Petition Secured Parties and BOA may apply amounts in the Cash Management/Indemnity Account against the Pre-Petition Indemnity Obligations and the Treasury Management Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee or

20

any other parties in interest and without further order of this Court, subject to compliance with the provisions of Paragraph 37 below solely in the case of the Pre-Petition Indemnity Obligations.

(iii)    If as of the Challenge Period Termination Date a party in interest with requisite standing (including any Committee) has filed a Challenge Proceeding against the Pre-Petition Secured Parties, then the Cash Management/Indemnity Account shall be maintained until final resolution of such Challenge Proceeding, subject to the provisions of this Paragraph 13(d) and Paragraph 37 hereof.

(iv)    If as of the Challenge Period Termination Date either (x) no party in interest with requisite standing (including any Committee) has filed a Challenge Proceeding against the Pre-Petition Secured Parties, whether in the Chapter 11 Cases or independently in another forum, court, or venue, or (y) a party in interest with requisite standing (including any Committee) has filed a Challenge Proceeding against the Pre-Petition Secured Parties that, either before or after the Challenge Period Termination Date, has been fully and finally resolved, the Pre-Petition Secured Parties shall release to the Debtors a sum from the Cash Management/Indemnity Account equal to: (A) if the Debtors have terminated BOA's cash management and treasury management services, the amount then on deposit in the Cash Management/Indemnity Account (determined after satisfaction and/or deduction of any then outstanding Pre-Petition Indemnity Obligations and Treasury Management Obligations) and (B) if the Debtors have not terminated BOA's cash management and treasury management services , the difference between (1) the amount then on deposit in the Cash Management/Indemnity Account (determined after satisfaction and/or deduction of any then outstanding Pre-Petition Indemnity Obligations and Treasury Management Obligations) and (2) $1,000,000 (the result of (A) or (B) being defined herein as the "Indemnity Account Release Amount"). The Pre-Petition Secured Parties' shall release the Indemnity Account Release Amount, if any, on a date that is not later than ten (10) business days from the later of (AA) the Challenge Period Termination Date (in the case of (x) above) or (BB) the date of entry of the last Final Order providing for a resolution of the last remaining Challenge Proceeding (in the case of (y) above) (the later of (AA) or (BB) being defined herein as the "Indemnity Account Release Date"). Upon the Pre-Petition Secured Parties' release of the Indemnity Account Release Amount from the Cash Management/Indemnity Account, if the Debtors have not terminated BOA's cash management and treasury management services, the remaining balance on deposit in the Cash Management/Indemnity Account shall thereafter secure only the Debtors' ongoing obligations in respect of Treasury Management Obligations. For purposes of this Paragraph 13(d)(iv), "Final Order" means an order or judgment of the Court, as entered on the docket of the Clerk of the Court, that has not been reversed, stayed, modified or amended and as to which the time to appeal or seek leave to appeal, petition for certiorari, reargue or seek rehearing has expired and no proceeding for certiorari, reargument or rehearing is pending or if an appeal, petition for certiorari, reargument, or rehearing has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order was appealed, from which the reargument or rehearing was sought, or certiorari has been denied and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

(v)     If the Debtors terminate BOA's cash management and treasury management services prior to the Indemnity Account Release Date, the Pre-Petition Secured Parties shall release to the Debtors a sum from the Cash Management/Indemnity Account equal to the difference between (x) the amount then on deposit in the Cash Management/Indemnity Account (determined after satisfaction and/or deduction of any then outstanding Pre-Petition Indemnity Obligations and Treasury Management Obligations) and (y) $500,000 (the result of (x) or (y) being defined herein as the "Cash Management Account Release Amount"); provided that, the remaining balance on deposit in the Cash Management/Indemnity Account shall thereafter secure only the Debtors' ongoing obligations in respect of Pre-Petition Indemnity Obligations. If the Debtors terminate BOA's cash management and treasury management services after the Indemnity Account Release Date, the Pre-Petition Secured Parties shall release to the Debtors any funds then remaining on deposit in the Cash Management/Indemnity Account (determined after satisfaction and/or deduction of any then outstanding Pre-Petition Indemnity Obligations and Treasury Management Obligations). The Pre-Petition Secured Parties' shall release the Cash Management Account Release Amount, if any, on a date that is not later than ten (10) business days from the date of such termination.

(e)     **Fee/Expense Payments**. Subject to Paragraph 37 below, the Pre-Petition Secured Parties shall receive additional adequate protection in the form of the current payment of the reasonable documented out-of-pocket costs and expenses of their financial advisors and attorneys and payment of any fees and expenses which have accrued but remain unpaid as of the Petition Date.

## C.     Section 507(b) Reservation for the Pre-Petition Secured Parties to Seek Further Adequate Protection

14.     Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under section 507(b) of the Bankruptcy Code to seek additional or alternative adequate protection in the event that the Adequate Protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate them for the diminution in value of their interests in the Pre-Petition Collateral during the Chapter 11 Cases or any Successor Cases; provided, however, that any claim under section 507(b) of the Bankruptcy Code for such additional or alternative adequate protection granted in the Chapter 11 Cases (or any Successor Cases) shall be junior in the right of payment to claims held by the DIP Term Lender (subject to the satisfaction of the conditions set forth in Paragraph 15 hereof) and the Professional Fee Carve Out.

22

## III.    SUBORDINATION/TERMINATION OF
## PRE-PETITION CREDIT AGREEMENT AND LIENS

15.    Anything herein to the contrary notwithstanding, (i) the Pre-Petition Secured Parties' Liens in and upon the Pre-Petition Collateral, (ii) the Adequate Protection Replacement Liens, and (iii) the Adequate Protection Superpriority Claims, shall be subordinate to any Liens and priorities granted to the DIP Term Lender by interim and final orders of this Court authorizing and approving the DIP Term Facility and to the Professional Fee Carve Out; provided that, any such subordination shall expressly exclude for all purposes herein, and otherwise, any and all (x) Liens granted to the DIP L/C Issuer and the Pre-Petition Secured Parties in and upon the DIP Collateral (including any Cash Collateral deposited in the Pre-Petition Cash Collateral Account) and the proceeds and products thereof, and (y) Liens granted to the DIP L/C Issuer and/or the Pre-Petition Secured Parties in and upon the Cash Collateral deposited in the Cash Management/Indemnity Account and the proceeds and products thereof.

16.    Provided that: (i) the Challenge Period Termination Date has occurred, (ii) no Challenge Proceeding has theretofore been timely asserted and remains unresolved and outstanding (or if a Challenge Proceeding has previously been commenced, such proceeding has been dismissed, terminated and/or resolved to the reasonable satisfaction of the Pre-Petition Secured Parties), (iii) all Pre-Petition Indemnity Obligations then due and owing have been indefeasibly paid and satisfied in full (or other arrangements for payment of the Pre-Petition Indemnity Obligations have been made that are acceptable to the Pre-Petition Secured Parties), and (iv) the Court has entered a final order authorizing and approving the DIP Term Facility (the latest to occur of (i)-(iv) being defined as the "Lien Release Date"), effective as of such Lien Release Date: (x) the Pre-Petition Credit Agreement shall be deemed to have been terminated (except for those provisions which survive by their terms or as otherwise provided in this Final

Order) and (y) any and all Liens held by the Pre-Petition Secured Parties in any Pre-Petition Collateral (excluding (i) Liens granted to the Pre-Petition Secured Parties in and upon the DIP Collateral, including Cash Collateral deposited in the Pre-Petition Cash Collateral Account (or as same may have been transferred to the Post-Petition Cash Collateral Account) and the proceeds and products thereof, and (ii) Liens granted to the Pre-Petition Secured Parties in and upon the Cash Collateral deposited in the Cash Management/Indemnity Account and the proceeds and products thereof) are deemed to be released. This Final Order shall be sufficient and conclusive evidence of the release of the Liens held by the Pre-Petition Secured Parties in the Pre-Petition Collateral (limited as provided herein) without the necessity of delivering, filing or recording any instrument or document which may otherwise be required under the law of any jurisdiction to effect such release. At the Debtors' expense, the Pre-Petition Secured Parties shall execute and deliver to the Debtors all such instruments or documents as the Debtors may reasonably request to evidence such release. The Debtors in their discretion, may file a photocopy of this Final Order as a UCC-3 termination statement with any recording office designated to file financing statements, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Final Order as evidence of the release of the Liens of the Pre-Petition Secured Parties pursuant hereto.

## IV.   POST-PETITION LIEN PERFECTION

17.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP L/C Liens and the Adequate Protection Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action

(including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP L/C Liens and the Adequate Protection Replacement Liens or to entitle the DIP L/C Liens and the Adequate Protection Replacement Liens to the priorities granted herein.

18.    Notwithstanding the foregoing, the DIP L/C Issuer and the Pre-Petition Secured Parties may, in its/their discretion, file such financing statements, other similar instruments and documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so.

19.    The Debtors shall execute and deliver to the DIP L/C Issuer and the Pre-Petition Secured Parties, as applicable, all such financing statements, and other similar instruments and documents as the DIP L/C Issuer and/or the Pre-Petition Secured Parties may reasonably request to evidence the DIP L/C Liens and Adequate Protection Replacement Liens granted pursuant hereto.

20.    The DIP L/C Issuer and the Pre-Petition Secured Parties, in its/their discretion, may file a photocopy of this Final Order as a financing statement with any recording office designated to file financing statements, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Final Order as evidence of the DIP L/C Liens and Adequate Protection Replacement Liens granted pursuant hereto.

21.    The DIP L/C Issuer shall, in addition to the rights granted to it under the DIP L/C Facility Agreements and this Final Order, be deemed to hold co-equal rights with the Pre-Petition Secured Parties with respect to each deposit account control agreement, pledge agreement, blocked account agreement and/or securities account control agreement in effect as to the Pre-Petition Cash Collateral Account, the Post-Petition Cash Collateral Account, and the

Cash Management/Indemnity Account. Except as otherwise provided herein, no counterparty to any deposit account control, pledge agreement, blocked account agreement, and/or securities account control agreement in effect as to the Pre-Petition Cash Collateral Account, the Post-Petition Cash Collateral Account, and the Cash Management/Indemnity Account shall be entitled to assert any offset right absent the prior written consent of the Pre-Petition Secured Parties and the DIP L/C Issuer or an order of the Court following the giving of reasonable notice to the Pre-Petition Secured Parties and the DIP L/C Issuer and their respective counsel and an opportunity to be heard.

22.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP L/C Facility Agreements as necessary to:

(a)    permit the Debtors to grant the Adequate Protection Replacement Liens and the DIP L/C Liens and to incur all liabilities and obligations to the DIP L/C Issuer under the DIP L/C Facility Agreements, the DIP L/C Facility, and this Final Order, and

(b)    authorize the DIP L/C Issuer and the Pre-Petition Secured Parties to retain and apply DIP Collateral (including Cash Collateral deposited in the Pre-Petition Cash Collateral Account (or as same may have been transferred to the Post-Petition Cash Collateral Account) and the proceeds and products thereof) against any drawings under any letters of credit (whether issued pre-petition or post-petition) and other payments as provided by the DIP L/C Facility Agreements and this Final Order.

## V.    RESERVATION OF CERTAIN THIRD PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS

23.    Nothing in this Final Order or the DIP L/C Facility Agreements shall prejudice whatever rights the Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court (following notice to each of the Pre-Petition Secured Parties and following an opportunity to be heard) may have to commence and prosecute an action in respect of the following:

(a)    to object to or challenge the Debtors' Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and Pre-Petition Liens of

26

the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Pre-Petition Debt, or

      (b)    to bring suit against the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Debt, or the actions or inactions of the Pre-Petition Secured Parties arising out of or related to the Pre-Petition Debt.

(a proceeding in the nature of (a) - (b) above hereinafter being defined as a "Challenge Proceeding").

      24.    A party in interest with requisite standing shall have until the later of (x) for a Committee, **March 31, 2015**, or (y) for all other parties in interest, **April 6, 2015** (the "Challenge Period"; and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "Challenge Period Termination Date") to commence a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim, or defense to the Pre-Petition Debt and /or the Pre-Petition Liens (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Secured Parties). Notwithstanding anything in the preceding sentence, if, prior to the Challenge Period Termination Date, the Court enters an order converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, the Challenge Period shall be extended solely with respect to the chapter 7 trustee for 60 days from the entry of such order. The Challenge Period Termination Date is subject to extension by order of the Court for cause shown or upon the written consent of the Pre-Petition Secured Parties and DIP L/C Issuer. In the event a party in interest files a motion for standing to bring a Challenge Proceeding, the Challenge Period shall be tolled (as to the moving party only) until the earlier of (x) withdrawal of such motion or (y) entry of a dispositive order by this Court with respect to such motion.

25.    Upon the Challenge Period Termination Date, any and all challenges and objections by any party (including, without limitation, any Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Cases, and any other party-in-interest) not theretofore commenced, **shall be deemed to be forever waived and barred**, and the Pre-Petition Debt shall, subject to the resolution of any and all challenges and objections theretofore commenced, be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations shall be binding on all creditors, interest holders, and parties-in-interest.  For the avoidance of doubt, any chapter 7 or 11 trustee appointed or elected in these cases during the Challenge Period shall, until the expiration of the periods provided herein for asserting lender claims and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to the Challenge Period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations and waivers of the Debtors in this Final Order.

26.    Notwithstanding anything herein to the contrary, neither the Post-Petition Letters of Credit issued under the DIP L/C Facility Agreements, the DIP Collateral, the Pre-Petition Collateral, nor the Professional Fee Carve Out (to the extent funded with proceeds of the Pre-Petition Collateral) may be used to:

(a)    object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP L/C Facility Agreements, the Pre-Petition Loan Documents, the Pre-Petition Debt, the Pre-Petition Liens, or the DIP L/C Liens or claims granted under this Final Order, the DIP L/C Facility Agreements, or the Pre-Petition Loan Documents;

(b)    assert any claims and defenses or any other causes of action against the DIP L/C Issuer, the Pre-Petition Secured Parties, or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors;

(c)    prevent, hinder or otherwise delay the DIP L/C Issuer's and/or the Pre-Petition Secured Parties' assertion, enforcement or realization on the Pre-Petition Collateral or the DIP Collateral in accordance with the DIP L/C Facility Agreements and/or the Pre-Petition Loan Documents, or this Final Order;

(d)    seek to modify any of the rights granted to the DIP L/C Issuer and/or the Pre-Petition Secured Parties hereunder or under the DIP L/C Facility Agreements and/or the Pre-Petition Loan Documents, as applicable (in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent).

27.    Subject to the terms of the Pre-Petition Credit Agreement, the Pre-Petition Secured Parties shall be entitled to include as part of the Pre-Petition Debt and as part of the Pre-Petition Indemnity Obligations the reasonable costs and expenses, including, but not limited to, reasonable attorneys' fees and disbursements incurred in connection with responding to any inquiry by any interested party, including any Committee, any threatened challenge (or as part of any agreed upon resolution thereof), and/or any such Challenge Proceeding that may be filed (or as part of any agreed upon resolution thereof), which amounts, if any, shall be reimbursed by the Debtors out of the Cash Management/Indemnity Account. The Debtors shall remain liable to the Pre-Petition Secured Parties for all unpaid Pre-Petition Indemnity Obligations to the extent that the funds in the Cash Management/Indemnity Account are insufficient to satisfy them in full.

## VI.    COMMITMENT TERMINATION DATE, DIP ORDER EVENTS OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date

28.    The Commitments under the DIP L/C Facility shall terminate on the date that is the earliest to occur of any of the following (the "Commitment Termination Date"):

(a)    April 30, 2015;

      (b)     the date on which the maturity of the DIP Obligations is accelerated (or deemed accelerated) and the Commitment and the DIP L/C Issuer's obligation to issue DIP Letters of Credit is irrevocably terminated in accordance with Article VIII of the DIP L/C Agreement;

      (c)     the Plan Effective Date;

      (d)     the date on which a Sale (as defined in the DIP L/C Agreement) is consummated; or

      (e)     the occurrence of any other DIP Order Event of Default.

## B.    **DIP Order Events of Default**

29.    The occurrence of (a) the Commitment Termination Date or (b) an Event of Default under the DIP L/C Agreement shall constitute a "DIP Order Event of Default."

30.    Unless and until (i) the Pre-Petition Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the Pre-Petition Debt and the DIP Obligations satisfactory to the DIP L/C Issuer and Pre-Petition Secured Parties, respectively, in their sole and exclusive discretion have been made), (ii) all DIP Letters of Credit have either been returned undrawn or fifteen days have elapsed after the expiry of all DIP Letters of Credit without a drawing or other presentation having been made), and (iii) the obligation of the DIP L/C Issuer to issue DIP Letters of Credit has terminated, and the Commitment has been irrevocably terminated, or in each case as otherwise ordered by the Court, the protections afforded to the Pre-Petition Secured Parties and the DIP L/C Issuer pursuant to this Final Order and under the DIP L/C Facility Agreements, and any actions taken pursuant thereto, shall survive the entry of any order (a) appointing a trustee or examiner in any one or more of the Chapter 11 Cases, (b) confirming one or more plan(s) of reorganization or liquidation pursuant to Chapter 11 of the Bankruptcy Code in the Debtors' Chapter 11 Cases (a "Plan"), or (c) converting the Chapter 11 Cases into Successor Cases, and the DIP L/C Liens, the DIP Superpriority Claim, the Adequate Protection Replacement Liens, and the Adequate Protection Superpriority Claim shall

continue in the Chapter 11 Cases and in any Successor Cases, and such DIP L/C Liens, DIP Superpriority Claim, Adequate Protection Replacement Liens, and Adequate Protection Superpriority Claim shall maintain their respective priorities as provided by this Final Order.

## C.    Rights and Remedies Upon DIP Order Event of Default

31.    Upon the occurrence of a DIP Order Event of Default, and provided that such DIP Order Event of Default is still continuing, unless otherwise ordered by Court:

(a)    the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP L/C Issuer as provided in the DIP L/C Facility Agreements and this Final Order;

(b)    the DIP L/C Issuer shall continue to apply the proceeds of DIP Collateral in accordance with the provisions of the DIP L/C Facility Agreements and this Final Order;

(c)    the Debtors shall have no right to use any of the proceeds of DIP Collateral (including any Cash Collateral on deposit in the Pre-Petition Cash Collateral Account, where applicable), other than towards the satisfaction of the DIP Obligations and the Pre-Petition Debt, as applicable;

(d)    any obligation otherwise imposed on the DIP L/C Issuer to provide any DIP Letters of Credit to the Debtors pursuant to the DIP L/C Facility shall be suspended;

(e)    to the extent not otherwise or previously modified pursuant to the terms of this Final Order, any automatic stay otherwise applicable to the DIP L/C Issuer is hereby modified so that the DIP L/C Issuer (and/or Pre-Petition Secured Parties, as applicable) may apply the proceeds on deposit in the Post-Petition Cash Collateral Account (and/or the Pre-Petition Cash Collateral Account, where applicable) and the Cash Management/Indemnity Account, as applicable, without further order of the Court; and

(f)    all DIP Obligations shall be immediately due and payable in full.

32.    Prior to exercising any remedy under the DIP L/C Facility Agreements following the occurrence of a DIP Order Event of Default (other than application of Cash Collateral on deposit in the Pre-Petition Cash Collateral Account, Post-Petition Cash Collateral Account, and/or Cash Management/Indemnity Account), the DIP L/C Issuer shall provide not less than five (5) calendar days' written notice of such default occurrence to: (i) the Debtors and their

counsel, (ii) counsel for any Committee(s), (iii) counsel to the DIP Term Lender, (iv) counsel to the Pre-Petition Secured Parties, and (v) the Office of the United States Trustee. Following the giving of written notice by the DIP L/C Issuer of the occurrence of a DIP Order Event of Default, the Debtors and any Committee(s) appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court. If either (a) the Debtors or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and, therefore, the right of the DIP L/C Issuer to exercise its remedies, or (b) the Debtors or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and the Court, after notice and hearing, declines to stay the enforcement thereof, the automatic stay as to the DIP L/C Issuer shall automatically terminate at the end of the earlier of (x) the five (5) calendar day notice period provided for in this Paragraph 32 or (y) the date of entry of the order of the Court declining to stay such enforcement.

33.     Subject to the provisions of Paragraphs 31-32 above (other than application of Cash Collateral on deposit in the Pre-Petition Cash Collateral Account, Post-Petition Cash Collateral Account, and/or Cash Management/Indemnity Account, which may be applied in accordance with the terms of this Final Order and the DIP L/C Agreement whether or not a DIP Order Event of Default has occurred), upon the occurrence of a DIP Order Event of Default, the DIP L/C Issuer is authorized to exercise its remedies and proceed under or pursuant to the DIP L/C Facility Agreements. All proceeds realized from any DIP Collateral shall be turned over to the DIP L/C Issuer for application to the DIP Obligations in accordance with the provisions of the DIP L/C Facility Agreements and this Final Order.

**D.     No Waiver of Remedies**

34.     The delay in or the failure of the Pre-Petition Secured Parties or the DIP L/C Issuer to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver

32

of any of the Pre-Petition Secured Parties' or the DIP L/C Issuer's rights and remedies. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Pre-Petition Secured Parties and/or the DIP L/C Issuer under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the Pre-Petition Secured Parties and/or the DIP L/C Issuer to (i) request conversion of the Chapter 11 Cases to a cases under Chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Pre-Petition Secured Parties and/or the DIP L/C Issuer may have, in each case subject in all respects to the provisions of Paragraphs 15-16 hereof.

**E.**   **Section 506(c) Claims**

35.   Nothing contained in this Final Order shall be deemed a consent by the Pre-Petition Secured Parties or the DIP L/C Issuer to (i) any charge, Lien, assessment, or claim against the DIP Collateral, the DIP L/C Liens, the Pre-Petition Collateral (including any Cash Collateral on deposit in the Pre-Petition Cash Collateral Account), or the Adequate Protection Replacement Liens under section 506(c) of the Bankruptcy Code or otherwise, or (ii) that the DIP L/C Issuer has any obligation to fund any amount, or that the DIP L/C Issuer has any further obligation to issue DIP Letters of Credit, in either case following a DIP Order Event of Default. The Debtors (and any successor thereto or any representative thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Cases) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code as against the Pre-Petition Secured Parties, Pre-Petition Collateral (including any Cash Collateral on deposit in the Pre-Petition Cash Collateral Account), DIP L/C Issuer and DIP Collateral, as applicable.

33

## VII.    OTHER RIGHTS AND OBLIGATIONS

### A.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order

36.    Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP L/C Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP L/C Issuer is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

### B.    DIP L/C Issuer's and Pre-Petition Secured Parties' Expenses

37.    All reasonable out-of-pocket costs and expenses of the DIP L/C Issuer and Pre-Petition Secured Parties in connection with the DIP L/C Facility Agreements, the Pre-Petition Loan Documents and this Final Order, including, without limitation, reasonable and documented legal, accounting, financial advisory and other professional fees, costs and expenses, will be paid by the Debtors; provided that, the DIP L/C Issuer and Pre-Petition Secured Parties shall first apply any existing retainer in payment of any post-petition out-of-pocket costs and expenses. Payment of such fees shall not be subject to allowance by the Court; provided, however, the Debtors may seek a determination by the Court whether such fees and expenses are reasonable. The Debtors shall provide to the Office of the United States Trustee and any Committee a copy of any invoices for professional fees and expenses provided to the Debtors during the pendency of the Chapter 11 Cases. The Debtors, the U.S. Trustee and any Committee shall have ten (10) days after receipt of a copy of each invoice to assert a specific written objection as to the reasonableness of the amounts contained in the subject invoice. In the absence of a written objection or dispute as to an invoice, the Debtors shall pay and/or reimburse all such fees in expenses within ten (10) days of receipt of the invoice in question in the manner set forth herein;

34

provided that, in the case of fees in expenses of the Pre-Petition Secured Parties, such fees and expenses shall be paid and/or reimbursed from funds on deposit in the Cash Management/Indemnity Account after exhaustion of any pre-petition retainer amounts. The Debtors shall remain liable to the Pre-Petition Secured Parties for all unpaid Pre-Petition Indemnity Obligations to the extent that the funds in the Cash Management/Indemnity Account are insufficient to satisfy them in full. In the event any amount stated in any invoice is disputed, the Debtors shall be required to pay and/or reimburse the Pre-Petition Secured Parties and the DIP L/C Issuer, as applicable, in the manner set forth herein for any undisputed fees in expenses not later than ten (10) days after delivery of the aforementioned invoice.

**C.     Binding Effect**

38.     The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP L/C Issuer and Pre-Petition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors (subject to the provisions of Paragraphs 23-27 above)), whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Cases or any Successor Cases.

**D.     No Third Party Rights**

39.     Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**E.     No Marshaling**

40.     Neither the DIP L/C Issuer nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Pre-Petition Collateral, as applicable.

35

**F.**    **Section 552(b) of the Bankruptcy Code**

41.    The DIP L/C Issuer and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP L/C Issuer and/or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the DIP Collateral.

**G.**    **Amendments**

42.    The Debtors and the DIP L/C Issuer may amend, modify, supplement, or waive any provision of the DIP L/C Facility Agreements to make non-material changes to such agreements (as determined by the Debtors and the DIP L/C Issuer) without further approval of the Court, any Committee or the DIP Term Lender; provided that, prior to effectuating any non-material change, amendment, modification, supplement or waiver of any provision of the DIP L/C Facility Agreements, the Debtors and the DIP L/C Issuer shall consult with any Committee and the DIP Term Lender with respect to same.  For the avoidance of doubt, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the Commitment, or (iii) changes the maturity date of the DIP L/C Facility shall be considered a material change. Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors and the DIP L/C Issuer, and approved by the Court.

**H.**    **Survival of Final Order**

43.    The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

36

       (b)       converting the Chapter 11 Cases to Cases under chapter 7 of the Bankruptcy Code,

       (c)       to the extent authorized by applicable law, dismissing the Chapter 11 Cases,

       (d)       withdrawing of the reference of the Chapter 11 Cases from this Court, or

       (e)       providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

44.     The terms and provisions of this Final Order including the DIP Protections granted pursuant to this Final Order and the DIP L/C Facility Agreements and any Adequate Protection granted the Pre-Petition Secured Parties shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and Adequate Protection for the Pre-Petition Secured Parties shall maintain their priority as provided by this Final Order.

## I.     **Inconsistency**

45.     In the event of any inconsistency between the terms and conditions of the DIP L/C Facility Agreements and of this Final Order, the provisions of this Final Order shall govern and control. Notwithstanding anything to the contrary in the DIP L/C Facility Agreements, the closing fee set forth in Section 2.04(a) of the DIP L/C Agreement shall be no more than $56,250.

## J.     **Enforceability; Waiver of Any Applicable Stay**

46.     This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

## K.     **Objections Overruled**

47.     All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

## L.     **Proofs of Claim**

49.     As provided in Footnote 3 above, the acknowledgments and agreements by the

Debtors of the Pre-Petition Debt and the related Liens, rights priorities and protections granted to or in favor of the Pre-Petition Secured Parties set forth herein and in the Pre-Petition Loan Documents shall constitute a proof of claim on behalf of the Pre-Petition Secured Parties in these Chapter 11 Cases and/or in any Successor Cases in respect of the Pre-Petition Debt, and none of the Pre-Petition Secured Parties shall be required to file any additional or other proofs of claim in the Chapter 11 Cases or in any Successor Cases to evidence the obligations represented by the Pre-Petition Debt or the claims/Pre-Petition Liens related thereto.

**M.    Headings**

50.    The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

**N.    Retention of Jurisdiction**

51.    The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: February 5, 2015

CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE