UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>THE WET SEAL, INC., *et al.*, a Delaware corporation[1]<br><br>Debtors. | Chapter 11<br><br>Case No.: 15-10081 (CSS)<br><br>(Jointly Administered) |

**DECLARATION OF THOMAS R. HILLEBRANDT IN SUPPORT OF
MOTION OF THE DEBTORS FOR ENTRY OF ORDER
PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULES 2002, 4001 AND 9014: (I) AUTHORIZING
REPLACEMENT POSTPETITION FINANCING FROM MADOR LENDING, LLC,
(II) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE PRIORITY, (III) AUTHORIZING USE OF CASH COLLATERAL AND
PROVIDING FOR ADEQUATE PROTECTION,
AND (IV) MODIFYING THE AUTOMATIC STAY**

I, Thomas R. Hillebrandt, declare as follows:

1.  I am the Interim Chief Financial Officer for The Wet Seal, Inc., a Delaware corporation ("WSI"). I also serve as the Chief Financial Officer for WSI's wholly owned subsidiaries: (a) The Wet Seal Retail, Inc., a Delaware corporation, (b) Wet Seal Catalog, Inc., a Delaware corporation, and (c) Wet Seal GC, LLC, a Virginia limited liability company (collectively, with WSI, the "Debtors"). I am familiar with the day-to-day operations and business and financial affairs of the Debtors, having served in my current capacity since December 1, 2014, and having previously served as Vice President and Corporate Controller.

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265), Wet Seal Catalog, Inc. (7604), and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

01:16795048.1

2. I am an individual over the age of eighteen. Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein, and if called upon to testify, I would testify competently to all of the facts set forth herein.

3. I have over twenty-five years of experience in corporate finance and accounting, having served in several senior level positions with both public and private companies. Prior to joining the Debtors, I served as Vice President of Finance/IT for The Territory Ahead, a multi-channel apparel retailer. I also previously served as Chief Financial Officer for Deckers Outdoor Corporation; Corporate Controller and Chief Accounting Officer for K2 Inc.; and Chief Financial Officer of Fotoball USA, Inc. In addition, I have served as Chief Financial Officer for several privately-held internet and technology firms. I began my career at KPMG, where I became a Certified Public Accountant, and I received a Bachelor of Business Administration and Master of Science in Accounting from the University of Wisconsin.

4. As Interim Chief Financial Officer for WSI and as Chief Financial Officer for the other Debtors, I have become familiar with the Debtors' day-to-day operations, business affairs, financial condition and books and records. My testimony herein is based on my service as an officer of the Debtors currently and in the past, my regular attendance at the meetings of WSI's board of directors (of which there have been several each week), my review of the Debtors' books and records and other relevant documents, and my review of information compiled and communicated to me, at my request, by other employees of the Debtors.

5. General background concerning the Debtors, including their efforts to obtain debtor-in-possession financing and an exit strategy are set forth in the *Declaration of Thomas R. Hillebrandt in Support of First Day Motions* [Dkt. No. 19] (the "Prior Hillebrandt Declaration") and the *Declaration of Derek Pitts*, etc. [Dkt. No. 22] (the "Prior Pitts Declaration"). That

background is not repeated in this Declaration. Parties reviewing this Declaration are referred to the Prior Hillebrandt Declaration and the Prior Pitts Declaration for background facts.

6.  I make this Declaration in support of the concurrently-filed *Motion of the Debtors for Entry of Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (i) Authorizing Replacement Postpetition Financing from Mador Lending, LLC, (ii) Granting Liens and Providing Superpriority Administrative Expense Priority, (iii) Authorizing Use of Cash Collateral and Providing for Adequate Protection, and (iv) Modifying the Automatic Stay.*

7.  On February 18, 2015, the Court entered an order approving bid procedures governing the submission of competing proposals to sponsor a plan of reorganization or acquire all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code and, in either case, provide replacement debtor-in-possession financing.

8.  Pursuant to the Court-approved bid procedures, Mador Lending, LLC ("Mador"), which I understand is an affiliate of Versa Capital Management, LLC, timely submitted a qualified overbid by the March 5, 2015 at 4:00 p.m. (prevailing Pacific time) deadline.

9.  Before the commencement of the auction, Mador agreed that, should it be chosen as the successful bidder, it would offer full-time employment on the same terms, benefits, and responsibilities, and within the same or similar travel radius, to the following current executives of the Debtors: Edmond S. Thomas, Christine Lee, Jon Kubo, Rachel Page, Kim Bajrech and myself (collectively, the "Executives"), provided the Executives would continue to work for the Debtors through at least the closing of the sale of the Debtors' assets to Mador. Mador also agreed that the employment packages for the Executives would include six-months' severance (which would not reduce over time) on market terms; provided, however, that if any of the

Executives and Mador could not, after good-faith negotiations, agree on an equity incentive program for the Executive following the closing of the sale of the Debtors' assets, such Executive would be entitled to leave employment and receive his or her six months' severance.

10. In advance of the auction held on March 10 and 12, 2015, the Debtors' board of directors appointed a special committee comprised of Adam Rothstein and Kenneth Reiss, both independent members of the board of directors, to analyze qualified bids and determine which bid at auction is the highest or otherwise best bid. None of the Executives and no non-independent members of the board are on the special committee.

11. Mador's final bid, which I have reviewed, consisted of a sale of the Debtors' assets and replacement debtor-in-possession financing, each on terms more favorable than the plan sponsorship agreement and debtor-in-possession financing between the Debtors and B. Riley Financial, Inc. ("B. Riley"). At the conclusion of the auction, which I attended together with Adam Rothstein and Kenneth Reiss, the members of the special committee, the Debtors, through the special committee, and in consultation with the Official Committee of Unsecured Creditors, declared Mador the successful bidder, and declared B. Riley the back-up bidder.

12. As a consequence of Mador being designated the successful bidder, the plan sponsorship agreement with B. Riley will be terminated within just a few days and, five business days after that, the debtor-in-possession financing provided to the Debtors by B. Riley will mature by its terms. The Debtors will thereafter be unable to borrow under that financing or use cash collateral to meet their near-term liquidity needs. As set forth in the Approved Budget, the Debtors project that they will need to borrow approximately $1.6 million during the week of March 22-28, 2015 to maintain operations. The Debtors will require several days after Court approval of the debtor-in-possession financing provided by Mador to establish that debtor-in-

possession facility and meet all of the conditions to borrowing, including the payoff of B. Riley. As of today, other than Mador, no other party has expressed a willingness to provide to the Debtors the post-petition financing that is needed for them to survive as a going concern.

13. The Debtors require approval of the replacement debtor-in-possession financing offered by Mador on an emergency basis. Without the immediate use of cash collateral and the funds available under the Mador debtor-in-possession financing, the Debtors would be unable to fund their operations, and would be unable to pay their vendors, which would be catastrophic for the Debtors' business. Access to cash collateral and the funds available under the Mador debtor-in-possession financing is crucial to the Debtors' ability to maintain their business and to avoid immediate and irreparable harm to their estates, employees, customers, and creditors.

14. The terms of the Mador debtor-in-possession financing and the agreements related thereto were negotiated in good faith and at arm's-length between the Debtors and Mador in the days between Mador's submission of its bid pursuant to the bid procedures and the conclusion of the auction, resulting in agreements designed to permit the Debtors to maximize the value of their assets. The proposed terms are fair, reasonable, and appropriate under the circumstances.

15.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 13th day of March, 2015 at Foothill Ranch, California.

                                              The Wet Seal, Inc., *et al.*,
                                              Debtors and Debtors in Possession

                                              By: _____
                                                  Thomas R. Hillebrandt
                                                  Interim Chief Financial Officer