## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE WET SEAL, INC., et al.,[1] | ) | Case No. 15-10081 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Re: Docket Nos. 408 & 413 |

## ORDER PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014: (1) AUTHORIZING POST-PETITION FINANCING, (2) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING USE OF CASH COLLATERAL, AND (4) MODIFYING THE AUTOMATIC STAY

Upon the motion (the "***Motion***"),[2] dated March 13, 2015 [Dkt. No. 408], of The Wet Seal, Inc., et al., as debtors and debtors-in-possession (individually a "***Debtor***", and collectively the "***Debtors***"), pursuant to sections 105, 361, 362, 363, and 364 of Title 11, United States Code (the "***Bankruptcy Code***") and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 4001-2 of the Local Bankruptcy Rules for the District of Delaware (the "***Local Rules***"), in the above-captioned chapter 11 cases (collectively, the "***Chapter 11 Cases***"), for entry of an order (this "***Order***"), granting the following relief:

**(I)     DIP Financing -**

      **(A)**    Authorizing the Debtors to obtain and guarantee post-petition financing, subject to availability restrictions, pursuant to that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of March

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265), Wet Seal Catalog, Inc. (7604), and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

[2] Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement (defined below).

12, 2015 (as the same may be amended, modified, restated, or supplemented and in effect from time to time, including by this Order, the "*DIP Credit Agreement*"), by and between the Debtors, as borrowers or guarantor, as applicable, and Mador Lending, LLC (in its capacity as lender under the DIP Credit Agreement, the "*DIP Lender*"), which may be used for funding the Debtors' day-to-day operations and working capital needs, subject in all respects to the Approved Budget and the terms and provisions of the DIP Credit Agreement and this Order (the post-petition credit facility represented in the DIP Credit Agreement shall sometimes be referred to herein as the "*DIP Facility*");

(B)     Approval of the DIP Credit Agreement and all other agreements, documents, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, all "Loan Documents", each as amended and in effect from time to time (collectively with the DIP Credit Agreement, the "*DIP Financing Agreements*" and, the obligations arising under or in connection with the DIP Financing Agreements, the "*DIP Obligations*");

(C)     Granting the DIP Lender the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims, subject only to the Professional Fee Carve Out (defined below) and the BofA Interests (defined below):

(i)     Except as otherwise expressly provided herein, first priority valid, perfected, and enforceable Liens, upon all of the Debtors' real and personal property and other assets as provided in and as contemplated by this Order and the DIP Financing Agreements; and

(ii)    A superpriority administrative claim in respect of all DIP Obligations.

**(II)**  **Use of Cash Collateral** – Subject to such limitations as shall be provided herein, authorizing the Debtors' use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code, in which the DIP Lender has an interest under this Order, the DIP Financing Agreements, or otherwise ("*Cash Collateral*").

**(III)** **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Order, without further order of the Court.

**(IV)** **Waiving Any Stay under Rule 6004(h)** – Waiving any applicable stay to the immediate effectiveness of this Order, including, without limitation, under Bankruptcy Rule 6004(h).

*CHI 65672582v4*

and the Court having reviewed the Motion and having held a hearing with respect to the Motion on March 18, 2015 (the "*Hearing*"); upon the Motion and the record of the Hearing; and all objections, if any, to the entry of this Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

## I.     Procedural Findings of Fact

**A.     Petition Date.** On January 15, 2015 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "*Court*"). The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

**B.     Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the Motion constitutes a "core" proceeding under 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.     Committee Formation.** On January 30, 2015, an official committee of unsecured creditors (the "*Creditors' Committee*") was appointed in the Chapter 11 Cases. Other than the Creditors' Committee, no official committee (each, including the Creditors' Committee, a "*Committee*") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Cases.

*CHI 65672582v4*

**D.    Notice.**  The Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  Notice of the Hearing and the relief requested in the Motion has been provided by the Debtors.  Under the circumstances, such notice of the Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2.

## II.    Debtors' Acknowledgements and Agreements

**E.**    The Debtors admit, stipulate, acknowledge, and agree as follows, which (collectively, Paragraphs II.E (1) - (6) hereof shall be referred to herein as the *"Debtors' Stipulations"*):

(1)    **DIP Financing Agreements**.   The Debtors are parties to the DIP Financing Agreements.

(2)    **DIP Obligations**.  The Debtors will be indebted to the DIP Lender for all DIP Obligations.

(3)    **DIP Collateral**.  To secure the DIP Obligations, the DIP Lender shall have first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens (collectively, the *"DIP Liens"*) senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates (except as may otherwise be provided in this Order,  the DIP Financing Agreements and the BofA DIP L/C Order (defined below), in, upon and to all of the following (collectively, the *"DIP Collateral"*):

(a)    All "Collateral" (as defined in the DIP Credit Agreement);

(b)    All tangible and intangible personal property assets of the Debtors, including, without limitation, the following:

(i)    all Accounts;

(ii)    all Goods, including Equipment, Inventory and Fixtures;

(iii)    all Documents, Instruments and Chattel Paper;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)    all Securities Collateral;

(vi) all Investment Property;

(vii) all Intellectual Property Collateral;

(viii)  all Commercial Tort Claims;

(ix) all General Intangibles;

(x)  all Deposit Accounts;

(xi) all Supporting Obligations; and

(xii) all books and records relating to the Collateral;

(c)     Bankruptcy Recoveries (as defined below), but only: (A) the full amount of any such recovery or settlement thereof to the extent arising under section 549 of the Bankruptcy Code, and (B) all amounts necessary to reimburse the DIP Lender for the amount of the Professional Fee Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all Bankruptcy Recoveries ((A) and (B) being hereinafter defined as the "*Specified Bankruptcy Recoveries*"). As used herein, "*Bankruptcy Recoveries*" shall mean any claims and causes of action to which any Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of such Debtor(s) or the estates of the Debtors under Chapter 5 of the Bankruptcy Code, and any claim and cause of action relating to a Commercial Tort Claim and any and all recoveries and settlements thereof; and

(d)     All real property interests of the Debtors, all proceeds from the disposition of real property interests, and all proceeds from the disposition of real property leases (including, without limitation, all non-residential real property leases); provided that, with respect to the Debtors' non-residential real property leases, and notwithstanding anything to the contrary in this Order or any DIP Financing Agreements, no Liens or encumbrances shall be granted on or extend to the Debtors' real property leases themselves, but rather, any such Liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such real property lease(s).

(e)     To the extent not covered by clauses (a) through (d) above, all other personal property of the Debtors, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtors from time to time with respect to any of the foregoing.

(f)    The DIP Liens are subject to the BofA Interests and the Professional Fee Carve Out.

(4)    **DIP Obligations and DIP Liens.**

(a)    Upon entry of this Order,

(i)    The DIP Obligations shall constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with the terms of the DIP Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(ii)    No offsets, defenses, or counterclaims to any of the DIP Obligations exist;

(iii)    No portion of the DIP Obligations will be subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    The DIP Obligations constitute valid, allowed claims, payable on the terms and the priorities set forth herein; and

(v)    The DIP Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to the BofA Interests and the Professional Fee Carve Out, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b)    The Debtors shall be deemed to have waived, discharged, and released the DIP Lender, together with its affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtors may have:

(i)    To challenge or object to any of the DIP Obligations, except as permitted under the DIP Financing Agreements,

(ii)    To challenge or object to the security for the DIP Obligations, including, without limitation, the DIP Liens on the DIP Collateral,

(iii)    To bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action

based on facts and circumstances existing prior to entry of this Order arising out of, based upon, or related to the DIP Financing Agreements, the DIP Obligations, the DIP Liens, or any other obligations related thereto.

(c) The Debtors do not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the DIP Financing Agreements, the DIP Obligations, or the DIP Liens, or any claim of the DIP Lender pursuant to the DIP Financing Agreements or otherwise.

(5) **Cash Collateral.**  Subject only to the BofA Interests and the Professional Fee Carve Out, the DIP Lender has a security interest in and Lien on Cash Collateral, including all amounts on deposit in the Debtors' banking, checking, or other deposit accounts to secure the DIP Obligations.

(6) **DIP Facility**.  In entering into the DIP Financing Agreements, and as consideration therefor, the Debtors hereby agree that until such time as all Obligations (as defined in the DIP Financing Agreements) have been irrevocably paid in full in cash (or other arrangements for payment of the Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, the Debtors shall be permitted to provide cash collateral and liens to BofA (defined below) in connection with (i) postpetition letters of credit (including the deemed "roll-up" of the Pre-Petition Letters of Credit (as defined in the BofA DIP L/C Order defined below)), and (ii) prepetition and postpetition cash management and treasury management services and prepetition indemnification rights and claims, in each case consistent with the terms of the BofA DIP L/C Order and the Cash Management Order (each defined below).

Upon entry of this Order, the Debtors' Stipulations shall be binding on all creditors, interest holders, and parties-in-interest, including, without limitation, on BofA (defined below).

## III.   Findings Regarding the Post-Petition Financing.

F.   **B. Riley Financing.**  On February 5, 2015, this Court entered the *Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules*

CHI 65672582v4

*2002, 4001 and 9014: (1) Authorizing Post-Petition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral, and (4) Modifying the Automatic Stay* [Dkt. No. 251] (the "***B. Riley Final Order***"), authorizing the Debtors to obtain, from B. Riley Financial, Inc. ("***B. Riley***"), up to $20,000,000 in post-petition financing (the "***B. Riley Facility***"), subject to availability restrictions, pursuant to that certain Senior Secured, Super-Priority Debtor-In-Possession Credit Agreement, dated as of January 15, 2015, in substantially the form filed with the Court at Dkt. No. 21 (the "***B. Riley Credit Agreement***") and the other "Loan Documents", as that term is defined in the B. Riley Credit Agreement (collectively with the B. Riley Credit Agreement and the B. Riley Final Order, the "***B. Riley Loan Documents***"). All obligations owed to B. Riley under the B. Riley Loan Documents (the "***B. Riley Obligations***") are secured by liens on the DIP Collateral, as that term is defined below (the "***B. Riley Liens***"). As of the entry of this DIP Order, the outstanding amount of the B. Riley Obligations is $458,325.30, consisting of: (i) a commitment fee of $375,000 (the "***B. Riley Commitment Fee***"); (ii) fees and expenses owed to Skadden, Arps, Slate, Meagher & Flom LLP in the amount of $63,325.30; and (iii) fees and expenses owed to B. Riley in the amount of $20,000 (collectively, (ii), and (iii) shall hereinafter be referred to as the "***Outstanding B. Riley Fees and Expenses***"). At the Hearing on this Motion, this Court determined that the entry into the DIP Facility would be more beneficial to the Debtors' estates than would a continuation of the B. Riley Facility, and thus should be approved.

**G.     Need for Post-Petition Financing.** An immediate need exists for the Debtors to obtain funds under the DIP Facility in order to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors

requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates, creditors, equity holders, and the possibility for a successful reorganization or sale of the Debtors' assets.

**H.    No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain any of the following:

(1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

(4)    credit for money borrowed secured by a junior Lien on property of the estates which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Financing Agreements and this Order.

The Debtors are unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (defined below).

**I.    Adequacy of the Budget.** The Approved Budget, attached hereto as <u>Exhibit 1</u>, is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by the Approved Budget.

**J.    Section 506(c) of the Bankruptcy Code.** In light of its agreement to subordinate its Liens and superpriority claims to (x) the Professional Fee Carve Out and (y) the "DIP L/C Liens" (as that term is defined in the BofA DIP L/C Order) securing all claims and interests held by Bank of America, N.A. ("*BofA*") as specifically identified in (i) the Final Order Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (1) Authorizing Post-Petition L/C Financing Facility, (2) Granting Liens and Providing Superpriority Administrative Expense Priority, (3) Authorizing Use of Cash Collateral

and Providing for Adequate Protection, and (4) Modifying the Automatic Stay (as in effect on the date hereof, as modified by this Order, the *"BofA DIP L/C Order"* and, as in effect on the date hereof, the BofA financing facility approved thereby, the *"BofA DIP L/C Facility"*) and/or (ii) the Order (I) Authorizing Continued Use of Cash Management System, (II) Authorizing the Continuation of Intercompany Transactions, (III) Granting Administrative Priority Status to Postpetition Intercompany Transactions, (IV) Authorizing Use of Prepetition Bank Accounts, Account Control Agreement, and Certain Payment Methods, and (V) Waiving the Requirements of 11 U.S.C. § 345(b) on a final Basis (the *"Cash Management Order,"* collectively, such senior "DIP L/C Liens" securing such claims and interests of BofA specifically identified in the BofA DIP L/C Order and/or the Cash Management Order, in each case subject to terms set forth therein, the *"BofA Interests"*), the DIP Lender is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code, to the extent applicable.

**K.**     **Conditions Precedent to DIP Lender's Extension of Financing.** The DIP Lender has indicated a willingness to provide financing to the Debtors in accordance with the DIP Financing Agreements, and subject to the following:

(1)     the entry of this Order;

(2)     findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code; and

(3)     the conditions set forth in the DIP Financing Agreements (including, without limitation, the payment of the B. Riley Obligations in accordance with Paragraph 5 below, and the termination and release of the B. Riley Liens upon entry of this Order).

**L.**     **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The extension of credit under the DIP Facility and the DIP Financing

Agreements (i) is fair, reasonable, and the best available under the circumstances (and entry into such DIP Facility and the DIP Financing Agreements is more beneficial to the Debtors' estates than a continuation of the B. Riley Facility would be, and thus should be approved); (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

M.      **Relief Essential; Best Interest.** The relief requested in the Motion (and as provided in this Order) is necessary, essential, and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Financing Agreements. The Debtors have demonstrated good and sufficient cause for the relief granted herein.

## NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1.      The Motion is granted as set forth herein.

## I.      DIP FINANCING

A.      **Approval of Entry into the DIP Financing Agreements**

2.      The Debtors are expressly and immediately authorized to execute and deliver the DIP Financing Agreements, and to incur and to perform the post-petition Obligations thereunder in accordance with, and subject to, the terms of this Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary or reasonably appropriate for the performance by the Debtors under the

11

DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Order and the DIP Financing Agreements. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Financing Agreements as such become due, including, without limitation, reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP Financing Agreements, which amounts, subject to the provisions of Paragraph 35 below (solely with regard to reimbursement of the DIP Lender's reasonable attorneys', financial advisors' and accountants' fees, and disbursements), shall not otherwise be subject to approval of this Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms and the terms of this Order.

**B.**    **Authorization to Borrow**

3.    In order to enable them to continue to operate their businesses following the entry of this Order, the Debtors are hereby authorized to borrow from the DIP Lender under the DIP Facility, subject in all respects to the terms and conditions of this Order, the DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under Section 6.19 of the DIP Credit Agreement).

**C.**    **Application of DIP Facility Proceeds**

4.    The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Financing Agreements) shall be used in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, this Order, and in accordance with and as may be limited by the Approved Budget (subject to any variances thereto permitted under Section 6.19 of the DIP Credit Agreement), and otherwise solely for the following purposes:

*CHI 65672582v4*

    (a)    If necessary, to repay the B. Riley Obligations in accordance with Paragraph 5 below; and

    (b)    For general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper corporate purposes of the Debtors not otherwise prohibited by the terms hereof and subject to the terms and conditions of the DIP Financing Agreements.

The Debtors shall provide a copy of any motion seeking entry of an order modifying any of the foregoing to the DIP Lender not less than five (5) business days before the hearing thereon and if the Court determines to enter such order, it shall immediately constitute a DIP Order Event of Default (defined below) (without the requirement of the notice requirements in Paragraph 26 below).

**D.**      **Conditions Precedent; Payment of B. Riley Obligations And Termination of B. Riley Liens**

5.      The DIP Lender shall not have any obligation to make any loan or advance under the DIP Financing Agreements unless each of the conditions precedent to the making of such loan/advance under the DIP Financing Agreements has been satisfied in full or waived, as determined by the DIP Lender in its exclusive discretion, in accordance with the DIP Financing Agreements. Upon entry of this Order, the B. Riley Liens shall be of no further force or effect, without the need for any further action. The Debtors are hereby authorized and shall pay, from up to $458,325.30 of Mador Lending LLC's Good Faith Deposit deposited in accordance with the Bid Procedures that are attached to that *Order Approving Certain Bid Procedures Governing the Submission of Competing Proposals to (I)(A) Sponsor A Plan of Reorganization for the Debtors or (B) Acquire All or Substantially All of the Debtors' Assets Pursuant to Section 363 of the Bankruptcy Code and (II) Provide Debtor-In-Possession Financing* [Dkt. No. 329], which amount shall be reserved for such purpose: (a) immediately upon entry of this Order, the B. Riley Commitment Fee; and (b) under and in accordance with Paragraph 35 of the B. Riley

Final Order, the Outstanding B. Riley Fees and Expenses.  Upon payment of the sums set forth in (a) and (b) above, the B. Riley Obligations shall be deemed to be paid in full, without the need for further action.  Notwithstanding the foregoing, upon the DIP Lender's request: (x) the Debtors are authorized to take all such actions as are necessary to terminate the B. Riley DIP Facility and the B. Riley Loan Documents, and to release and discharge the B. Riley Liens; and (y) B. Riley is directed to cooperate with such termination, release and discharge of the B. Riley DIP Obligations and B. Riley Liens (including, without limitation, by filing any applicable UCC-3 termination statements, terminating any control agreements, and turning over any possessory DIP Collateral to the DIP Lender; provided that, notwithstanding anything to the contrary contained in the DIP Financing Agreements, the Debtors and B. Riley shall have up to five (5) business days after entry of this Order to turn over any possessory DIP Collateral to the DIP Lender).

## E.  The DIP Liens

6.      Pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, effective immediately upon the entry of this Order the DIP Lender is hereby granted the DIP Liens, which shall be senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates (except as may otherwise be provided in this Order), in, upon and to all of the DIP Collateral, subject to the BofA Interests and the Professional Fee Carve Out. For the avoidance of doubt, nothing in this Order limits the Debtors' obligations under the DIP Credit Agreement (including Section 6.03 thereof) with respect to any valid tax obligations, or the status of any such valid tax obligation as a "Permitted Encumbrance" under the terms of the DIP Credit Agreement, including, without limitation, with respect to any valid tax obligations that may be owed to Arlington ISD, Crowley ISD, Burleson ISD, Spring Branch ISD, Clear Creek ISD, City of Houston, Brazoria County Tax Office, Fort Bend ISD, Fort Bend County LID

14

#2, Dickinson ISD, Galveston County MUD #54, Woodlands Metro Center MUD, Woodlands Road UD, Potter County, Tyler ISD, McAllen ISD, Bexar County, Cypress-Fairbanks ISD, Dallas County, El Paso, Fort Bend County, Frisco, Gregg County, Harris County, Hidalgo County, Jefferson County, McAllen, Montgomery County, Nueces County, or Tarrant County, in each case subject to the Debtors' rights to challenge any and all asserted tax claims and interests, and the DIP Liens shall not be senior to any valid lien securing such a "Permitted Encumbrance" under the DIP Credit Agreement.

**F.**   **DIP Lien Priority**

7.      The DIP Liens to be created and granted to the DIP Lender, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, and

(b)     first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, subject only to: (i) the BofA Interests, and (ii) the Professional Fee Carve Out.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Financing Agreements. Except as provided in Paragraph (b) above, the DIP Liens  shall be valid and enforceable against any trustee appointed in any one or more of the Chapter 11 Cases, upon the conversion of any one or more of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a *"Successor Case"*, and collectively the *"Successor Cases"*), and/or upon the dismissal of any one or more of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 506(c), 510, 549, 550, or 551 of the Bankruptcy Code.

*CHI 65672582v4*

G.    **Superpriority Administrative Claim Status**

8.    Subject to the BofA Interests and the Professional Fee Carve Out, all DIP Obligations shall be granted the status of an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Cases (and any Successor Cases) under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code; provided, however, that the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries.

9.    Other than the Professional Fee Carve Out and the BofA Interests, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

## II.    USE OF CASH COLLATERAL

A.    **Authorization to Use Cash Collateral**

10.    Pursuant to the terms and conditions of this Order, the DIP Facility, the DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget, the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of this Order and terminating upon

16

notice being provided by the DIP Lender to the Debtors that: (i) a DIP Order Event of Default (defined below) has occurred and is continuing, and (ii) the DIP Facility has been terminated. For the avoidance of doubt, and subject in all respects to the Approved Budget, the Debtors are authorized to contract for, among other things, inventories.

11.     Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or the proceeds resulting therefrom, except as permitted under the DIP Financing Agreements.

### III.     POST-PETITION LIEN PERFECTION

12.     This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, control agreement, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, taking possession or control of DIP Collateral or giving notice to any third party or obtaining any consent or agreement of any third party) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein.  Upon entry of this Order, the DIP Lender shall have, in addition to any other rights granted it hereunder, full control, dominion, and such other status as might be required under applicable law to hold a perfected and enforceable interest in such cash, and a Lien in, upon and on all deposit accounts (whether or not a control agreement exists), subject to the BofA Interests and to the terms of the Cash Management Order.

13.     Notwithstanding the foregoing, the DIP Lender may, in its discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Lender deems necessary or desirable, and is

CHI 65672582v4

hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so.

14.   The Debtors shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Lender may reasonably request to evidence the DIP Liens granted pursuant hereto.

15.   The DIP Lender, in its discretion, may file a photocopy of this Order as evidence of the DIP Liens granted pursuant hereto with any recording office designated to file financing statements, with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property, and/or the United States Patent/Trademark/Copyright Office(s), and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Order as evidence of the DIP Liens granted pursuant hereto.

16.   The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary:

  (a)   permit the Debtors to grant the DIP Liens (subject to the BofA Interests) and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreements, the DIP Facility, and this Order,

  (b)   authorize the DIP Lender to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Order; or

  (c)   otherwise effect the transactions and actions permitted by the DIP Financing Agreement and this Order, including, without limitation, the DIP Lender's right to enforce its remedies.

## IV.   CERTAIN RESTRICTION ON USE OF PROCEEDS OF DIP FACILITY

17.   Notwithstanding anything herein to the contrary, neither the proceeds of the DIP Financing Agreements, the DIP Collateral, nor the Professional Fee Carve Out may be used to:

(a) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the DIP Financing Agreements or the DIP Liens or claims granted under this Order or the DIP Financing Agreements;

(b) assert any claims and defenses or any other causes of action against the DIP Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors;

(c) prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Financing Agreements or this Order;

(d) seek to modify any of the rights granted to the DIP Lender hereunder or under the DIP Financing Agreements (in the case of each of the foregoing clauses (a) through (d), without the DIP Lender's prior written consent); or

(e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are: (i) approved by an order of this Court (including with respect to the BofA Interests) and (ii) permitted under the Approved Budget;

provided, however, that nothing in this Paragraph 17 shall or does prohibit the proceeds of the DIP Financing Agreements, the DIP Collateral, or the Professional Fee Carve Out from being used in connection with discussions and negotiations relating to any matter with Mador Lending, LLC, including in its capacity as DIP Lender, and/or any of its affiliates.

## V.    PROFESSIONAL FEE CARVE OUT AND PAYMENT OF PROFESSIONALS.

18.    Subject to the terms and conditions contained herein, the DIP Liens and the DIP Superpriority Claim are subordinate only to (i) the Professional Fee Carve Out (as defined in the DIP Financing Agreements), which, for the avoidance of doubt and notwithstanding anything in the DIP Financing Agreements to the contrary, shall include, among other things, provision for all due and owing U.S. Trustee quarterly fees in such amounts as determined in agreement with the U.S. Trustee or by final order of the Court, and (ii) the BofA Interests. For the avoidance of doubt, the Professional Fee Carve Out shall be senior to the DIP Liens and the DIP Superpriority

Claim, and any and all other Liens or claims securing the DIP Obligations. Any unused portion of the Professional Fee Carve Out shall at all times remain DIP Collateral as provided herein.

19.     Following the Petition Date, the allowed Professional Fees and Expenses of Case Professionals shall be paid first from retainers held by such professionals, if any, and thereafter at the times and in the amounts provided under the Approved Budget. To the extent that the Professional Fees and Expenses of Case Professionals have not been allowed by the Court at the time of payment pursuant to the Approved Budget, the amount so paid to the Case Professionals shall be held in escrow by them until the requested Professional Fees and Expenses have been so allowed.

20.     Subject to Paragraphs 25 and 26 below, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and allowed by the Court, but always as provided in and as may be limited by the Approved Budget and this Order. Further, nothing contained herein shall limit payment of compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and allowed by the Court even if they exceed the amounts contained in the Approved Budget, out of funds other than the Professional Fee Carve Out after the DIP Obligations have each been irrevocably paid in full to the DIP Lender.

21.     Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent by the DIP Lender to the allowance of any professional fees or expenses of the Debtors, of any Committee(s), or of any person, nor shall it affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses or to permit the Debtors to pay any such amounts not set forth in the Approved Budget.

20

## VI.    COMMITMENT TERMINATION DATE,
## DIP ORDER EVENTS OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date

22.    All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "***Commitment Termination Date***"):

(a)    the Maturity Date;

(b)    the date on which the maturity of the Obligations is accelerated (or deemed accelerated) and the Commitment is irrevocably terminated in accordance with Article VIII of the DIP Credit Agreement);

(c)    the termination of the Commitment under Section 2.06 of the DIP Credit Agreement;

(d)    the effective date of any Plan (defined below);

(e)    ~~(i)~~ *the earlier of* (i) April 1, 2015, if this Court has not entered an order approving the sale of all or substantially all of the assets of the Debtors, including, without limitation, the DIP Collateral, to DIP Lender (or its assignees) pursuant to that certain Asset Purchase Agreement dated as March 12, 2015 by and among the Debtors and Mador Lending, LLC, ~~or~~ (ii) April 15, 2015, if such sale has not closed on or before such date, *or (iii) the closing of such sale.*

### B.    DIP Order Events of Default

23.    Each of the following shall constitute a "***DIP Order Event of Default***":

(a)    the occurrence of the Commitment Termination Date;

(b)    the occurrence of an Event of Default under the DIP Credit Agreement;

(c)    the Debtors sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or seek to transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral) without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or an order of this Court), except under and in accordance with Section 7.05 of the DIP Credit Agreement (provided that, for the avoidance of doubt, BofA shall be permitted to use the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account (as defined in the BofA DIP L/C Order), the Post-Petition Cash Collateral Account (as defined in the BofA DIP L/C Order), and the Cash Management/Indemnity Account (as defined in the BofA DIP L/C Order) in accordance with the terms of the

21

BofA DIP L/C Order and any agreement or document entered into under or in connection with the BofA DIP L/C Order);

(d)     the Debtors assume, reject, or assign any executory contract or unexpired lease without the prior consultation with the DIP Lender, except as provided for in the DIP Financing Agreements;

(e)     the Debtors use the Pre-Petition Cash Collateral Account (as defined in the BofA DIP L/C Order) for any purposes other than as authorized in connection with the Pre-Petition Letters of Credit (subject to the deemed "roll-up" of the Pre-Petition Letters of Credit into Post-Petition Letters of Credit as provided under the BofA DIP L/C Order);

(f)     except as set forth in the BofA DIP L/C Order and this Order, the DIP Liens are made subject to or *pari passu* with any Lien or other security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases;

(g)     unless (a) the DIP Lender has provided its prior written consent or all DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 33 below, or other arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made), and (b) the Commitment has terminated, there is any order entered in the Chapter 11 Cases or in any Successor Cases that authorizes, or there is any action taken or inaction by any of the Debtors that results in, any of the following:

(i)     any modification, stay, vacation, or amendment to this Order or the Cash Management Order (which would have the effect of depriving the Debtors of access to their cash management system), or any change in the terms applicable to the DIP L/C Facility (as defined in the BofA DIP L/C Order) that is less favorable to the Debtor than the existing applicable terms, to which the DIP Lender has not consented;

(ii)     a priority claim or administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect of the DIP Obligations, except with respect to the Professional Fee Carve Out or the BofA Interests;

(iii)     any Lien on any DIP Collateral having a priority equal or superior to the Lien securing the DIP Obligations, except (i) with respect to the Professional Fee Carve Out, and (ii) with respect to the BofA Interests;

(iv)     the return of any of the Debtors' property pursuant to section 546(h) of the Bankruptcy Code; or

CHI 65672582v4

(v)     the payment of any Indebtedness (other than Indebtedness reflected in the Approved Budget and other Indebtedness approved by the DIP Lender) incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or transfer of property) that is secured by a Lien, in each case other than as set forth in this Order, the BofA DIP L/C Order or the Cash Management Order; or

(h)     unless (i) the DIP Lender has provided its prior written consent or all DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 33 below, or other arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made), and (ii) the Commitment has terminated, there is any exercise by BofA of any default remedy under the BofA DIP L/C Order, or any exercise by BofA of any default remedy under any agreement or document entered into under or in connection with the BofA DIP L/C Order, in each case, directly or indirectly, against any DIP Collateral in which the DIP Lender's interests in such DIP Collateral are senior to any interests therein held by BofA; provided that, for the avoidance of doubt, BofA shall be permitted to use the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account (as defined in the BofA DIP L/C Order), the Post-Petition Cash Collateral Account (as defined in the BofA DIP L/C Order), and the Cash Management/Indemnity Account (as defined in the BofA DIP L/C Order) in accordance with the terms of the BofA DIP L/C Order and any agreement or document entered into under or in connection with the BofA DIP L/C Order;

provided, however, that notwithstanding anything to the contrary in Paragraph 23(g)(ii) or (g)(iv) of this Order or in Section 7.15(c) or (e) of the DIP Credit Agreement, the entry of an order in the Chapter 11 Cases or in any Successor Cases that authorizes, or an action taken or inaction by any of the Debtors resulting in, the valid reclamation of goods pursuant to sections 546(c) or (h) of the Bankruptcy Code or applicable non-bankruptcy law, will not constitute a DIP Order Event of Default, a Default, or an Event of Default, as the case may be, if the Court determines that the claim to reclamation of goods is equal or superior to the priority claim of the DIP Lender with respect to such goods as of immediately prior to the entry of this Order.

24.     Unless and until the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender, in its sole and exclusive discretion, have been made) and the Commitment has been irrevocably terminated, or as otherwise ordered by the Court, the protections afforded to the DIP Lender

CHI 65672582v4

pursuant to this Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order (a) appointing a trustee or examiner in any one or more of the Chapter 11 Cases, (b) confirming one or more plan(s) of reorganization or liquidation pursuant to Chapter 11 of the Bankruptcy Code in the Debtors' Chapter 11 Cases (a "*Plan*"), or (c) converting the Chapter 11 Cases into Successor Cases, and the DIP Liens and the DIP Superpriority Claim shall continue in the Chapter 11 Cases and in any Successor Cases, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priorities as provided by this Order.

**C.**     **Rights and Remedies Upon DIP Order Event of Default**

25.     Upon the occurrence of a DIP Order Event of Default, and provided that such DIP Order Event of Default is still continuing, and unless and until the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender, in its sole and exclusive discretion, have been made) and the Commitment has been irrevocably terminated:

      (a)     the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral (other than the Cash Collateral on deposit in the Pre-Petition Cash Collateral Account, the Post-Petition Cash Collateral Account, and the Cash Management/Indemnity Account under the BofA DIP L/C Order (as each such term is defined therein) and Cash Management Order) to the DIP Lender as provided in the DIP Financing Agreements and this Order;

      (b)     the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements, this Order, and, to the extent applicable, the BofA DIP L/C Order;

      (c)     the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations, the BofA Interests, and the Professional Fee Carve Out;

      (d)     any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended (whether for expenses previously incurred or to be incurred after the DIP Order Event of Default); and

24

(e)    any automatic stay otherwise applicable to the DIP Lender is hereby modified so that the DIP Lender may accelerate the DIP Obligations, without further order of the Court.

26.    Prior to exercising any remedy under the DIP Financing Agreements following the occurrence of a DIP Order Event of Default, the DIP Lender shall provide not less than five (5) days' written notice of such default occurrence to: (i) the Debtors and their counsel, (ii) counsel for any Committee(s), (iii) counsel to BofA, (iv) counsel to certain taxing authorities, Beth Weller, Esq., Linebarger Goggan Blair & Sampson, LLP, 2777 N. Stemmons Freeway, Suite 1000, Dallas, TX 75207, Fax: (469) 221-5003, BethW@lgbs.com and (v) the Office of the United States Trustee.  Following the giving of written notice by the DIP Lender of the occurrence of a DIP Order Event of Default, the Debtors and any Committee(s) appointed in the Chapter 11 Cases, if any, shall be entitled to an emergency hearing before this Court (for the avoidance of doubt, such entitlement to an emergency hearing does not and shall not relieve the Debtors, creditors, interest holders, or parties-in-interest from the restrictions imposed by the Debtors' Stipulations or otherwise by this Order). If either (a) the Debtors or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and, therefore, the right of the DIP Lender to exercise its remedies, or (b) the Debtors or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and the Court, after notice and hearing, declines to stay the enforcement thereof, the automatic stay as to the DIP Lender shall automatically terminate at the end of the five (5) day notice period provided for in this Paragraph 26 or the order of the Court declining to stay such enforcement.

27.    Subject to the provisions of Paragraphs 25-26 above, upon the occurrence of a DIP Order Event of Default, the DIP Lender is authorized to exercise its remedies under this Order, the DIP Financing Agreements, and applicable law; except that, with respect to any of the Debtors' leasehold locations, the DIP Lender's rights shall be limited to such rights (i) as may be

25

ordered by the Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Lender; or (iii) which the DIP Lender has under applicable non-bankruptcy law.  All proceeds realized from any of the foregoing shall be turned over to the DIP Lender for application to the Professional Fee Carve Out (if not previously funded) and the DIP Obligations under, and in accordance with the provisions of, the DIP Financing Agreements, this Order, and, to the extent applicable, BofA DIP L/C Order.

28.     Subject to the provisions of Paragraphs 25-26 above, upon the occurrence of a DIP Order Event of Default, the DIP Lender shall be authorized to deliver a copy of this Order to any party in possession of DIP Collateral or proceeds thereof, in which event (a) such party shall, and shall be entitled to, rely upon the DIP Lender's representation that such delivery is permitted hereby and (b) this Order shall constitute the Court's order to such party to deliver such Collateral or proceeds to the DIP Lender.

29.     Nothing included herein shall prejudice, impair, or otherwise affect the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtors, nor the DIP Lender's rights, as provided in the DIP Financing Agreements, to suspend or terminate the making of loans and granting financial accommodations under the DIP Financing Agreements.

**D.     No Waiver of Remedies**

30.     The delay in or the failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies shall not constitute a waiver of any of the DIP Lender's rights and remedies. Notwithstanding anything herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender to (i) request conversion of the Chapter 11 Cases

26

to cases under Chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Lender may have, including, but not limited to, credit bidding the DIP Obligations in connection with any sale of the Debtors' assets.

## VII.    CERTAIN LIMITING PROVISIONS

### A.    Section 506(c) Claims

31.    Nothing contained in this Order shall be deemed a consent by the DIP Lender to (i) any charge, Lien, assessment, or claim against the DIP Collateral or the DIP Liens, under section 506(c) of the Bankruptcy Code (to the extent applicable) or otherwise, or (ii) that the DIP Lender has any obligation to fund any amount or make any Loan following a DIP Order Event of Default or the Commitment Termination Date.

32.    As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, the Debtors (and any successor thereto or any representative thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Cases) are deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code, to the extent applicable.

### B.    Proceeds of Subsequent Financing

33.    Unless otherwise ordered by the Court, without limiting the provisions and protections otherwise contained in this Order, if at any time prior to the irrevocable repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans under the DIP Facility (including subsequent to the confirmation of any Plan with respect to the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections

27

364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender and applied in reduction of the DIP Obligations; provided that, anything to the contrary herein notwithstanding, the Debtors shall be permitted to provide cash collateral and liens to BofA in connection with (i) postpetition letters of credit (including the deemed "roll-up" of the Pre-Petition Letters of Credit), and (ii) prepetition and postpetition cash management and treasury management services and prepetition indemnification rights and claims, in each case consistent with the terms of the BofA DIP L/C Order and the Cash Management Order.

## VIII.    OTHER RIGHTS AND OBLIGATIONS

### A.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Order

34.    Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Order, in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code.

### B.    DIP Lender's Expenses

35.    All reasonable out-of-pocket costs and expenses of the DIP Lender in connection with the DIP Financing Agreements and this Order, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses will be paid by the Debtors; provided, however that, notwithstanding anything to the contrary contained in the DIP Financing Agreements, the fees and expenses incurred by DIP Lender in

28

connection with the negotiation and preparation of the DIP Financing Agreement and this Order shall be borne by the DIP Lender.  Payment of such fees shall not be subject to allowance by the Court; provided, however, the Debtors may seek a determination by the Court whether such fees and expenses are reasonable.  The Debtors shall provide to the Office of the United States Trustee and any Committee(s) a copy of any invoices for professional fees and expenses provided to the Debtors during the pendency of the Chapter 11 Cases. The Debtors, the U.S. Trustee, and any Committee(s) shall have ten (10) days after receipt of a copy of each invoice to assert a specific written objection as to the reasonableness of the amounts contained in the subject invoice. In the absence of a written objection or dispute as to an invoice, the Debtors shall pay and/or reimburse the DIP Lender for all such fees in expenses within ten (10) days of receipt of the invoice in question.  In the event any amount stated in any invoice is disputed, the Debtors shall be required to pay and/or reimburse the DIP Lender for any undisputed fees in expenses not later than ten (10) days after delivery of the aforementioned invoice.

C.    **Binding Effect**

36.    The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), and any Committee(s), whether in the Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Cases or any Successor Cases.  The DIP Lender may assign all of its rights and obligations under the DIP Financing Agreements and this Order with the prior written consent of the Debtors and the Creditors' Committee, without further order of the Court, and any permitted assignee of the DIP Lender shall succeed to all of the protections afforded under this Order.

37.    All persons and entities shall be required to accept this Order as sole and

CHI 65672582v4

sufficient evidence of the validity and enforceability of the DIP Liens and all of the DIP Lenders' related rights and remedies, and may rely on this Order in recognizing, facilitating, and or complying with the enforcement of the DIP Liens and all of the DIP Lenders' related rights and remedies in accordance with the terms of this Order and the DIP Financing Agreement.

**D.      No Third Party Rights**

38.      Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

**E.      No Marshaling**

39.      The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral; provided, however, that the DIP Lender shall pursue payment of the DIP Obligations from DIP Collateral other than the Specified Bankruptcy Recoveries before pursuing payment of the DIP Obligations from the Specified Bankruptcy Recoveries.

**F.      Amendments**

40.      The Debtors and the DIP Lender may amend, modify, supplement, or waive any provision of the DIP Financing Agreements to make non-material changes to such agreements (as determined by the Debtors and the DIP Lender) without further approval of the Court or any Committee(s); provided that, prior to effectuating any non-material change, amendment, modification, supplement or waiver of any provision of the DIP Financing Agreements, the Debtors and the DIP Lender shall consult with any Committee(s) and with BofA with respect to same. For the avoidance of doubt, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the Commitment, or (iii) changes the maturity date of the DIP Facility shall be

30

considered a material change. Except as set forth above, all waivers, modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors and the DIP Lender, and approved by the Court.

**G.    Survival of Order**

41.    The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

(b)    converting the Chapter 11 Cases to Cases under chapter 7 of the Bankruptcy Code,

(c)    to the extent authorized by applicable law, dismissing the Chapter 11 Cases,

(d)    withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)    providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

42.    The terms and provisions of this Order including the DIP Protections granted pursuant to this Order and the DIP Financing Agreements shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Order until all of the DIP Obligations have been irrevocably paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

**H.    Inconsistency**

43.    In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Order, the provisions of this Order shall govern and control. For the avoidance of doubt, nothing in Section 7.16 of the DIP Credit Agreement shall relieve the Debtors of any applicable requirements, under the Bankruptcy Code, the Bankruptcy Rules,

CHI 65672582v4

the "Protocol for Engagement of Jay Alix & Associates and Affiliates," or otherwise, in connection with any appointment of any successor to the Debtors' current Chief Executive Officer.

**I.      Enforceability; Waiver of Any Applicable Stay**

44.     This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Order.

**J.      Objections Overruled**

45.     All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

**K.      Headings**

46.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**L.      Retention of Jurisdiction**

47.     The Court has and will retain jurisdiction to enforce this Order according to its terms.

**M.      Certain Defined Terms in the BofA DIP L/C Order**

48.     Upon entry of this Order: (a) the term "DIP Term Lender" in the BofA DIP L/C Order shall be, automatically and without further action, amended and restated to mean "Mador Lending, LLC (in its capacity as lender under the DIP Term Facility)," and (b) the term "DIP Term Facility" in the BofA DIP L/C Order shall be, automatically and without further action, amended and restated to mean the "DIP Facility," as that term is defined in this Order.

CHI 65672582v4

Dated: March 18, 2015

_____
CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE