**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE WET SEAL, INC., et al., | ) Case No. 15-10081 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Hearing Date: April 1, 2015 at 10:00 a.m.** |
| | ) **Objection Deadline: March 27, 2015** |
| | ) |
| | ) **Related Docket Nos. 426, 440 and 451** |

**ORACLE'S LIMITED OBJECTION TO AND RESERVATION OF RIGHTS
REGARDING DEBTORS' (1) MOTION FOR ENTRY OF AN ORDER AUTHORIZING
(A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND
CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (B)
THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER
THE ASSET PURCHASE AGREEMENT; AND (C) THE DEBTORS TO ASSUME AND
ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES ; AND (2)
NOTICE OF (I) POSSIBLE TREATMENT OF CONTRACTS AND LEASES, (II)
FIXING OF CURE AMOUNTS, AND (III) DEADLINE TO OBJECT THERETO**

Oracle America, Inc., successor in interest to both Oracle USA, Inc., and Taleo
(collectively, "Oracle"), a creditor and contract counter-party in the above-captioned jointly
administered Chapter 11 case and a partner of Ignitiv, Inc. and Infolob, submits its Limited
Objection to and Reservation of Rights (the "Rights Reservation") regarding the Debtors'
Motion for Entry of an Order Authorizing (A) the Sale of Substantially all of the Debtors' Assets
Free and Clear of all Claims, Liens, Rights, Interests, and Encumbrances; (B) the Debtors to
Enter Into and Perform Their Obligations Under the Asset Purchase Agreement; and (C) the
Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases ("Sale
Motion") and the related Notice of (I) Possible Treatment of Contracts and Leases, (II) Fixing of
Cure Amounts, and (III) Deadline to Object Thereto ("Cure Notice"), filed by The Wet Seal,
Inc., et al. ("Debtors").  In support of the Rights Reservation, Oracle states as follows:

## I.      INTRODUCTION

1.      By the Sale Motion and Cure Notice, the Debtors seek Bankruptcy Court authority to, among other things, assume and assign certain executory contracts between the Debtors and Oracle.

2.      The targeted Oracle agreements are, or pertain to, licenses of intellectual property and Oracle objects to the proposed assumption and assignment for four reasons.

3.      First, the Sale Motion does not provide Oracle with sufficient information to determine whether the purchaser/ assignee is capable of performing under the terms of the contracts the Debtors seek to assume and assign, or to ascertain whether the assignee is an Oracle competitor.

4.      Second, the Cure Notice does not adequately describe the contracts the Debtors seek to assume and assign, making it impossible for Oracle either to accurately assess whether the agreements at issue are assignable or to establish the appropriate cure amount.

5.      Third, based on the limited information provided by the Cure Notice, the cure amount identified in the Cure Notice appears to be inaccurate.

6.      Finally, through the Sale Motion the Debtors are proposing a "blanket" early judicial determination that any anti-assignment provision in any "Assumed Contract" is unenforceable, void and of no force and effect.  Oracle objects to such a sweeping determination being made about its agreements with the Debtors.

7.      Accordingly, Oracle requests that the Court deny the Sale Motion to the extent it seeks authority for the Debtors to assume and assign any Oracle agreements.

## II.     FACTUAL BACKGROUND

8.      The above captioned case was filed on January 15, 2015 and an order directing joint administration was entered on January 20, 2015.

9.     The Debtors filed the Sale Motion on March 16, 2015.  On March 18, 2015, the Debtors filed and served the Cure Notice on contract counter-parties whose contracts <u>may</u> be assumed and assigned pursuant to the Sale Motion.

10.     Exhibit "A" to the Cure Notice lists twelve agreements between the Debtors and Oracle, or between the Debtors and an entity which is either an Oracle Partner or regarding which Oracle is the successor in interest, as follows:

| Contract Counterparty | Contract Name | Reason for Contract | Cure Amount |
|---|---|---|---|
| Ignitiv, Inc. | WS POS enhancements and Issue Fixes | Oracle POS Enhancements | $0 |
| Infolob | Agreement & Modifications to Agreement | Licenses/Oracle | $0 |
| Oracle | Services Agreement | Service Contract #5839936, Oracle Taleo Service renewal | $26,400 |
| Oracle | Services Agreement | Service Contract, #2773833, Oracle Retail back office renewal | $ 0 |
| Oracle | Services Agreement | Service Contract #1738369, Database, Financial Internet renewal | $0 |
| Oracle | Services Agreement | Service Contract #3189758, Oracle Database renewal | $ 0 |
| Oracle | Services Agreement | Taleo Performance Reviews, Goals Mgmt renewal | $ 0 |
| Oracle | Services Agreement | Service Contract #5173481, Weblogic update & support | $ 0 |
| Oracle | Services Agreement | XBR Software Maint & ADC | $ 0 |
| Oracle | Services Agreement | Renewal, Taleo Recruiting and Onboarding | $ 0 |
| Oracle License and Services Agreement | Ordering Document | Software License | $ 0 |
| Taleo/Oracle | Oracle Subscription Agreement | Software/Online apps | $ 0 |

Each of the agreements listed above is referred to herein as an "Oracle Agreement" and are referred to collectively as the "Oracle Agreements."

**III.    ARGUMENT**

**A.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed and Assigned.**

11.    Although the Debtors have made an effort to accurately describe the Oracle Agreements, a few of the contract descriptions are inadequate.

12.    For example, the Debtors are parties to active support contracts and license agreements with Oracle that do not appear to be identified in the Cure Notice.

13.    In addition, Oracle and the Debtors may be parties to expired support contracts associated with the license agreements the Debtors seek to assume and assign.

14.    Under appropriate circumstances, Oracle may consent to a partial assignment of only the active support contracts and underlying license agreement, with a corresponding termination of the unsupported licenses.

15.    However, it is impermissible for the Debtors to attempt to segregate the underlying Oracle license agreement from the corresponding support and any payment agreements for purposes of assumption and assignment, if that is the Debtors' intention. *See In re Interstate Bakeries Corporation*, 751 F.3d 955, 963 (8th Cir. 2014); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008).

16.    Oracle requests that with respect to each contract the Debtors seek to assume and assign, the Debtors provide (a) a specific contract name; (b) a contract identification number, where one is not already provided; (c) whether the targeted contracts pertain to support or support renewals; and (d) the governing license agreement for each contract.

17.     This information will enable Oracle to evaluate whether the Oracle Agreements are assignable, whether they are in default and, if so, what the appropriate cure amount is, and whether Oracle may accept performance from an entity other than the Debtors.

18.     Oracle reserves its right to be heard on this issue after the contracts the Debtors seek to assume and assign are identified with greater specificity.

**B.     The Debtors Have Not Provided The Correct Cure Amount.**

19.     Before assuming and assigning any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts.   11 U.S.C. § 365(b)(1).

20.     As discussed above, the Debtors have failed to describe the Oracle Agreements they seek to assume and assign with sufficient particularity for Oracle to identify the universe of agreements at issue, and thereby confirm the corresponding cure amount.

21.     As of the date of this Rights Reservation, Oracle's records reflect that it is owed at least $177,295.00.   Attached hereto as <u>Exhibit A</u> are true and correct copies of outstanding Oracle invoices that the Debtors must, at a minimum, satisfy in order to cure the default under the subject contracts.

22.     Oracle reserves its right to be heard further on the cure amount after the contracts the Debtors seek to assume and assign are identified with enough specificity to allow Oracle to determine the correct cure amount.

**C.     The Debtors May Not Assume And Assign The Oracle Agreements Absent Oracle's Consent Because They Pertain To One Or More Licenses Of Intellectual Property.**

23.     Section 365(c)(1) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts

assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

24.     Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor.  *See In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999) (patent law renders non-exclusive patent licenses personal and non-assignable under Bankruptcy Code § 365(c)(1)); *see also In re Trump Entm't Resorts, Inc.*, 2015 Bankr. LEXIS 523 (Bankr. D. Del. Feb. 20, 2015) ("Non-exclusive patent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable.")

25.     The Oracle Agreements referenced by the Cure Notice are, or pertain to, non-exclusive licenses of patented software.

26.     Therefore, the Debtors may not assume and assign the Oracle Agreements without Oracle's consent.

27.     For the reasons discussed below, Oracle does not consent to the Debtors' proposed assumption and assignment.

**D.     The Debtors Have Not Provided Adequate Assurance of Future Performance By the Assignee.**

28.     Before assuming and assigning any executory contract, the Debtors must provide adequate assurance of future performance.  11 U.S.C. § 365(b)(1).

29.     With the information provided in the Sale Motion, Oracle cannot evaluate whether the purchaser, "Mador Lending, LLC (together with permitted successors, designees and assignees)" ("Mador"), would be an  acceptable customer, or whether the prerequisites of 11 U.S.C. § 365(b) will be met.

30.     To satisfy 11 U.S.C. § 365(b), Oracle requests that the Debtors provide the following information about Mador: (a) financial bona fides; (b) confirmation that the assignee is not an Oracle competitor; and (c) confirmation that the ultimate assignee will (i) execute an

Oracle Assignment Agreement and related documentation which identifies with specificity <u>all</u> of the Oracle executory contracts to be assigned, and, if appropriate, (ii) enter into an Oracle Master Licensing Agreement.

31.     Absent these assurances, Oracle cannot determine the assignee's creditworthiness, its suitability as an Oracle customer, or its ability to adequately perform the terms of the Oracle Agreements.

32.     Until the information described above is provided, the Debtors have not complied with the requirements of section 365(b)(1)(C) and the Sale Motion must be denied to the extent it seeks to assume and assign the Oracle Agreements.

**E.      The Debtors' Attempt To Pre-Determine The Unenforceability Of Any Anti-Assignment Provision Provided For In The Oracle Agreements Is Premature.**

33.     Finally, the Sale Motion appears to propose a "blanket" early judicial determination that any anti-assignment provision in any "Assumed Contract" is unenforceable, void and of no force and effect.

34.     The request is framed by the Debtors as follows:

"Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Assumed Contracts in accordance with the APA but will be effective and binding upon Buyer with respect to any purported assignment for the remaining term of any Assumed Contract." (*See*, ¶20(d) of the Sale Motion)

35.     Oracle objects to this proposed finding as to the Oracle Agreements.

36.     As discussed above, Oracle's executory contracts involve the licensing of non-exclusive, patented software, which are non-assignable in the absence of Oracle's consent.

37.      If the Debtors contemplate an assignment via the Sale Motion of the Oracle Agreements, the Debtors must be precluded, as to the Oracle Agreements, from obtaining this attempted unilateral nullification of the Oracle Agreements' contract language.

## IV.    CONCLUSION

38.      For the reasons set forth above, Oracle respectfully requests that the Court deny the Sale Motion to the extent it seeks to assume and assign any of the Oracle Agreements. Oracle reserves its right to be heard on all issues set forth herein.

Dated: March 27, 2015                          Respectfully submitted,
Wilmington, Delaware                          **MARGOLIS EDELSTEIN**

/s/ James E. Huggett
James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware  19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**MAGNOZZI & KYE, LLP**
23 Green Street, Suite 302
Huntington, New York 11743
Telephone: (631) 923-2858

Shawn M. Christianson, Esq.
**BUCHALTER NEMER P.C.**
55 Second Street, Suite 1700
San Francisco, California 94105
Telephone: (415) 227-0900

Deborah Miller, Esq.
Michael Czulada, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California  94065
Telephone: (650) 506-5200

*Attorneys for Oracle America, Inc.*

8