## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE WET SEAL, INC., *et al.*,[1] | ) Case No. 15-10081 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) **Re: Docket Nos. 409, 410, 422, 426, 428, 434,** |
| | ) **440, 451, 452 & 460** |

## ORDER AUTHORIZING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND ENCUMBRANCES; (B) THE DEBTORS TO ENTER INTO AND PERFORM THEIR OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT; AND (C) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion, dated March 16, 2015 [Docket No. 426] (the "***Motion***"), of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for the entry of an order, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 1005, 2002, 6004, 6006, 9007, 9014 and 9019 (a) authorizing and approving the entry into, performance under and terms and conditions of the Asset Purchase Agreement by and between the Debtors and Mador Lending, LLC (the "***Buyer***"), dated March 12, 2015 (substantially in the form attached hereto as **Exhibit 1**, the "***APA***")[2] whereby the Debtors have agreed to sell, and Buyer has agreed to acquire, substantially all of the Debtors' operating assets (collectively, and as specifically set forth and defined in the APA, the "***Acquired Assets***")[3] other than the Excluded

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: The Wet Seal, Inc. (5940); The Wet Seal Retail, Inc. (6265), Wet Seal Catalog, Inc. (7604), and Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

[2] Capitalized terms used but not defined herein shall have the meaning set forth in the APA.

[3] For the avoidance of doubt, the Acquired Assets exclude the BofA Accounts, except to the extent that the Debtors have or may have a residual claim to the cash in the BofA Accounts pursuant to the terms of the BofA DIP Order (*i.e.*, after the satisfaction of BofA's and the Pre-Petition Secured Parties' (as defined in the BofA DIP Order) liens, claims and interests in the BofA Accounts, subject to and to the extent set forth in the BofA DIP Order.

Assets, and the Debtors have agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities (collectively, and as specifically set forth and defined in the APA, the "***Assumed Liabilities***") (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the APA, the "***Transactions***"); (b) authorizing and approving the sale of the Acquired Assets (the "***Sale***"), free and clear, to the maximum extent permitted by law, of any and all Liens (other than Permitted Liens and the BofA Liens on the BofA Accounts), debts and claims (as that term is defined in section 101(5) of the Bankruptcy Code), Liabilities (including all Liabilities of the Debtors for Employment Related Laws, Complaints, and Obligations,[4] except to the extent provided in the APA), obligations, costs, expenses, causes of action, demands, guaranties, options, rights, contractual commitments, settlements, injunctions, restrictions, interests, encumbrances, reclamation rights, and similar matters of any kind whatsoever, whether known or unknown, fixed or contingent, or arising prior to or subsequent to the commencement of these chapter 11 cases (the "***Cases***"), and whether imposed by agreement, understanding, law, equity or otherwise (each of the foregoing collectively or individually, and including to the extent not already specified above, Successor or

---

[4] "***Employment Related Laws, Complaints, and Obligations***" shall mean all federal, state, or local employment laws and regulations, including but not limited to the Immigration Reform and Control Act; Title VII of the Civil Rights Act of 1964, as amended; The Fair Labor Standards Act; The Americans with Disabilities Act, as amended; The Family Medical and Leave Act, as amended; The Age Discrimination and Employment Act; The National Labor Relations Act; the California Fair Employment and Housing Act; ERISA; the WARN Act; OSHA administered whistleblower/anti-retaliation statutes that may be applicable, such as those pertaining to environmental, transportation laws, and consumer investment protection laws (Sarbanes Oxley and Dodd Frank); State and local anti-discrimination, anti-retaliation and whistleblower laws; Wage Orders issued by the California Industrial Welfare Commission; common law tort and contract claims; any other laws or regulations pertaining to the employment relationship between the Debtors and their current or former employees; all duties, obligations and requirements imposed by law, contract, or arising out of the Debtors' practices concerning: hiring, evaluations, promotions, terminations, classification of employees as exempt or non-exempt, the classification of employees as independent contractors, rest breaks, vacations, time off, pay practices, and any other employment practices; and any Claims, charges, complaints, administrative complaints, demand or lawsuits alleging violations of any Employment Related Laws and Obligations, judicially approved class action settlement agreements, consent decrees, judgments, other decrees, orders, injunctions, settlements, settlement agreements or conciliation agreements to which the Debtors are bound relating to labor and employment matters.

2

Transferee Liability, as defined in Paragraph 18 below, but excluding the Assumed Liabilities, Permitted Liens, and the BofA Liens solely to the extent they are on the BofA Accounts, the "*Adverse Interests*"), with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect thereto; (c) authorizing the assumption and assignment to Buyer of certain executory contracts and unexpired leases of the Debtors (collectively, the "*Assumed Contracts*") in accordance with the APA and this Order; (d) establishing assumption and rejection procedures for certain executory contracts and unexpired leases; and (e) granting other relief; and the Court having entered an order approving the bidding procedures and granting certain related relief on February 18, 2015 [Docket No. 329] (the "*Bidding Procedures Order*"); and an auction (the "*Auction*") having been commenced on March 10, 2015 and concluded on March 12, 2015 in accordance with the Bidding Procedures Order; and Buyer having been deemed the Successful Bidder by the Debtor, in consultation with the Committee, pursuant to the Bidding Procedures Order; and the Court having conducted a hearing on the Motion on April 1, 2015 (the "*Sale Hearing*") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the *Declaration of Thomas R. Hillebrandt in Support of First Day Motions* [Docket No. 19], the *Declaration of Derek Pitts*, etc. [Docket No. 22], the *Declaration of Thomas R. Hillebrandt*, etc. [Docket No. 409], the *Declaration of Derek Pitts*, etc. [Docket No. 410], the *Transcript of March 10 and 12, 2015 Auction* [Docket No. 422], and the *Declaration of Paul Halpern*, etc. concurrently filed herewith, the APA, the Letter

3

Agreement,[5] the Bidding Procedures Order, the record of the hearing before the Court on April 1, 2015; and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and it appearing that due notice of the Motion, the APA, the Letter Agreement, the Bidding Procedures Order and the Auction has been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon,

**THE COURT HEREBY FINDS AS FOLLOWS:**

### Jurisdiction, Venue and Final Order

A.     This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rules 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

---

[5] To the extent that the Letter Agreement contains any agreements relating to a potential plan of reorganization to be proposed in these Cases, these provisions are agreements between the Debtors, the Official Committee of Unsecured
(Continued...)

### Notice of the Transactions, APA, the Letter Agreement,
### Sale Hearing, Auction and the Cure Amounts

C.     Actual written notice of the Motion and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested entities including to the following parties: (i) the office of the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to B. Riley; (iv) counsel for the Buyer; (v) counsel for the Bank of America, N.A. (*"BofA"*); (vi) counsel to the Pre-Petition Secured Parties (as defined in the BofA DIP Order); (vii) any party that has asserted or that the Debtors believe may assert a lien in the Debtors' assets; (viii) all parties who have filed a notice of appearance and request for service of papers in the Cases pursuant to Bankruptcy Rule 2002; (ix) each of the Debtors' current landlords and each counterparty to the Debtors' Contracts (as defined in the APA); (x) the United States Internal Revenue Service; and (xi) the United States Securities and Exchange Commission (collectively, the *"Notice Parties"*).

D.     The foregoing notice was good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion is required. The disclosures made by the Debtors concerning the APA, the Letter Agreement, the Auction, the Transactions and the Sale Hearing were good, complete and adequate.

E.     The Debtors have served cure notices (the *"Cure Notice"*) upon all executory contract and lease counterparties notifying such parties: (a) that the Debtors may seek to assume and assign certain contracts and leases on the Closing Date of the Sale or thereafter until the Designation Deadline as provided in the APA and (b) of the proposed Cure Amounts. The service of such notices was good, sufficient and appropriate under the circumstances and no

---

Creditors and the Buyer and this Order shall not be deemed to approve such provisions of the Letter Agreement.

further notice need be given in respect of establishing a cure amount for such contracts and leases. Each of the contract and lease counterparties has had an opportunity to object to the Cure Amounts set forth in the Cure Notices.

## **Highest and Best Offer**

F.       As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order. The Auction contemplated by the Bid Procedures was commenced on March 10, 2015 and closed on March 12, 2015. At the conclusion of the Auction, Buyer was selected by the Debtors, in consultation with the Committee, as the Successful Bidder. The process set forth in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase all of the Acquired Assets and assume all of the Assumed Liabilities.

G.       The Acquired Assets were adequately marketed by the Debtors, and the consideration provided by Buyer under the APA and the Letter Agreement constitutes or provides the highest or otherwise best offer and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the APA and the Letter Agreement, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Buyer is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order. The Debtors' determination that the APA constitutes the highest and best offer for the Acquired Assets is a valid and sound exercise of the Debtors' business judgment.

6

H.    Approval of the Motion, the APA, the Letter Agreement and the consummation of the Transactions contemplated thereby is in the best interests of the Debtors, their respective creditors, estates and other parties in interest and there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly.    The Debtors have demonstrated good, sufficient and sound business reasons and justifications for entering into the Transactions and the performance of their obligations under the APA and the Letter Agreement.

I.    Entry of an order approving the APA, the Letter Agreement and all the provisions thereof is a necessary condition precedent to Buyer's consummation of the Transactions.

## Good Faith of Buyer

J.    The APA, the Letter Agreement and the Transactions contemplated thereunder were proposed, negotiated and entered into by and between the Debtors, on the one hand, and Buyer, on the other hand, without collusion, in good faith and at arm's length.

K.    Subject to Paragraph 38 of this Order, in accordance with section 365 of the Bankruptcy Code, including sections 365(b)(1) and 365(f)(2) of Bankruptcy Code, the Debtors have shown that Buyer has the wherewithal, financial and otherwise, to perform all of its obligations under the APA and the Letter Agreement.

L.    Neither Buyer nor any of its respective affiliates, present members, officers, directors, partners, shareholders or any of their respective heirs, successors and assigns (each such entity individually and taken together, the "**Buyer Group**") is an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Buyer is entering into the Transactions in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding. There has been no showing that the Debtors or the Buyer Group has engaged in any action or

7

inaction that would cause or permit the APA, the Letter Agreement or the Transactions to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

## No Fraudulent Transfer

M.      The consideration provided by Buyer pursuant to the APA for its purchase of all Acquired Assets and the assumption of all Assumed Liabilities and the performance of the covenants contained in the APA constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

N.      There has been no showing that the Debtors or Buyer (i) has entered into the APA and the Letter Agreement or proposes to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) is entering into the APA and the Letter Agreement or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

O.      By virtue of the Transactions contemplated by the APA and the Letter Agreement, (i) the Buyer Group is not a continuation of the Debtors or their respective estates, there is no continuity between Buyer and the Debtors, there is not substantial continuity between Buyer and the Debtors, there is no common identity between the Debtors and Buyer, there is no continuity of enterprise between the Debtors and Buyer, Buyer is not a mere continuation of the Debtors or their estates, and Buyer does not constitute a successor to the Debtors or their estates, (ii) Buyer is not holding itself out to the public as a continuation of the Debtors or their

8

respective estates and (iii) the Transactions do not amount to a consolidation, merger or *de facto* merger of Buyer and the Debtors and/or the Debtors' estates.

### Validity of Transfer

P.      Each Debtor's Board of Directors and the Buyer has authorized the execution and delivery of the APA, the Letter Agreement, the sale of all Acquired Assets to Buyer and the assumption of all Assumed Liabilities by Buyer.  The Debtors and the Buyer (i) have full corporate power and authority to execute and deliver the APA, the Letter Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the APA, the Letter Agreement and to consummate the Transactions, and no further consents or approvals are required for the Debtors or the Buyer to consummate the Transactions contemplated by the APA and the Letter Agreement, except as otherwise set forth in the APA or the Letter Agreement.

Q.      Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Liabilities of the Debtors or any Adverse Interests against any of the Debtors or their property, including, without limitation, the liabilities of the Debtors specifically excluded under the APA (the "*Excluded Liabilities*"), and the Buyer and its successors and assigns are released from any and all claims, causes of action, obligations, liabilities, demands, damages, losses, costs and expenses of any kind, character or nature whatsoever, known or unknown, fixed or contingent, relating to the Acquired Assets, except for liabilities and obligations arising expressly under, or expressly assumed by Buyer under, the APA and the Letter Agreement and except for the Debtors' rights, claims and interests with respect to the DIP Financing until the DIP Financing is satisfied at Closing.

9

R.     The consummation of the Sale and Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 363(n), 365(b)(1) and 365(f)(2) of the Bankruptcy Code, and with respect to Assumed Contracts, all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the effective date of assignment.

S.     The Acquired Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  The sale of the Acquired Assets to the Buyer will be, as of the Closing Date or such later date as such Acquired Assets are transferred under the APA, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Buyer with all right, title and interest of the Debtors to the Acquired Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests.

### Section 363(f) Is Satisfied

T.     The Debtors may sell and assign the Acquired Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests, and the Transactions will not subject the Buyer or any of the Buyer's assets to any liability for any Adverse Interests whatsoever (including, without limitation, under any theory of equitable law, antitrust, or successor or transferee liability), because, with respect to each creditor asserting an Adverse Interest, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.   Those holders of Adverse Interests who did not object or who withdrew their objections to the Sale, the Transactions or the Cure Notice are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Adverse Interests are adequately protected — thus satisfying section 363(e) of the Bankruptcy Code — by having their Adverse Interests, if any, attach to the proceeds of the Sale, in the same order of priority and with

10

the same validity, force and effect that such Adverse Interest holder had before the Sale, subject to any rights, claims and defenses of the Debtors or their estates, as applicable, or as otherwise provided herein.

U.    Buyer would not have entered into the APA and the Letter Agreement and would not consummate the sale of all Acquired Assets, thus adversely affecting the Debtors, their estates, creditors, employees and other parties in interest, if the sale of the Acquired Assets was not free and clear, to the maximum extent permitted by law, of all Adverse Interests or if the Buyer Group would be liable for any Adverse Interests, including and as applicable, any Excluded Liabilities.

V.    The sale of the Acquired Assets to the Buyer will be, as of the Closing Date and such later date as such Acquired Assets are transferred under the APA, a legal, valid and effective transfer of such assets, and each such transfer and assignment vests or will vest the Buyer with all right, title and interest of the Debtors to the Acquired Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests. A sale of the Acquired Assets other than one free and clear, to the maximum extent permitted by law, of all Adverse Interests would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the APA is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

## Assumption and Assignment of the Assumed Contracts

W.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order and the APA are integral to the APA, are in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors.

11

CHI 65720662v9

X.      Subject to Paragraph 38 of this Order, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts. Subject to Paragraph 38 of this Order, the Debtors and/or Buyer, as applicable under the APA, have (i) cured and/or provided adequate assurance of cure of any default existing prior to the date of this Sale Order under all of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code; and (ii) provided compensation or adequate assurance of compensation to any counterparty for actual pecuniary loss to such party resulting from a default existing prior to the date of this Sale Order under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Subject to Paragraph 38 of this Order, each of the Assumed Contracts is free and clear, to the maximum extent permitted by law, of all Adverse Interests against Buyer.

Y.      Subject to Paragraph 38 of this Order, Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. Subject to Paragraph 38 of this Order, pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

Z.      No default exists in the Debtors' performance under the Assumed Contracts as of the date of this Sale Order other than the failure to pay cure amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

12

## Compelling Circumstances for an Immediate Sale

AA.    Time is of the essence.  To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the APA.  Accordingly, there is cause to waive the stay contemplated by Bankruptcy Rule 6004.

BB.    The Transactions are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein.

## NOW THEREFORE, ITS IS HEREBY ORDERED THAT:

### General Provisions

1.    The Motion is granted and approved, subject to the terms and conditions set forth herein.  The Sale and the Transactions contemplated by the APA are approved.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including all non-Debtor parties to the Contracts and Leases.

3.    Findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures hearing held on February 18, 2015, are incorporated herein by reference.

4.    Where appropriate herein, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### Approval of the APA

5.    Subject to Paragraph 38 of this Order, the APA, including the Letter Agreement and all of the terms and conditions thereof, and all of the Transactions contemplated therein are

13

approved. The failure specifically to include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA, including the Letter Agreement, be authorized and approved in its entirety, with such amendments thereto as may be made by the parties in accordance with this Order. Notwithstanding anything to the contrary in this Order, nothing is this Order authorizes or approves of any provision of any chapter 11 plan in these Cases. All parties' rights with respect to confirmation of any chapter 11 plan in these Cases are fully reserved.

6.      The Debtors are authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement and fully close the Transactions, including the sale to Buyer of all Acquired Assets, in accordance with the terms and conditions set forth in the APA and this Order, and (b) to assume and assign any and all Assumed Contract(s) as and when provided in the APA and subject to Paragraph 38 of this Order.

7.      All persons and entities are prohibited and enjoined from taking any action that would adversely affect or interfere with, or which would be inconsistent with, the ability of the Debtors to transfer the Acquired Assets to Buyer in accordance with the APA and this Order.

8.      At the Closing, the Debtors will be authorized to fully perform under, consummate, and implement the terms of the APA and the Letter Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, the Letter Agreement, this Order, and the Transactions.

9.      Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to

14

CHI 65720662v9

consummate the Transactions, including all agreements entered into in connection therewith, and this Order.

10.     To the greatest extent available under applicable law, Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Contracts and Leases, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are transferred to Buyer as of the Closing Date.

11.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to Buyer on account of the filing or pendency of the Cases.

## Sale and Transfer Free and Clear of Adverse Interests

12.     Upon Closing, at the Closing (or thereafter as of the Assumption Approval with respect to any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures[6] described herein), all of the Debtors' right, title and interest in and to, and possession of, the Acquired Assets shall be immediately vested in Buyer pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code free and clear, to the maximum extent permitted by law, of any and all Adverse Interests, with all such Adverse Interests to attach to the net proceeds of the Sale, in the order of their priority, with the same validity, force and effect that they now have against the Acquired Assets, subject with respect to such net proceeds to any rights, claims and defenses the Debtors or any parties in interest may possess with respect

---

[6] The *"Assumption and Assignment Procedures"* shall mean those procedures for assumption and assignment of Contracts and Leases described in Paragraphs 32-38 of this Order.

CHI 65720662v9

thereto. Such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets. All person or entities, presently or on or after the Closing, in possession of some or all of the Acquired Assets shall surrender possession of the Acquired Assets to Buyer or its respective designees prior to the Closing; *provided* that, for the avoidance of doubt, and anything in the APA or this Order to the contrary notwithstanding, BofA shall not be obligated to surrender possession any portion of the DIP Collateral to Buyer (including any residual interest therein that may be reserved in favor of Buyer under the APA as an Acquired Asset) except as may be provided in the DIP Credit Agreement (as defined in the BofA Order) and/or the BofA DIP Order.

13.    This Order (a) shall be effective as a determination that, as of the Closing no Adverse Interests other than Assumed Liabilities will be assertable against the Buyer or any of its respective assets (including the Acquired Assets), (b) shall be effective as a determination that, as of the Closing (or thereafter as of the Assumption Approval for any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein), (i) the Acquired Assets shall have been transferred to Buyer free and clear, to the maximum extent permitted by law, of all Adverse Interests and (ii) the conveyances described herein have been effected; and (c) is and shall be binding upon entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of

16

the foregoing persons and entities shall accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transactions.

14.    Other than the Assumed Liabilities, Buyer shall have no obligations with respect to any Adverse Interests of the Debtors, including the Excluded Liabilities (including all liabilities of the Debtors for Employment Related Laws, Complaints, and Obligations) and the Buyer and its affiliates, successors and assigns are released from any and all Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer of the Debtors, except for the Assumed Liabilities under the APA and except for the Debtors' rights, claims and interests with respect to the DIP Financing until the DIP Financing is satisfied at Closing. The holders of claims related to the Assumed Liabilities shall have the right to seek payment directly from Buyer on account of the Assumed Liabilities; *provided, however*, that Buyer reserves any and all rights, defenses or objections with regard to such Assumed Liabilities, including, but not limited to, Buyer's rights under the APA.

15.    Except with respect to the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including all debt security holders, equity security holders, affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants and other creditors holding Adverse Interests arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the ownership, sale or operation of the Acquired Assets and the business prior to the Closing or the transfer of Acquired Assets to Buyer (whether prior to the Closing or thereafter as of the Assumption Approval for any Assumed Contract that becomes such post-Closing subject to the

17

Assumption and Assignment Procedures described herein), are hereby forever barred, estopped and permanently enjoined from asserting such Adverse Interests against the Buyer Group, its property or the Acquired Assets. Following the Closing (or thereafter as of the Assumption Approval for any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein), no holder of any Adverse Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Adverse Interest, or based on any action the Debtor may take in the Cases.

16.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Adverse Interests against or in the Acquired Assets shall not have delivered to the Debtors prior to the Closing of the Transactions in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction or releases of all Adverse Interests that the person or entity has with respect to such Acquired Assets, then only with regard to the Acquired Assets that are purchased by Buyer pursuant to the APA and this Order, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Acquired Assets; and (b) Buyer is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Adverse Interests against the Buyer Group and the applicable Acquired Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office. For the avoidance of doubt, only Acquired Assets that are part of the estates of the Debtors are being sold to Buyer

18

CHI 65720662v9

free and clear, to the maximum extent permitted by law, of Adverse Interests pursuant to section 363(f) of the Bankruptcy Code.

<b><u>No Successor or Transferee Liability</u></b>

17.    The Buyer Group shall not be deemed, as a result of any action taken in connection with the APA, the Letter Agreement, the consummation of the Transactions, or the transfer, operation or use of the Acquired Assets, or the employment of the Selected or Transferred Employees to (a) be a legal successor, or otherwise be deemed a successor to the Debtors (other than, for Buyer, with respect to any obligations as an assignee under the Assumed Contracts arising after the Closing); (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation or successor in any respect of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

18.    Except as expressly provided in the APA with respect to Assumed Liabilities, the Buyer Group shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, *"Successor or Transferee Liability"*) based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of labor law, employment law, ERISA and benefits law, or arising out of any Employment Related Laws, Complaints, and Obligations, antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown

19

as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including any liabilities or non-monetary obligations on account of any settlement or injunction, or any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing or such later time as Buyer is assigned and assumes any Assumed Contract.

19.    Except as expressly provided in the APA with respect to the Assumed Liabilities, nothing in this Order or the APA shall require the Buyer Group to (a) continue or maintain in effect, or assume any liability in respect of any employee, pension, welfare, fringe benefit or any other benefit plan, trust arrangement or other agreements to which the Debtors are a party or have any responsibility therefor including medical, welfare and pension benefits payable after retirement or other termination of employment; or (b) assume any responsibility as a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the funding, investment or administration of any employee benefit plan, arrangement or agreement (including but not limited to pension plans) or the termination of any such plan, arrangement or agreement.

20.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer Group, or its assets (including the Acquired Assets), or its successors and assigns, with respect to any (a) Adverse Interest or (b) Successor or Transferee Liability including, without limitation, the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or

enforcing any Adverse Interest; (iv) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (v) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

### Good Faith of Buyer

21. The Transactions contemplated by the APA and the Letter Agreement are undertaken by Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Transactions (including the assumption and assignment of the Assumed Contracts), unless such authorization and consummation of such sale are duly and properly stayed pending such appeal.

22. There has been no showing that the Debtors or the Buyer engaged in any action or inaction that would cause or permit the Transactions to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

23. The consideration provided by Buyer for the Acquired Assets under the APA and the Letter Agreement is fair and reasonable and the sale may not be avoided under section 363(n) of the Bankruptcy Code.

### Assumed Contracts

24. Subject to Paragraph 38 of this Order, the Debtors are authorized at the Closing (or thereafter as of the Assumption Approval for any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein) to assume and assign each of the Assumed Contracts in accordance with the APA and this Order to Buyer free

21

and clear, to the maximum extent permitted by law, of all Adverse Interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Buyer such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to Buyer. Subject to Paragraph 38 of this Order, the payment of the applicable Cure Amounts by the Buyer shall (a) effect a cure of all defaults existing thereunder as of the Closing (or thereafter for any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein), (b) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (c) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to Buyer, constitute adequate assurance of future performance thereof.

25.    Subject to Paragraph 38 of this Order, any provisions in any Assumed Contract (including any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein) that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Assumed Contracts in accordance with the APA but will be effective and binding upon the Buyer Group with respect to any purported assignment for the remaining term of any Assumed Contract. Subject to Paragraph 38 of this Order, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Buyer of the Assumed Contracts have been satisfied. Upon the Closing or such later time as is provided in the APA with respect to the assumption and assignment of any Assumed Contract, in

22

accordance with sections 363 and 365 of the Bankruptcy Code, Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts, and such Assumed Contracts shall remain in full force and effect for the benefit of Buyer.

26.    Each non-Debtor counterparty to the Assumed Contracts shall be forever barred, estopped, and permanently enjoined from (a) asserting against the Debtors or Buyer or their respective property any assignment fee, acceleration, default, breach or claim or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing (or thereafter as of the Assumption Approval for those that arise post-Closing and are not barred by this Order with respect to any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein) or arising by reason of the Closing or the transfer of the Acquired Assets, including any breach related to or arising out of change-in-control in such Assumed Contracts, or any purported written or oral modification to the Assumed Contracts and (b) asserting against Buyer (or its property, including the Acquired Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing (or thereafter as of the Assumption Approval for those that arise post-Closing and are not barred by this Order with respect to any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein) or arising by reason of the transfer of the Acquired Assets, except for the Assumed Liabilities, *provided, however*, and notwithstanding anything to the contrary in this Order, the Motion or the APA, the Buyer shall be responsible for continuing obligations under the Assumed Contracts, *cum onere*, including, without limitation, liabilities for any breach of such Assumed Contracts occurring after such assignment and obligations to pay year-end adjustment and reconciliation amounts that become obligations after the date of this Order (irrespective of whether such obligations accrued before,

23

on, or after assumption and assignment of the Assumed Contracts), including tax reconciliations, common area charges and insurance premiums, under the terms of the applicable unexpired lease of real property, subject to any defenses provided by such lease and unless otherwise agreed. In addition, without relieving Buyer of its obligations under the APA, nothing in the Order, the Motion or the APA shall affect the Debtors' obligations under section 365(d)(3) of the Bankruptcy Code prior to the assumption and assignment or rejection of any Assumed Contracts or Leases.

27.     Upon the Closing (or thereafter as of the Assumption Approval for any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein), Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and shall pay all outstanding undisputed cure amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts for any breach thereof occurring after such assignment. There shall be no rent accelerations, assignment fees, increases or any other fees charged to Buyer or the Debtors as a result of the assumption and assignment of the Assumed Contracts.

28.     Subject to Paragraph 38 of this Order, Buyer has provided adequate assurance of future performance under the Assumed Contracts (including any Assumed Contract that becomes such post-Closing subject to the Assumption and Assignment Procedures described herein) within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

CHI 65720662v9

29.    Pursuant to Section 2.6 of the APA, from and after the Closing Date through the Designation Deadline,[7] Buyer shall provide written notice to the Debtors (and the Debtors shall provide such notice to the affected landlords or counterparties within three (3) Business Days of receiving such notice from Buyer, which notice the Debtors agree to provide) designating certain Contracts and Leases for either (x) assumption by the Debtors and assignment to the Buyer (each, an "*Assumed Contract*") or (y) exclusion and rejection (or to be rejected to the extent executory) (each an "*Excluded Contract*"); *provided, however,* that Buyer shall assume at least 140 Leases as of the Designation Deadline.

30.    After the Closing and prior to the Designation Deadline, the Debtors shall not terminate, amend, supplement, modify, waive any rights under, or create any Adverse Interest with respect to any Contract or Lease, or take any affirmative action not required thereby, without the prior written consent of Buyer (not to be unreasonably withheld or delayed) unless Buyer has provided written notice to Debtors designating such Contract or Lease for rejection pursuant to Section 2.6 of the APA.  After receiving written notice from Buyer to assume and assign a Contract or Lease, the Debtors shall use commercially reasonable efforts to obtain an order of the Court to assume and assign such Contract or Lease to Buyer (the "*Assumption Approval*") in accordance with the Assumption and Assignment Procedures set forth herein.

---

[7] Designation Deadline is defined in the APA to mean May 15, 2015; *provided, however,* that Buyer may extend such date until June 30, 2015 if Buyer funds the costs to be incurred by the Sellers during the period following May 15, 2015 until June 30, 2015.  To the extent Buyer chooses to extend the Designation Deadline, notice of the extension of the Designation Deadline shall be filed with the Court, within four (4) days of Buyer exercising its rights to extend the Designation Deadline, and served on those counterparties whose Contracts or Leases are still subject to potential assumption or rejection.  Notwithstanding the foregoing, the "Designation Deadline" with respect to the Lease for the Headquarters shall be the earlier of August 13, 2015 and 90 days after the entry of an order confirming the Plan (or such later date as may be agreed to by Buyer, Sellers and the landlord under the Lease for the Headquarters); *provided, however,* nothing in this Order shall be deemed to extend the deadline for the Debtors to assume, assume and assign or reject the Lease for the Headquarters beyond the existing deadline; *provided, further,* that the Debtors reserve their right to seek such an extension beyond the existing deadline, pursuant to the Plan.

Any applicable Cure Amount for the assumption and assignment of a Contract or Lease shall be paid by the Buyer. For any Contract or Lease that has not been designated as of the Closing as an Excluded Contract or an Assumed Contract under the APA, until the Rejection Effective Date (as defined in this Order) or Assumption Approval, Buyer shall (i) pay to the Debtors or pay directly to the requisite third party, as applicable, an amount equal to the costs and expenses required to be paid by the Debtors after Closing in performing obligations under such Contracts and Leases, if any, as and when such amounts come due (subject to and in accordance with the APA) and (ii) be obligated to perform or cause to be performed all of Debtors' obligations arising after the Closing under such Contract or Lease, and Buyer shall be entitled to all benefits of Debtors' thereunder; *provided*, that no Cure Amount shall be due with respect to such Contract or Lease unless and until such Contract or Lease is designated as an Assumed Contract and assumed at Assumption Approval. Notwithstanding anything to the contrary in Section 2.10(c)(4) of the APA, Buyer may (i) without the prior written consent of the Debtors or further order of this Court, assign any or all of its rights and obligations under Section 2.10(c) of the APA to any of Buyer's Affiliates and (ii) with further order of this Court entered after notice to the Debtors and all affected parties, assign any or all of its rights and obligations under Section 2.10(c) of the APA to other Persons; provided however, that in each case Buyer remains liable for performance under Section 2.10(c) of the APA, unless otherwise agreed.

31.    In the event Buyer has not provided a written designation to assume and assign or reject any Contract or Lease by the Designation Deadline, then such Contract or Lease shall be deemed to be an Excluded Contract and the Debtors may move to reject such Contract or Lease as of the Designation Deadline, and no Debtor shall have any obligation to assign such Contract or Lease to Buyer.

26

## Assumption and Assignment Procedures

32.    In the case of any Contracts and Leases that the Debtors seek to assume and assign after the Closing Date pursuant to Section 2.6 of the APA, within five (5) Business Days following delivery of a notification by Buyer that a Contract or Lease is designated for assumption and assignment, the Debtors will file with the Court a written notice of the Debtors' intent to assume and assign such Contract or Lease (an "***Assumption Notice***"), substantially in the form attached hereto as **Exhibit 2**.

33.    The Debtors will serve such Assumption Notice via overnight delivery on each of the following parties (the "***Assumption Notice Parties***"):  (a) each counterparty or landlord to any Contract or Lease (and their counsel, if known) to be assumed or assigned by the Debtors, (b) the Office of the United States Trustee, (c) counsel to the Committee and (d) counsel to the Buyer.

34.    The Assumption Notice will set forth the following information, to the best of the Debtors' knowledge:  (a) the street address of the real property that is the subject of any Lease that the Debtors seek to assume and assign or a description of the Contract that the Debtors seek to assume and assign, (b) the name and address of the affected counterparties or landlords (and their counsel, if known), (c) a description of the deadlines and procedures for filing objections to the Assumption Notice (as set forth below), (d) the name of the Buyer (the "***Proposed Assignee***"), (e) information regarding how a non-debtor party to a Contract or Lease may obtain additional information regarding the Proposed Assignee, (f) any Cure Amounts that arise solely following the deadline to object to the Sale and have not otherwise been paid in the ordinary course, if any, and (g) the proposed order approving the assumption and assignment (the "***Assumption Order***"), substantially in the form attached hereto as **Annex 1** to the Assumption Notice.

27

35.     A party in interest may object following the Closing to the proposed assumption and assignment by the Debtors of a Contract or Lease following the Closing. Any such objection to the proposed assumption and assignment by the Debtors of a Contract or Lease following the Closing must be in writing and filed and served so that such objection is filed with this Court and actually received by the Debtors and the Assumption Notice Parties no later than fourteen (14) days after the date the Debtors served the applicable Assumption Notice.

36.     If no timely permitted objection is filed and served with respect to the Assumption Notice, any non-Debtor party to such Contract or Lease shall be deemed to have provided the required consent to the assumption and assignment of such Contract or Lease, and the Debtors shall present the Assumption Order for entry by the Court. The Assumption Order shall provide, among other things, that (a) the assumption and assignment of such Contract or Lease is approved, final and effective pursuant to section 365 of the Bankruptcy Code as of the date of the Assumption Order and (b) the Proposed Assignee provided adequate assurance of future performance under the applicable Contract or Lease in accordance with section 365(f)(2)(B) of the Bankruptcy Code and if applicable, section 365(b)(3) of the Bankruptcy Code.

37.     If a timely permitted objection is properly filed and served on the Assumption Notice Parties in the manner specified above, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection. If that objection is overruled by the Court or withdrawn, the assumption and assignment of the affected Contract or Lease shall be deemed effective as of the date of the Assumption Order.

38.     Notwithstanding anything to the contrary in this Order, to the extent the deadline has been extended for a particular Contract or Lease counterparty as indicated on the attached

28

**Exhibit 3** to raise an objection regarding the proposed Cure Amount, adequate assurance of future performance under the relevant Contract or Lease or as otherwise set forth on Exhibit 3, such counterparty reserves all rights to raise an objection to the proposed Cure Amount, adequate assurance of future performance or as otherwise set forth on Exhibit 3 with respect to the relevant Contract or Lease as set forth on Exhibit 3 (the "***Extended Objection Date Parties***"). In addition, all filed objections relating to the proposed Cure Amounts, adequate assurance of future performance or other issues, as noted on the attached **Exhibit 4** will be set for a continued hearing date (the "***Continued Objections***;" together with the Extended Objection Date Parties, the "***Objections***") and notwithstanding anything to the contrary in this Order, each such counterparty that filed a Continued Objection reserves all rights to raise a future objection to the assumption and assignment of the Contract or Lease on grounds of the proposed Cure Amount or adequate assurance of future performance under the relevant Contract or Lease. All such Objections will be set for a further hearing on April 27, 2015 at 10:00 a.m. (the "***Continued Hearing Date***"), with the Extended Objection Date Parties filing objections on or before seven (7) days prior to the Continued Hearing Date.

## Rejection Procedures

39.     As set forth more fully in Section 2.6 of the APA, in the case of any Contract or Lease that the Buyer does not want to assume and assign, within five (5) days following delivery of a notification by Buyer that a Contract or Lease is designated for rejection, the Debtors shall move to reject such Contract or Lease by filing with the Court a written notice of the Debtors' intent to reject such Contract or Lease (a "***Rejection Notice***"), substantially in the form attached hereto as **Exhibit 5**. Within three (3) Business Days of delivery of notification by Buyer of its intention to reject a Contract or Lease, the Debtors shall serve such Rejection Notice via overnight delivery on each of the following parties (the "***Rejection Notice Parties***"):  (a) each

29

counterparty or landlord to any Contract or Lease (and their counsel, if known) to be rejected by the Debtors, (b) the Office of the United States Trustee, (c) counsel to the Committee and (d) counsel to the Buyer.

40.     The Rejection Notice will set forth the following information, to the best of the Debtors' knowledge: (a) the street address of the real property that is the subject of any Lease that the Debtors seek to reject or a description of the Contract that the Debtors seek to reject, (b) the name and address of the affected counterparties or landlords (and their counsel, if known), (c) a description of the deadlines and procedures for filing objections to the Rejection Notice (as set forth below), and (d) the proposed order approving the rejection (the "*Rejection Order*"), substantially in the form attached hereto as **Annex 1** to the Rejection Notice.

41.     Should a party in interest object to the proposed rejection by the Debtors to a Contract or Lease, such party must file and serve a written objection so that such objection is filed with this Court and actually received by the Debtors and the Rejection Notice Parties no later than ten (10) days after the date the Debtors served the Rejection Notice.

42.     If a timely objection is properly filed and served on the Rejection Notice Parties, unless the parties agree otherwise in writing, a hearing will be scheduled to consider that objection.  If that objection is overruled by the Court or withdrawn, the rejection of the affected Contract or Lease shall be deemed effective as of the later of (a) the date of delivery of the Rejection Notice to the Contract or Lease counterparty or (b) in the case of a Lease, the date of surrender of the premises that are the subject of such Lease (the "*Rejection Effective Date*").

43.     If no timely objection is filed and served with respect to the rejection of a Contract or Lease within ten (10) days after delivery of the Rejection Notice, the Debtors may

file the Rejection Order, which shall provide, among other things, that the rejection of such Contract or Lease shall become effective as of the applicable Rejection Effective Date.

44.    In connection with the rejection of a Lease, if the Debtors have deposited monies with a lessor as a security deposit or other arrangement, such lessor may not set off or recoup or otherwise use such deposit without the prior approval of the Court.

45.    If an affected landlord or counterparty or any other party in interest (the *"Rejection Claimant"*) asserts a claim or claims against the Debtors arising from the rejection of a Contract or Lease, such Rejection Claimant shall submit a proof of claim on or before the later of (a) the date that is 30 days after the entry of the Rejection Order or (b) the bar date established by this Court for filing proofs of claim against the Debtors. If the Rejection Claimant does not timely file such proof of claim, such claimant shall be forever barred from asserting a claim against the Debtors for such rejection damages.

## Closing Date Assumption, Removed Contracts and Designation of Contracts

46.    On May 28, 2008, The Wet Seal Retail, Inc. (*"Wet Seal Retail"*) entered into a lease with The Irvine Company LLC at that shopping center commonly known as the Irvine Spectrum Center, including for the premises located at 650 Spectrum Center Drive, Irvine, California (including any amendments thereto, the *"Spectrum Lease"*).    Wet Seal Retail is authorized to enter into that certain Fourth Amendment to the Spectrum Lease, a copy of which is attached hereto as **Exhibit 6** (the *"Fourth Amendment"*).    Wet Seal Retail is further authorized to assume and assign the Spectrum Lease, as amended by the Fourth Amendment, to Buyer as of the Closing Date and the Spectrum Lease, as amended by the Fourth Amendment shall be an Assumed Contract, subject to the provisions of this Order and the APA.

31

47.     Those Contracts set forth on **Exhibit 7** have been removed from the list of Contracts and Leases that may be designated by the Buyer as Contracts or Leases to be assumed and assigned or rejected by the Debtors in accordance with Section 2.6 of the APA (the *"Removed Contracts"*).    Except to the extent that the liability under the Removed Contracts is an Assumed Liability, the Buyer has no financial or other responsibility or obligation with respect to the Removed Contracts.

48.     Either Buyer or an Affiliate of Buyer, which owns Acquired Assets, will conduct operations at the Designated Stores prior to such Designated Stores being deemed Continuing Stores or Non-Continuing Stores.

## The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman

49.     The Buyer shall be subject to reasonable restrictions by the Debtors in order to comply with the Debtors' privacy policy, which broadly provides that, if the Debtors or any portion of their assets are acquired, the Debtors may share all types of information with the acquiring company.[8]   Therefore, because the Debtors' privacy policy does not prohibit the transfer of personally identifiable information, appointment of a consumer privacy ombudsman is unnecessary.

## Other Provisions

50.     BofA and the Pre-Petition Secured Parties consent to the sale of the Acquired Assets to Buyer free and clear of BofA's and the Pre-Petition Secured Parties' liens, claims, security interests and any other encumbrances provided that the Challenge Period Termination Date (as defined in the BofA DIP Order) has occurred and no Challenge Proceeding (as defined in the BofA DIP Order) has been filed on or before the Challenge Period Termination Date.   In

32

the event that Buyer seeks to close the sale of the Acquired Assets prior to the Challenge Period Termination Date, the Debtors and Buyer must obtain BofA's and the Pre-Petition Secured Parties' written consent to the sale of the Acquired Assets free and clear of BofA's and the Pre-Petition Secured Parties' liens, claims, security interests and any other encumbrances against such Acquired Assets. In the event that a Challenge Proceeding is filed prior to the Challenge Period Termination Date, the Debtors, Buyer, the Committee, BofA and the Pre-Petition Secured Parties retain any and all rights to seek further relief before this Court with respect to the sale of the Acquired Assets free and clear of BofA's and the Pre-Petition Secured Parties' liens, claims, security interests and other encumbrances on such Acquired Assets and a further hearing date will be set to resolve any such issues. Except with respect to the sale of the Acquired Assets free and clear of the liens, claims, security interests and other encumbrances of BofA and the Pre-Petition Secured Parties, as set forth herein and in this Paragraph 50 of the Order, nothing in this Order shall modify the BofA DIP Order or any of BofA's or the Pre-Petition Secured Parties' rights, remedies, liens, claims or interests against the Debtors, the estates or their property. From and after the date of this Order, the BofA DIP Order (including, without limitation, the definitions of the "Pre-Petition Cash Collateral Account," "Post-Petition Cash Collateral Account, "Cash Management/Indemnity Account," "Challenge Period," "Challenge Period Termination Date" and "DIP L/C Liens" contained therein) may not be amended, modified or supplemented without the prior written consent of Buyer, which shall not be unreasonably withheld.

51.    Notwithstanding anything in this Order or the APA to the contrary, including, without limitation, Section 3.16 of the APA and Paragraph 12 of Schedule 2.3 of the APA, in

---

[8] The Debtors' privacy policy is posted at http://www.wetseal.com/privacy-policy/privacy-policy.html.

CHI 55720662v9

addition to the fees and expenses incurred by Houlihan Lokey Capital, Inc. ("*Houlihan*") that are being assumed by Buyer pursuant to Paragraph 12 of Schedule 2.3 of the APA, Buyer is assuming 50% of the Transaction Fee (as defined in the Houlihan Engagement Agreement), in an amount not to exceed $750,000 (the "*Assumed Houlihan Transaction Fee*"), that is or becomes due and owing by the Debtors to Houlihan pursuant to its Engagement Agreement with the Debtors, dated as of November 17, 2014 (the "*Houlihan Engagement Agreement*"), as modified by that certain Order approving the Houlihan Engagement Agreement [Dkt. No. 324], and that is or becomes an allowed Administrative Claim.   For the avoidance of doubt, the Assumed Houlihan Transaction Fee shall constitute an Assumed Liability under both this Order and the APA.  In addition, notwithstanding anything in this Order or the APA to the contrary, and for the avoidance of doubt, Buyer shall have no liability for (i) any fees and expenses incurred for preparation of the final tax returns of the Debtors, (ii) any fees and expenses of any winddown officer of the Debtors for the period on and after the Closing Date and prior to May 15, 2015, (iii) any portion of the Transaction Fee (as defined in the Houlihan Engagement Agreement) other than the Assumed Houlihan Transaction Fee, or (iv) any professional fees and expenses other than those assumed pursuant this Paragraph 51, pursuant to Paragraph 12 of Schedule 2.3 of the APA, pursuant to the definition of "Designation Deadline" as set forth in the APA, or pursuant to Paragraphs 13 and 14 of the Letter Agreement.  In addition, the Committee has reviewed a commitment letter and term sheet dated March 29, 2015 from Buyer's lender (the "*Commitment Letter*"), and Buyer has confirmed that in accordance with Section 2.8(b)(v) of the APA, the financing, as described in the Commitment Letter, will not be used to fund the Cash Payment, and will provide Buyer with available cash of at least $10 million on the Closing Date

as required under Section 2.8(b)(v) of the APA, and the Committee hereby confirms and agrees that such Commitment Letter satisfies Section 2.8(b)(v) of the APA.

52.    Notwithstanding anything to the contrary herein or in the APA, nothing herein or in the APA shall diminish, impair, impact, modify, or affect any claims, rights, remedies or defenses Hansae Co. Ltd. has against the estates and/or any Acquired Assets or proceeds thereof, including under sections 546(c) and (h) of the Bankruptcy Code and applicable similar non-bankruptcy law relating to reclamation claims; provided that the Debtors and Buyer expressly retain any and all rights to object to any such claims asserted by Hansae Co. Ltd.

53.    Effective upon the Closing, the Debtors, on behalf of themselves and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns (collectively, the *"Debtor Releasing Parties"*), hereby release, remise, acquit and forever discharge the Buyer Group and their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, contractors, subcontractors, independent contractors, owners, insurance companies and partners (collectively, the *"Buyer Released Parties"*), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claims or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law or other of any kind, nature, or description, including, without limitation as to any of the

35

foregoing, any claim by way of indemnity or contribution, which any Debtor Releasing Party has, may have had or may hereafter assert against any Buyer Released Party arising from or related in any way, either directly or indirectly, to any action or inaction of any Buyer Released Party relating in any way to the Cases, the Debtors, their respective past, present and future subsidiaries, parents, divisions, affiliates, agents, representatives, insurers, attorneys, successors and assigns, including without limitation, any action or inaction of any Buyer Released Party with respect to the Cases; *provided, however*, that the foregoing release shall not apply to the Debtors' rights or the Buyer's obligations under the APA, the Letter Agreement or this Order or the rights of any other party under this Order.

54.     Effective upon the Closing, Buyer, on behalf of itself and its past, present and future subsidiaries, parents, divisions, successors and assigns (collectively, the "***Buyer Releasing Parties***"), hereby releases, remises, acquits and forever discharges each Debtor and its past and present subsidiaries, parents, divisions, agents, representatives, attorneys, successors and assigns, and each of its and their respective directors, managers, officers, employees, shareholders, members, agents, representatives, attorneys, owners and partners (collectively, the "***Debtor Released Parties***"), from any and all claims, contracts, demands, causes of action, disputes, controversies, suits, cross-claims, torts, losses, attorneys' fees and expenses, obligations, agreements, covenants, damages, Liabilities, costs and expenses, whether known or unknown, whether anticipated or unanticipated, whether claimed or suspected, whether fixed or contingent, whether yet accrued or not, whether damage has resulted or not, whether at law or in equity, whether arising out of agreement or imposed by statute or common law of any kind, nature, or description (including, without limitation as to any of the foregoing, any claim by way of indemnity or contribution), in each case, which any Buyer Releasing Party has, may have had or

36

may hereafter assert against any Debtor Released Party arising from or related in any way, either directly or indirectly, to any action or inaction of any Debtor Released Party relating in any way to the Business, including without limitation, any action or inaction of any Debtor Released Party relating to the Cases; *provided, however*, that the foregoing release shall not apply to (i) the Buyer's rights or the Debtors' obligations under or with respect to this Order or the APA (including Section 6.10 of the APA), any Related Agreements and/or any other agreements entered into in connection with the transactions contemplated by the APA, (ii) the rights of Buyer Releasing Parties under any Insurance Policy and/or (iii) any matter to the extent not related to the Business.

55.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and Buyer, in consultation with counsel to the Committee, without further action or order of the Bankruptcy Court if it does not have a material adverse effect on the Debtors' estates; *provided, however*, that any such waiver, modification, amendment, or supplement that implicates the BofA Interests, the Treasury Management Obligations (as defined in the BofA Order), and/or or the Pre-Petition Indemnity Obligations (as defined in the BofA Order), shall not be effective absent (x) the prior written consent of BofA, or (y) upon entry of an order of the Court following the giving of appropriate notice to BofA and after BofA being afforded an opportunity to be heard. Any material modification, waiver, amendment or supplement to the APA must be approved by Order of the Bankruptcy Court.

56.    The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of this Court, to allow Buyer to deliver any notice provided for in the APA and allow Buyer to take any and all

actions permitted or required under the APA in accordance with the terms and conditions thereof. Buyer shall not be required to seek or obtain any further relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other sale-related document, with the exception of the DIP Financing.

57.    All persons, all Governmental Units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code) and all holders of Adverse Interests, based upon or arising out of the Excluded Liabilities are hereby barred and estopped from taking any action against Buyer or the Acquired Assets to recover property on account of any Adverse Interests or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Adverse Interests with respect to the Excluded Assets are hereby enjoined from asserting or prosecuting such Adverse Interests against Buyer or the Acquired Assets for any liability whatsoever associated with the Excluded Assets. Anything in this Order to the contrary notwithstanding, nothing herein or in the APA shall affect, bar, enjoin, or estop BofA from exercising its rights and remedies arising under or with respect to the DIP Collateral, including, without limitation, any of BofA's rights and remedies arising under or with respect to the DIP Collateral that are related to the DIP Credit Agreement, the BofA Liens, the BofA Accounts or the BofA DIP Order, including the grant of relief from the automatic stay in favor of BofA as provided under the BofA DIP Order.

58.    The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear, to the maximum extent permitted by law, of all Adverse Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

38

59.    Neither the Debtors nor any of their Affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is similar or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is authorized to change its corporate name to a name which (a) does not use the name "Wet Seal", "WTSL" or any other name that references or reflects any of the foregoing in any manner whatsoever, (b) is otherwise substantially dissimilar to its present name and (c) is approved in writing by Buyer.

60.    Within one (1) business day of the occurrence of the Closing of the Sale, the Debtors shall file and serve a notice of same, substantially in the form attached hereto as **Exhibit 8** (the "*Notice of Sale Closing and Effective Date of Amendment of Case Caption*") and upon the filing of such notice, the Debtors' case caption shall be amended as follows:

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEAL123, INC. ~~(F/K/A THE WET SEAL, INC.,~~ | ) Case No. 15-10081 (CSS) |
| ~~et al.);~~ | ) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

[1]    The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Seal123, Inc. (f/k/a The Wet Seal, Inc.) (5940); Seal123 Retail, Inc. (f/k/a The Wet Seal Retail, Inc.) (6265), Seal123 Catalog, Inc. (f/k/a Wet Seal Catalog, Inc.) (7604), and Seal123 GC, LLC (f/k/a Wet Seal GC, LLC (2855-VA). The Debtors' address is 26972 Burbank, Foothill Ranch, CA 92610.

61.    Upon the filing of the Notice of Sale Closing and Effective Date of Amendment of Case Caption, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 15-10081 through 15-10084, consistent with Paragraph 60 of this Order.

39

62.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the Letter Agreement and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale. This Court retains jurisdiction to compel delivery of the Acquired Assets, to protect the Buyer Group and its assets, including the Acquired Assets, against any Adverse Interests and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363 or 365 (or other applicable provisions) of the Bankruptcy Code necessary to transfer the Acquired Assets and the Assumed Contracts to Buyer. This Court retains jurisdiction to adjudicate disputes between Buyer and holders of claims related to the Assumed Liabilities regarding the Assumed Liabilities.

63.    The Transactions contemplated hereunder shall not be affected by any bulk sales laws.

64.    The Transactions contemplated hereunder are not receiving an exemption under section 1146(a) of the Bankruptcy Code.

65.    Notwithstanding anything in this Order to the contrary, this Order does not authorize any payments or obligations subject to section 503(c) of the Bankruptcy Code.

66.    Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be effective immediately upon entry, and the Debtors and Buyer are authorized to close the sale immediately upon entry of this Order.

40

67.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

68.     To the extent there are any inconsistencies between the terms of this Order, the APA and the Letter Agreement, the terms of this Order shall control.

Date: _____4/1_____, 2015
        Wilmington, Delaware

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

41