**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SEAL123, INC., *et al.*,[1] | ) Case No. 15-10081 (CSS) |
| | ) |
| Post-Confirmation Debtors. | ) Jointly Administered |
| | ) |
| | ) **Hearing Date:  February 20, 2019 at 10:00 a.m. (EST)** |
| | ) **Obj. Deadline:  February 13, 2019 at 4:00 p.m. (EST)** |

**MOTION OF SEAL123, INC. LIQUIDATION TRUST UNDER 11 U.S.C. §§ 105(a)
AND 350(a), FED. R. BANK. P. 3022, DEL. BANKR. L.R. 3022-1 AND
SECTION 11.21 OF THE PLAN FOR ORDER AND FINAL DECREE (I) CLOSING
THE CHAPTER 11 CASE OF THE LEAD DEBTOR; (II) APPROVING
ABANDONMENT OF REMAINING TRUST ASSETS; AND (III) DISCHARGING THE
LIQUIDATION TRUSTEE AND LIQUIDATION TRUST OVERSIGHT COMMITTEE**

The Seal123, Inc. Liquidation Trust (the "Trust") established in the chapter 11
cases of Seal123, Inc. (f/k/a The Wet Seal, Inc.) (the "Lead Debtor") and its affiliates
(collectively, the "Debtors"), by and through META Advisors LLC (the "Liquidation Trustee")
and its undersigned counsel, hereby submits this motion (the "Motion") for entry an order
pursuant to 11 U.S.C. §§ 105(a) and 350(a), Fed. R. Bankr. P. 3022, Del. Bankr. L.R. 3022-1 and
Section 11.21 of the Plan (defined below), substantially in the form attached hereto as Exhibit A
(the "Order and Final Decree"): (i) closing the chapter 11 case of the Lead Debtor;[2]
(ii) approving the abandonment of any remaining Trust assets; and (iii) discharging the
Liquidation Trustee, the Liquidation Trust Oversight Committee and their respective members,

---

[1]     The post-confirmation Debtors are:  Seal123, Inc. (f/k/a The Wet Seal, Inc.); Seal123 Retail, Inc. (f/k/a The
        Wet Seal Retail, Inc.); Seal123 Catalog, Inc. (f/k/a Wet Seal Catalog, Inc.); and Seal123 GC, LLC (f/k/a
        Wet Seal GC, LLC).

[2]     The chapter 11 cases of all Debtors other than the Lead Debtor previously were closed by order of this
        Court entered February 13, 2017 [Docket No. 1488].

professionals, consultants and/or employees.  In support of the Motion, the Trust respectfully states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Section 10.1(r) of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other legal predicates for the relief requested herein are sections 105(a) and 350(a) of the Bankruptcy Code, Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 3022-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and Section 11.21 of the *First Amended Joint Plan of Liquidation of Seal123, Inc. and Subsidiary Debtors and Their Official Committee of Unsecured Creditors* (the "Plan").[3]

2.      Pursuant to Local Rule 9013-1(f), solely in its capacity as Liquidation Trustee, the Liquidation Trustee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

### A.      Case Background

3.      On January 15, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors' cases were consolidated for procedural purposes and jointly administered under Case No. 15-10081 (CSS).

---

[3]      Docket No. 969.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

4.      On February 10, 2015, the Court entered an order (the "Bar Date Order")[4] establishing the deadline (the "Bar Date") for any entity, other than governmental units as defined in section 101(27) of the Bankruptcy Code, to assert a claim against any of the Debtors (whether secured, unsecured priority or unsecured nonpriority) that arose prior to the Petition Date.  The Bar Date in these Cases was April 10, 2015, at 5:00 p.m. (ET).[5]  Further pursuant to the Bar Date Order, the Court established a deadline of July 14, 2015 at 5:00 p.m. (ET) for governmental units to file proofs of claim.

5.      On October 30, 2015, the Court entered an order ("Confirmation Order")[6] confirming the Plan.  The Debtors' disclosure statement in support of the Plan projected, based on various assumptions, holders of allowed General Unsecured Claims would recover between 5.5% and 6.5% of their allowed claim amount.[7]

6.      The Plan became effective on December 31, 2015 (the "Effective Date").[8] Section 5.4 of the Plan and paragraphs 9, 19 and 20 of the Confirmation Order provide for the establishment of the Trust and the appointment the Liquidation Trustee as of the Effective Date. Upon the occurrence of the Effective Date, the Liquidation Trustee was appointed to administer the Trust and the Liquidation Trust Assets, pursuant to the terms of the Plan, the Confirmation Order and that certain *Liquidating Trust Agreement and Declaration of Trust* dated as of December 31, 2015 (the "Trust Agreement").

---

[4]      Docket No. 280.

[5]      Docket No. 404.

[6]      Docket No. 1111.

[7]      Discl. Stmt. at pp. 4, 28-29 [Docket No. 1001].

[8]      Docket No. 1190.

7.  On March 4, 2016, the Court entered an *Order Terminating Engagement of Donlin, Recano & Co., Inc. as Claims, Noticing and Administrative Agent*.[9]  Thereafter, the Trust retained Process General LLC as claims and noticing agent (the "Claims Agent") through the closing of the Lead Debtor's chapter 11 case.

**B.    Asset Recoveries**

8.  Prior to the Effective Date, the Debtors sold substantially all of their assets pursuant to an Asset Purchase Agreement (the "APA") with Mador Lending, LLC (together with its successors, designees and assigns, the "Buyer"), in exchange for a mix of cash consideration and certain assumed liabilities ("Assumed Claims").[10]  Following the sale, the residual estate assets contemplated by the Plan to become Liquidation Trust Assets and vest in the Trust as of the Effective Date comprised remaining Cash, certain Causes of Action, and the rights of the Debtors with respect to their potential claim (the "Interchange Claim") against the defendants in the litigation captioned *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-MKB-JO (E.D.N.Y.) (the "Class Action Litigation").[11]

9.  Since the Effective Date, the Liquidation Trustee diligently has pursued the liquidation of Causes of Action, primarily consisting of Avoidance Actions (other than Acquired Avoidance Actions transferred to the Buyer), with a view toward resolving them as expeditiously as possible.  Between December 15, 2016 and January 9, 2017, the Trust filed approximately 70 Avoidance Actions.  Since that time, all actions have been resolved by

---

[9]    Docket No. 1271.

[10]    *See Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (B) the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement; and (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Order"), entered April 1, 2015 [Docket No. 538].

[11]    Plan §§ 1.17, 1.60 and 5.4.1.

settlement or judgment, and where appropriate, notices or stipulations of dismissal either have been filed or will be filed in advance of the hearing on this Motion.

10.     With respect to the Interchange Claim, on September 18, 2018, the parties to the Class Action Litigation filed a *Superseding and Amended Definitive Class Settlement Agreement* with the United States District Court for the Eastern District of New York seeking approval of a proposed settlement ranging from $5.56 to $6.26 billion (the "Proposed Settlement").  This Proposed Settlement replaced a previous compromise of the Class Action Litigation, approval of which had been reversed by the Second Circuit Court of Appeals approximately two years earlier.  Because the timing for preliminary and final approval of the new Proposed Settlement by the District Court was considered indeterminate, after which a lengthy administration and distribution process would follow (likely stretching over a period of years), the Liquidation Trustee determined to market the Interchange Claim for an immediate cash recovery.[12]  After soliciting indications of interest and conducting a competitive auction process, the Liquidation Trustee agreed to sell the Interchange Claim to Optium Fund 2 LLC for the sum of $340,000, plus the reimbursement of the Liquidation Trustee's reasonable costs and expenses up to a cap of $15,000.  The sale of the Interchange Claim was approved by this Court on November 30, 2018.[13]

11.     Accordingly, the Liquidation Trustee has substantially completed its duties with respect to asset recovery.  At present:  (i) all litigation pursued by the Trust has been brought to a full and final resolution; (ii) all assets of the Trust of any consequential value have been liquidated; and (iii) as discussed below, the Liquidation Trustee has determined that the

[12]     The Debtors previously opted out of the Class Action Litigation to pursue separate claims and causes of action against the defendants with respect to the Interchange Claim, which separate opt-out litigation was voluntarily dismissed without prejudice.

[13]     Docket No. 1715.

remaining assets of the Trust, consisting primarily of books and records, are of inconsequential value and should be abandoned.

**C.**     **The Claims Administration Process**

12.     Sections 5.4, 7.3, and 8.1 of the Plan and paragraphs 16, 17, and 23 of the Confirmation Order provide that the Trust is responsible for reconciling and objecting to Non-Assumed Claims and making Distributions to holders of Allowed Non-Assumed Claims.  The Plan and Confirmation Order further provide that the Buyer is responsible for reconciling and objecting to Assumed Claims and making Distributions to holders of Allowed Assumed Claims.[14]  Taken together, the APA and the Plan essentially provide for General Unsecured Claims to be reconciled, administered and paid by the Trust, and claims senior to General Unsecured Claims to be reconciled, administered and paid (or where appropriate, reclassified as General Unsecured Claims) by the Buyer.

13.     Focusing on Claims within the purview of the Trust, over 1,100 General Unsecured Claims were filed against the Debtors' estates, in addition to over 1,800 General Unsecured Claims that were included by the Debtors on their Schedules.  With the authority afforded it under the Plan and Trust Agreement, the Liquidation Trustee: (i) filed nine omnibus objections seeking the reduction or disallowance of numerous unsecured claims; (ii) filed two notices identifying claims fully satisfied post-petition and publicizing the Trust's intent to mark such claims as satisfied and ineligible for any distribution from the Debtors or the Trust; and (iii) informally negotiated with creditors and resolved other disputed unsecured claims that were not the subject of a filed objection or satisfaction notice.

---

[14]     Plan §§ 5.4, 7.3, 8.1; Confirmation Order ¶¶ 16, 17, 23.

14.    As a result of the Trust's reconciliation process, the General Unsecured Claims pool in the Debtors' cases has been significantly reduced.  Exclusive of subordinated claims, convertible notes claims and superseded scheduled claims, the filed and scheduled General Unsecured Claims pool initially comprised approximately $144 million.  By contrast, for distribution purposes, the final Allowed General Unsecured Claims pool consists of 519 filed and scheduled claims in the aggregate amount of approximately $74 million, a reduction by nearly 50% in dollar amount.

15.    The Liquidation Trustee also unexpectedly was required to step in and handle certain Assumed Claims that were not supposed to be within the Trust's purview.  On February 2, 2017, the Buyer and certain of its affiliates filed chapter 11 cases of their own in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 17-10229 (CSS) ("Wet Seal II").  At that point, the Buyer's reconciliation of Assumed Claims was not yet complete.  In recognition that the Buyer would not be able to address or pay Assumed Claims in the context of these cases due to the pendency of the Wet Seal II cases, with the Buyer's consent, the Liquidation Trustee resolved all remaining Assumed Claims on the Buyer's behalf by either objecting to them or including them on a notice of satisfied claims.[15]

16.    Accordingly, all filed and scheduled claims across all priority levels have been fully and finally resolved.

---

[15]    Neither the Trust nor the Liquidation Trustee assumed any obligation of the Buyer to make any further payments, under the Plan or otherwise, to holders of Assumed Claims.  Any outstanding amounts purportedly owing to such holders under the Plan represented pre-petition claims in the context of the Wet Seal II cases and, as such, the Liquidation Trustee objected to those claims on a "no liability" basis, on the grounds that they do were not valid claims in these cases, and must be handled though the claims reconciliation process in Wet Seal II.

**D.**     **Distributions**

17.     As of the date of the hearing on this Motion, the Trust will have made all Distributions and other payments required under the Plan.  With the recent resolution of the final Avoidance Actions and the conclusion of all objections to Claims, the Trust is positioned to make a first and final distribution to holders of Allowed General Unsecured Claims of approximately 5.64%, which will be effectuated prior to the date that this Motion is scheduled to be heard.

18.     Accordingly, the transactions contemplated by the Plan have occurred, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.

**E.**     **Reporting Requirements and Statutory Fees**

19.     Since the Effective Date of the Plan, the Liquidation Trustee has filed all required post-confirmation quarterly reports required of it,[16] and has attached the *Final Report in Chapter 11 Cases* required by Local Rule 3022-1(c) as <u>Exhibit B</u> to this Motion (the "<u>Final Report</u>").

20.     In accordance with Section 11.3 of the Plan, the Trust is current on applicable United States Trustee fees through the fourth calendar quarter of 2018.  Prior to the hearing on this Motion, the Liquidation Trustee will make arrangements to prepay the U.S. Trustee fees for the first calendar quarter of 2019, calculated based on the anticipated disbursements in connection with creditor distributions and payment of Trust expenses, through the anticipated date that the proposed Order and Final Decree is entered.

---

[16]     *See* Docket Nos. 1302, 1309, 1376, 1486, 1517, 1550, 1573, 1589, 1605, 1618, 1650 and 1732.

## RELIEF REQUESTED

21.     The Liquidation Trustee respectfully requests that this Court enter the Order and Final Decree: (i) closing the Lead Debtor's chapter 11 case; (ii) approving the abandonment of remaining Trust assets; (iii) discharging the Liquidation Trustee and its professionals, consultants and employees; and (iv) granting certain additional relief requested herein that is incident to closing the Lead Debtor's chapter 11 case.

## BASIS FOR RELIEF

22.     Bankruptcy Code section 350(a) provides that the Court shall close a case after the estate has been fully administered.[17]  In addition, Bankruptcy Rule 3022 provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."[18]

23.     Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."[19] Furthermore, section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[20]

24.     The 1991 Advisory Committee Note to Bankruptcy Rule 3022 lists the following factors to be considered in determining whether a case has been fully administered:

> (a)     whether the order confirming the plan of reorganization has become final;

---

[17]     *See* 11 U.S.C. § 350(a).

[18]     Fed. R. Bankr. P. 3022.

[19]     Del. Bankr. L.R. 3022-1(a).

[20]     11 U.S.C. § 105(a).

(b)    whether deposits required by the plan of reorganization have been distributed;

(c)    whether property proposed by the plan of reorganization to be transferred has in fact been transferred;

(d)    whether the debtor has assumed the business addressed by the plan of reorganization;

(e)    whether payments under the plan of reorganization have commenced; and

(f)    whether all motions, contested matters and adversary proceedings have been finally resolved.[21]

A.    **The Debtors' Estates Have Been Fully Administered**

25.    All of the factors articulated in the Advisory Committee Note weigh in favor of closing the Chapter 11 Cases, or do not apply:

- The Confirmation Order was entered in October 2015 and became effective in December 2015, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code;

- The Plan did not require the Debtors to distribute any deposits;

- All property of the Debtors to be transferred under the Plan has in fact been transferred, in that on the Effective Date, all Assets of the Debtors that remained following the closing of the sale to the Buyer irrevocably were transferred to, and automatically vested in, the Trust and became Liquidation Trust Assets for purposes of further administration and Distribution;[22]

- All Causes of Action transferred to the Trust have been brought to full and final resolution;

- All Claims against the Debtors' estates were reviewed and reconciled, and all objections to Claims have been fully and finally resolved;

- The Debtors liquidated pursuant to the Plan and did not assume any business. The Debtors' assets and liabilities were administered

---

[21]    *See* Fed. R. Bank. P. 3022, Advisory Committee Note (1991).

[22]    *See* Confirmation Order ¶ 9; Plan § 5.4.1.

by the Buyer and the Liquidation Trustee in accordance with the division of responsibility more fully set forth in the Sale Order, the Plan and Confirmation Order until such time as the Buyer filed the Wet Seal II cases, and thereafter, by the Liquidation Trustee;

- Upon information and belief, the Buyer made all Distributions on account of Allowed Assumed Claims and any other payments required of it under the Plan up through the date of the filing of the Wet Seal II cases. All remaining obligations of the Buyer that were not satisfied through the Buyer's petition date became pre-petition claims to be adjudicated in the Wet Seal II cases and not in the context of these cases;

- The Liquidation Trustee has made, or in the near term will make,[23] all Distributions and other payments required of it under the Plan. Prior to the hearing on this Motion, the Liquidation Trustee intends to make a first and final distribution of approximately 5.64% to holders of Allowed General Unsecured Claims, which is within the range projected in the Disclosure Statement;

- All motions, contested matters and adversary proceedings in the Chapter 11 Cases have been fully and finally resolved.

Review of these factors shows there is nothing left to do in the Lead Debtor's chapter 11 case and no reason to keep it open. Further, pursuant to 28 U.S.C. § 1930(a), the Liquidation Trustee has paid all quarterly United States Trustee fees owing through December 31, 2018, and will provide for the prepayment of fees that will become due following the close of the first calendar quarter of 2019. Finally, as noted above, the Final Report required by Local Rule 3022-1(c) is attached hereto as Exhibit B.

---

[23] As noted, the Liquidation Trustee expects to make final distributions to holders of Allowed General Unsecured Claims prior to the scheduled hearing with respect to this Motion. In the unlikely event that there is an unanticipated delay of the intended final distribution date, that occurrence would not preclude entry of the Order and Final Decree. Consistent with the Advisory Committee Note's recognition that payments contemplated by a plan need not be concluded before an estate is considered "fully administered," numerous courts have permitted closure of a chapter 11 case prior to the completion of distributions. *See, e.g., In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) ("Although the debtor has not completed the plan payments, that does not prevent a case from being fully administered."); *Wells Fargo Bank, N.A. v. D & L Nicolaysen (In re D & L Nicolaysen)*, 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998) ("A case may be fully administered even though all payments to creditors have not been completed.") (citing *In re Ground Systems, Inc.*, 213 B.R. 1016, 1019 (9th Cir. BAP 1997)).

26.     In view of the foregoing, the Liquidation Trustee respectfully requests that the Court enter the proposed Order and Final Decree.

**B.     Termination of Claims and Noticing Services**

27.     The Liquidation Trustee respectfully requests that Order and Final Decree include a provision relieving the Claims Agent of any further obligations with respect to claims and noticing services.

28.     In accordance with Local Rule 2002-1(f)(ix), the Order and Final Decree will contain a provision requiring the Claims Agent, within 28 days after the entry of the Order and Final Decree,[24] to: (i) forward to the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk") an electronic version of all imaged claims; (ii) upload the creditor mailing list into CM/ECF; (iii) docket a final claims register; and (iv) box and transport all original Claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.[25]

**C.     Abandonment of Remaining Trust Assets**

29.     Section 3.5 of the Trust Agreement gives the Liquidation Trustee the right to abandon Trust assets to the extent that the Liquidation Trustee believes in good faith that non-cash assets cannot be sold in a commercially reasonable manner or has inconsequential value to the Trust or its beneficiaries.  As noted above, the Liquidation Trustee has liquidated all valuable

---

[24]     The Claims Agent's ability to perform some of these duties, particularly obtaining an accession number from the Federal Records Center necessary to completing and filing the SF-135 Form, may be impacted by a potential lapse of Congressional appropriations funding the federal government that may occur on and after February 15, 2019.  In that event, the Trust may request relief from the timing set forth in Local Rule 2002-1(f)(ix) by submitting a revised form of Order and Final Decree under certification of counsel in advance of the hearing on this Motion, which instead would require the Claims Agent to complete these obligations within 28 days after the later of (i) the entry of the Order and Final Decree; and (ii) the end of the federal government "shutdown".

[25]     *See* Del. Bankr. L.R. 2002-1(f)(ix).

assets of the Trust.  Further, the Liquidation Trustee has determined that any remaining Trust assets, consisting primarily of books and records, are of inconsequential value to the Trust and its creditor beneficiaries.  Accordingly, the Liquidation Trustee's abandonment of the remaining assets should be approved.

**D.    The Liquidation Trustee, the Liquidation Trust Oversight Committee and its Members Should Be Granted a Complete Discharge**

30.    Section 11.21 of the Plan contemplates, among other things, that upon motion of the Liquidation Trustee, the Court may enter an order relieving the members of the Liquidation Trust Oversight Committee, the Liquidation Trustee and the Trust's professionals and agents of any further duties, and discharging and releasing those Persons from all liability related to the Trust.[26]

31.    Accordingly, by this Motion, the Trust respectfully requests that the Order and Final Decree expressly discharge and relieve the Liquidation Trustee, the Liquidation Trust Oversight Committee and their respective members, professionals, consultants and/or employees of any further duties and from all liability related to the Trust and the Debtors' chapter 11 cases. These individuals and entities have efficiently completed the administration and distribution of all Trust assets, achieving a dividend for unsecured creditors within the range of expectations. Accordingly, the Trust respectfully submits that the request for a complete discharge is warranted under the circumstances and should be approved.

## NOTICE

32.    In accordance with Del. Bankr. L.R. 3022-1(b), notice of this Motion has been provided to: (i) the Office of the U.S. Trustee; and (ii) all other persons who have requested

---

[26]    *See* Plan § 11.21.

notice in the above-captioned bankruptcy cases pursuant to Bankruptcy Rule 2002.  No official committees remain to be served.

**<u>PRIOR RELIEF</u>**

33.     No previous motion for the relief requested in this Motion has been made to this or any other court.

WHEREFORE, the Trust respectfully requests that this Court enter an Order and Final Decree, substantially in the form attached hereto as Exhibit A: (i) closing the chapter 11 case of the Lead Debtor; (ii) approving the abandonment of remaining Trust assets; (iii) relieving the Liquidation Trustee from any further obligations as claims and noticing agent; (iv) discharging the Liquidation Trustee, the Liquidation Trust Oversight Committee and their respective members, professionals, consultants and/or employees from all duties and obligations under the Plan and the Trust Agreement, and discharging such Persons from all liability related to the Trust and the Debtors' chapter 11 cases; and (v) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
January 30, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Bradford J. Sandler (Bar No. 4142)
Andrew W. Caine (CA Bar No. 110345)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:   bsandler@pszjlaw.com
          acaine@pszjlaw.com
          pkeane@pszjlaw.com

– and –

KELLEY DRYE & WARREN LLP

James S. Carr
Dana P. Kane
101 Park Avenue
New York, NY  10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Counsel to the Seal123, Inc. Liquidation Trust*