# **EXHIBIT B**

**(Final Report)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>SEAL123, INC., et al.,[1]<br><br>        Post-Confirmation Debtors. | ) Chapter 11<br>)<br>) Case No. 15-10081 (CSS)<br>)<br>) Jointly Administered<br>)<br>) **Re: DI \_\_\_\_**<br>) |

## **FINAL REPORT IN CHAPTER 11 CASES**

To the best of my knowledge, information, and belief, the following is a breakdown of the results in the above-captioned chapter 11 cases (the "Chapter 11 Cases"):

## **BACKGROUND**

1. On January 15, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtors' cases were consolidated for procedural purposes and jointly administered under Case No. 15-10081 (CSS).

2. On October 30, 2015, the Court entered an order ("Confirmation Order")[2] confirming the *First Amended Joint Plan of Liquidation of Seal123, Inc. and Subsidiary Debtors*

---

[1] The post-confirmation debtors (collectively, the "Debtors") are: Seal123, Inc. (f/k/a The Wet Seal, Inc.); Seal123 Retail, Inc. (f/k/a The Wet Seal Retail, Inc.); Seal123 Catalog, Inc. (f/k/a Wet Seal Catalog, Inc.); and Seal123 GC, LLC (f/k/a Wet Seal GC, LLC). The chapter 11 cases of all Debtors other than Seal123, Inc. previously were closed by order of the Court entered February 13, 2017.

[2] Docket No. 1111.

*and Their Official Committee of Unsecured Creditors* (the "Plan").[3]  No appeal was taken from entry of the Confirmation Order, and the Confirmation Order has become a Final Order.

3. Prior to confirmation of the Plan, Debtors sold substantially all of their assets pursuant to an Asset Purchase Agreement (the "APA") with Mador Lending, LLC (together with its successors, designees and assigns, the "Buyer"), in exchange for a mix of cash consideration and certain assumed liabilities ("Assumed Claims").[4]  Sections 5.4, 7.3, and 8.1 of the Plan and paragraphs 16, 17, and 23 of the Confirmation Order provided for the Trust to be responsible for reconciling and objecting to Non-Assumed Claims and making Distributions to holders of Allowed Non-Assumed Claims.  The Plan and Confirmation Order further provided for the Buyer to be responsible for reconciling and objecting to Assumed Claims and making Distributions to holders of Allowed Assumed Claims.[5]  Taken together, the APA and the Plan essentially provided for General Unsecured Claims to be reconciled, administered and paid by the Trust, and claims senior to General Unsecured Claims to be reconciled, administered and paid (or where appropriate, reclassified as General Unsecured Claims) by the Buyer.

4. The Plan became effective on December 31, 2015 (the "Effective Date").[6]  Section 5.4 of the Plan and paragraphs 9, 19 and 20 of the Confirmation Order provide for the establishment of the Seal123, Inc. Liquidation Trust (the "Trust") as of the Effective Date, and the Liquidation Trust Assets were absolutely and irrevocably transferred and assigned to the Trust on that date.

---

[3] Docket No. 969.  Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[4] *See Order Authorizing (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances; (B) the Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement; and (C) the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* (the "Sale Order"), entered April 1, 2015 [Docket No. 538].

[5] Plan §§ 5.4, 7.3, 8.1; Confirmation Order ¶¶ 16, 17, 23.

[6] Docket No. 1190.

5. Relatedly, upon the occurrence of the Effective Date, pursuant to paragraph 20 of the Confirmation Order, META Advisors LLC (the "Liquidation Trustee") was appointed to administer the Trust and the Liquidation Trust Assets, in accordance with the terms of the Plan, the Confirmation Order and that certain *Liquidating Trust Agreement and Declaration of Trust* dated as of December 31, 2015 (the "Trust Agreement").

6. No trustee or examiner was appointed in the Chapter 11 Cases. Accordingly, no fees were incurred for a trustee or trustee's counsel.

7. On January 30, 2019, the Trust filed the *Motion of Seal123, Inc. Liquidation Trust Under 11 U.S.C. §§ 105(a) and 350(a), Fed. R. Bank. P. 3022, Del. Bankr. L.R. 3022-1 and Section 11.21 of the Plan for Order and Final Decree (I) Closing the Chapter 11 Case of the Lead Debtor; (II) Approving Abandonment of Remaining Trust Assets; and (III) Discharging the Liquidation Trustee and Liquidation Trust Oversight Committee* (the "Motion for Final Decree"), which is scheduled to be heard on February 20, 2019.

**FEES AND EXPENSES / DISTRIBUTIONS / TRUST ASSET ADMINISTRATION**

8. All required fees due under 28 U.S.C. § 1930 have been paid, will be paid current or will be prepaid as of the hearing date on the Motion for Final Decree and any further fees that come due (if any) will be paid promptly after they become due.

9. The fees and expenses awarded to and paid to professionals in the cases from the Petition Date through the Effective Date of the Plan amounted to $6,737,477.26 in the aggregate, and are set forth in detail on the attached Exhibit 1.

10. All distributions to be made under the Plan have been made and/or will be made prior to the date of the scheduled hearing on the Motion for Final Decree, and are set forth on the attached Exhibit 2.

11. Subject to the foregoing, all assets of the Trust have been administered or, where the Liquidation Trustee has determined they are of inconsequential value to the Trust and its beneficiaries, will be abandoned upon entry in this case of the order granting the Motion for Final Decree.

Date: January 30, 2019

By: META Advisors LLC, not individually, but solely in its capacity as Liquidation Trustee of the Seal123, Inc. Liquidation Trust

By: */s/ James D. Hunt/*
Name: James D. Hunt
Title:  Chief Operating Officer

# **EXHIBIT 1**

*In re Seal123 Liquidation, Inc. (f/k/a The Wet Seal, Inc.) et al.*, **Case No. 15-10081 (CSS)**
**Cumulative Professional Fees and Expenses**
**January 15, 2015 through and including December 31, 2015**

| Name of Professional | Professional Services Provided | Cumulative Fees | Cumulative Expenses | Total |
|---|---|---|---|---|
| Donlin, Recano & Company, Inc. | Administrative Agent to the Debtors | $48,235.50 | $603.89 | $48,839.39 |
| FTI Consulting, Inc. | Financial Advisor to the Debtors | $539,897.50 | $26,348.33 | $566,245.83 |
| Houlihan Lokey Capital, Inc. | Financial Advisor and Investment Banker to the Debtors | $1,546,428.57 | $13,941.45 | $1,560,370.02 |
| Klee, Tuchin, Bogdanoff & Stern LLP | Counsel to the Debtors | $2,129,785.50 | $56,606.09 | $2,186,391.59 |
| Pachulski Stang Ziehl & Jones LLP | Counsel to the Official Committee of Unsecured Creditors | $852,683.75 | $23,446.20 | $876,129.95 |
| Paul Hastings LLP | Special Counsel to the Debtors | $237,652.11 | $185.94 | $237,838.05 |
| PricewaterhouseCoopers LLP | Tax Consultants to the Debtors | $147,425.00 | $180.60 | $147,605.60 |
| Province Inc. | Financial Advisor to the Official Committee of Unsecured Creditors | $677,793.00 | $2,411.53 | $680,204.53 |
| Young Conaway Stargatt & Taylor, LLP | Delaware Counsel to the Debtors | $411,161.00 | $22,691.30 | $433,852.30 |
| **TOTAL** | | **$6,591,061.93** | **$146,415.33** | **$6,737,477.26** |

## EXHIBIT 2

## Summary of Distributions Under the Plan[1]

| PLAN CLASS | DESCRIPTION OF CLAIMS OR INTERESTS | SUMMARY OF DISTRIBUTIONS RECEIVED UNDER THE PLAN | AGGREGATE RECOVERY |
|---|---|---|---|
| N/A | L/C Facility Claims | BofA, as the Holder of the Allowed L/C Facility Claim, received such rights appeared in the L/C Credit Agreement and the L/C Facility Orders, including, without limitation, retaining its first-priority, duly-perfected Lien and security interest in and upon the L/C Cash Collateral.  BofA further retained the L/C Cash Collateral relating to outstanding letters of credit until such time as all letters of credit have either been returned undrawn, or fifteen (15) days after the expiration date thereof and no drawing or presentation has been made, at which time BofA would release the L/C Cash Collateral to the Buyer.  From and after the Effective Date, BofA, as L/C Issuer (as defined in the L/C Credit Agreement) could apply L/C Cash Collateral deposit to satisfy the letter of credit obligations without further notice to any party and without any order of the Bankruptcy Court. | **100%**[2] |
| N/A | Assumed Non-Ordinary Course Administrative Claims | Except as otherwise provided in the Plan, each Holder of an Allowed Assumed Non-Ordinary Course Administrative Claim received Cash in an amount equal to the unpaid portion of the Face Amount of the Allowed Assumed Non-Ordinary Course Administrative Claim, or such other less favorable treatment as the Holder and the Buyer agreed in writing. | **100%**[2] |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *First Amended Joint Plan of Liquidation of Seal123, Inc. and Subsidiary Debtors and Their Official Committee of Unsecured Creditors* (the "Plan") or the Motion for Final Decree, as applicable.  The information set forth in the above table is for convenience of reference only.  Each Holder of a Claim or Interest should refer to the Plan for a full description of the classification and treatment of Claims and Interests provided under the Plan.

[2] Only distributions on account of Non-Assumed Claims (primarily Class 5 Claims) were the responsibility of the Liquidation Trustee.  The summary of aggregate recoveries and distributions on Claims for which the Buyer was responsible is provided upon information and belief.  Additionally, on February 2, 2017, the Buyer and certain of its affiliates filed chapter 11 cases of their own in the United States Bankruptcy Court for the District of Delaware, jointly administered as Case No. 17-10229 (CSS) ("Wet Seal II").  Consequently, the indication in this chart regarding any percentage recovery received by Holders of Assumed Claims for which the Buyer was responsible under the Plan is qualified by the filing of the Wet Seal II cases.  Neither the Trust nor the Liquidation Trustee assumed any obligation of the Buyer to make any further payments, under the Plan or otherwise, to holders of Assumed Claims.  Any outstanding amounts purportedly owing to such holders under the Plan represented pre-petition claims in the context of the Wet Seal II cases and, as such, the Liquidation Trustee objected to those claims on a "no liability" basis, on the grounds that they were not valid claims in these cases, but rather must be handled though the claims reconciliation process in Wet Seal II.

| PLAN CLASS | DESCRIPTION OF CLAIMS OR INTERESTS | SUMMARY OF DISTRIBUTIONS RECEIVED UNDER THE PLAN | AGGREGATE RECOVERY |
|---|---|---|---|
| N/A | Non-Assumed Non-Ordinary Course Administrative Claims | Except as otherwise provided in the Plan, each Holder of an Allowed Non-Assumed Non-Ordinary Course Administrative Claim received Cash in an amount equal to the unpaid portion of the Face Amount of the Allowed Non-Assumed Non-Ordinary Course Administrative Claim, or such other less favorable treatment as the Holder and the Liquidation Trustee agreed in writing. | **100%**[2] |
| N/A | Assumed Ordinary Course Administrative Claims | Assumed Ordinary Course Administrative Claims were paid by the Buyer in accordance with the terms and conditions of any agreement relating thereto, and Holders were not required to file a request for payment of such Claims. | **100%**[2] |
| N/A | Professional Fee Claims | Each Holder of a Professional Fee Claim received payment in full within five Business Days after entry of a Bankruptcy Court order approving such Claims, by the Buyer to the extent it was liable for same under the APA, and by the Trust to the extent not paid by the Buyer. | **100%**[2] |
| N/A | Priority Tax Claims | Each Holder of an Allowed Priority Tax Claim received, at Buyer's option, (a) Cash in an amount equal to the unpaid portion of the Face Amount of the Allowed Priority Tax Claim, (b) regular installment payments on account of such Allowed amount over a period not exceeding five (5) years plus interest on the unpaid portion thereof at the rate determined under applicable non-bankruptcy law as of the calendar month in which the Confirmation date occurred or (c) such other less favorable treatment as the Holder and the Buyer agreed in writing. | **100%**[2] |
| 1 | Prepetition Credit Agreement Claims | There were no Prepetition Credit Agreement Claims remaining as of the Effective Date for further administration by the Liquidation Trustee. | **N/A** |
| 2 | Secured Claims | Each Holder of an Allowed Secured Claim received, at the election of the Liquidation Trustee or the Buyer (as applicable), (i) Cash in an amount equal to the value of such Secured Claim, (ii) return of the collateral securing such Allowed Secured Claim, or (iii) reinstatement of such Allowed Secured Claim pursuant to sections 1124(1) or 1124(2) of the Bankruptcy Code; or (iv) such other less favorable treatment as the Holder and the Liquidation Trustee or the Buyer (as applicable) agreed in writing. | **100%**[2] |
| 3 | Priority Claims | Each Holder of an Allowed Priority Claim received Cash in an amount equal to the unpaid portion of the Face Amount of such Allowed Priority Claim, or such other less favorable treatment as the Holder and the Buyer agreed in writing. | **100%**[2] |
| 4 | Assumed General Unsecured Claims | Each Holder of an Allowed Assumed Unsecured Claim received from the Buyer payment in full of such Claim in the ordinary course of business in | **100%**[2] |

| PLAN CLASS | DESCRIPTION OF CLAIMS OR INTERESTS | SUMMARY OF DISTRIBUTIONS RECEIVED UNDER THE PLAN | AGGREGATE RECOVERY |
|---|---|---|---|
| | | accordance with the terms and conditions of any agreement related thereto. | |
| 5 | General Unsecured Claims | Each Holder of an Allowed Assumed Unsecured Claim received its Pro Rata share of Liquidation Trust Interests, or such other less favorable treatment to which such Holder and the Liquidation Trustee agreed in writing.  Pursuant to the Global Plan Settlement, Holders of Allowed General Unsecured Claims that constituted Multi-Debtor Consolidated Claims were deemed to hold a single Allowed General Unsecured Claim against the Debtor in an Allowed amount that is 150% of the Face Amount of such Holder's Allowed Multi-Debtor Consolidated Claim. | **5.64%[3]** |
| 6 | Subordinated Claims | Holders of Subordinated Claims were not entitled to, and did not receive or retain, any property or interest under the Plan on account of such Subordinated Claims. | **0%** |
| 7 | Equity Interests | Equity Interests were deemed void, cancelled and of no further effect as of the Effective Date of the Plan. Holders of Equity Interests were not entitled to, and did not receive or retain, any property or interest under the Plan on account of such Equity Interest. | **0%** |

---

[3] As more fully discussed in the Motion for Final Decree, the Trust intends to make a first and final distribution of approximately 5.64% prior to the date for which the Motion for Final Decree is scheduled to be heard.